THE HONORABLE KEVIN MCNULTY

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

EMQORE ENVESECURE PRIVATE
CAPITAL TRUST,

        Plaintiff,

   v.

BHAVDEEP SINGH, et al.,

        Defendants.

Civil Action No. 2:20-cv-07324

**RETURN DATE: APRIL 4, 2022**

**ORAL ARGUMENT REQUESTED**

## DEFENDANT IHH HEALTHCARE BERHAD'S
## <u>MOTION TO DISMISS AMENDED COMPLAINT</u>

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

Jacques Semmelman
Joseph D. Pizzurro (pro hac vice pending)
Kevin A. Meehan (pro hac vice)
101 Park Avenue
New York, NY 10178
(212) 696-6000
jsemmelman@curtis.com
jpizzurro@curtis.com
kmeehan@curtis.com

*Attorneys for Defendant*
*IHH Healthcare Berhad*

Dated:  January 28, 2022

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND ................................................................................................4

    A.    The Parties......................................................................................4

    B.    The Allegations in the Amended Complaint ..............................6

    C.    Procedural History .....................................................................11

ARGUMENT ..................................................................................................13

I.    Plaintiff Cannot Establish Personal Jurisdiction over IHH................13

II.    The Amended Complaint Fails to State a RICO Claim ......................16

    A.    Emqore Does Not Allege a Domestic Injury ...........................16

    B.    Emqore Fails to State a § 1962(c) RICO Claim Against
        IHH.............................................................................................18

        1.    Emqore Does Not Allege the Existence of an
                "Enterprise" ...................................................................19

        2.    Emqore Fails to Allege that IHH "Conducted or
                Participated in" the Conduct of a RICO Enterprise .......20

        3.    Emqore Does Not Allege Any "Pattern of
                Racketeering" .................................................................21

    C.    Emqore Fails to Plead a RICO Conspiracy Claim Against
        IHH.............................................................................................24

III.    Emqore Fails to State a Claim for Declaratory Relief .......................25

IV.    Emqore's Common Law Claims Are Not Adequately Pled ..............26

    A.    Emqore's Fraud Claim Is Not Pled with Specificity ...............27

    B.    Emqore Fails to Plead a Tortious Interference Claim .............27

    C.    Emqore Fails to Allege a Trespass to Chattels Claim .............29

|  | D. | Emqore Fails to Allege that IHH Was Unjustly Enriched........30 |
|  | E. | Emqore Fails to Allege that IHH Breached Any Implied Covenant ...................................................................................30 |
|  | F. | Emqore Fails to State a Civil Conspiracy Claim ......................31 |
| V. | | This Case Should Be Dismissed under the  International Abstention Doctrine ............................................................................31 |
| VI. | | This Case Should Be Dismissed under the *Forum Non Conveniens* Doctrine ...........................................................................34 |

CONCLUSION ........................................................................................................38

# <u>TABLE OF AUTHORITIES</u>

<u>Pg.</u>

**Cases**

*Armada (Sing.) PTE, Ltd. v. Amcol Int'l Corp.*,
　885 F.3d 1090 (7th Cir. 2018)................................................................19

*Asahi Metal Indus. Co. v. Superior Court of California*,
　480 U.S. 102 (1987) ...............................................................................13

*A-Valey Eng'rs, Inc. v. Bd. of Chosen Freeholders*,
　106 F. Supp. 2d 711 (D.N.J. 2000)........................................................28

*Baker v. IBP, Inc.*,
　357 F.3d 685 (7th Cir. 2004)..................................................................22

*Base Metal Trading Ltd. v. Russian Aluminum*,
　98 F. App'x 47 (2d Cir. 2004).................................................................38

*Base Metal Trading SA v. Russian Aluminum*,
　253 F. Supp. 2d 681 (S.D.N.Y. 2003)....................................................42

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007) ...............................................................................29

*Birim Grp., LLC v. Paa Kwesi Nduom*,
　No. 20 C 07198, 2021 U.S. Dist. LEXIS 225850 (N.D. Ill. Nov. 23, 2021).......20

*Boyle v. United States*,
　556 U.S. 938 (2009) ...............................................................................21

*Bristol-Myers Squibb Co. v. Superior Court of California*,
　137 S. Ct. 1773 (2017) ...........................................................................14

*Burger King Corp. v. Rudzewicz*,
　471 U.S. 462 (1985) ...............................................................................16

*Cargill Global Trading v. Applied Development Co.*,
　706 F. Supp. 2d 563 (D.N.J. 2010)................................................. 32, 33

*Cevdet Aksüt Oğullari Koll. STI v. Cavusoglu*,
　245 F. Supp. 3d 650 (D.N.J. 2017)........................................................19

*Collins v. Mary Kay, Inc.*,
874 F.3d 176 (3d Cir. 2017) ...............................................................................40

*Conley v. Gibson*,
355 U.S. 41 (1957) .............................................................................................29

*Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*,
528 F.3d 1001 (8th Cir. 2008) ..................................................................... 21, 22

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .................................................................................... 13, 14

*Darrick Enters. v. Mitsubishi Motors Corp.*,
Civ. No. 05-4359 (NLH),
2007 U.S. Dist. LEXIS 72956 (D.N.J. Sep. 28, 2007) .......................................17

*Deck v. Engineered Laminates*,
349 F.3d 1253 (10th Cir. 2003) ................................................................... 26, 27

*Desmond v. Siegel*,
No. 10-5562 (DRD), 2012 U.S. Dist. LEXIS 109579 (D.N.J. Aug. 6, 2012) .....27

*DHI Grp., Inc. v. Kent*,
No. H-16-1670, 2017 U.S. Dist. LEXIS 178481 (S.D. Tex. Apr. 21, 2017).......34

*Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc.*,
949 F. Supp. 1123 (S.D.N.Y. 1997) ...................................................................36

*Dynamic Measurement Grp., Inc. v. Univ. of Or.*,
121 F. Supp. 3d 1047 (D. Or. 2015) ...................................................................34

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007) ...............................................................................27

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
492 U.S. 229 (1989) .................................................................................... 24, 28

*Hawk Mt. LLC v. Mirra*,
Civ. No. 13-2083-SLR-SRF,
2016 U.S. Dist. LEXIS 72962 (D. Del. June 3, 2016) ........................................23

*Helicopteros Nacionales de Colombia, SA v. Hall*,
466 U.S. 408 (1984) ...........................................................................................13

*Hughes v. Consol-Pennsylvania Coal Co.*,
  945 F.2d 594 (3d Cir. 1991) ...................................................................28

*Humphrey v. GlaxoSmithKline PLC*,
  905 F.3d 694 (3d Cir. 2018) .................................................... 18, 19, 20

*IMO Indus. v. Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998) ...................................................................17

*In re Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) ........................................................ 21, 28

*In re Gellene*,
  203 N.J. 443 (2010) ...............................................................................12

*INDECS Corp. v. Claim Doc, LLC*,
  Civ. No. 16-4421 (KM) (JBC),
  2020 U.S. Dist. LEXIS 182931 (D.N.J. Oct. 2, 2020) ........................36

*Iragorri v. United Technologies Corp.*,
  274 F.3d 65 (2d Cir. 2001) ....................................................................41

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi
  Negara*,
  335 F.3d 357 (5th Cir. 2003) ........................................................ 30, 38

*Key Equity Inv'rs Inc. v. Sel-Leb Mktg.*,
  246 F. App'x 780 (3d Cir. 2007) .............................................................5

*Kim v. Kimm*,
  884 F.3d 98 (2d Cir. 2018) ....................................................................25

*Kisano Trade & Invest Ltd. v. Lemster*,
  737 F.3d 869 (3d Cir. 2013) ........................................................ 43, 44

*Luongo v. Village Supermarket, Inc.*,
  261 F. Supp.3d 520 (D.N.J. 2017)..........................................................35

*Mega Concrete, Inc. v. Smith*,
  Civ. No. 09-4234, 2011 U.S. Dist. LEXIS 30789 (E.D. Pa. Mar. 24, 2011).......24

*Morrison v. Nat'l Australia Bank*,
  561 US 247 (2010) .................................................................................27

*O'Connor v. Sandy Lane Hotel Co.*,
    496 F.3d 312 (3d Cir. 2007) .................................................................16

*Pexcor Mfg. Co. v. Uponor AB*,
    920 F. Supp. 2d 151 (D.D.C. 2013) ....................................................37

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) .................................................................... 40, 42

*Posner v. Essex Ins. Co.*,
    178 F.3d 1209 (11th Cir. 1999).............................................................38

*Princeton Football Partners LLC v. Football Ass'n of Ireland*,
    No. 11-5227 (MLC), 2012 U.S. Dist. LEXIS 101681 (D.N.J. July 23, 2012) ....43

*Raney v. Allstate Ins. Co.*,
    370 F.3d 1086 (11th Cir. 2004).................................................... 25, 27

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) .............................................................................23

*Rickman v. BMW of N. Am. LLC*, Civ. No. 18-04363 (KM) (JBC),
    2021 U.S. Dist. LEXIS 90403 (D.N.J. May 11, 2021) ........................15

*RJR Nabisco, Inc. v. European Cmty.*,
    579 U.S. 325 (2016) ................................................................ 2, 17, 18

*Rockefeller Ctr. Props. Sec. Litig. v. Rockefeller*,
    311 F.3d 198 (3d Cir. 2002) .................................................................27

*Rustal Trading US, Inc. v. Makki*,
    17 F. App'x 331 (6th Cir. 2001)............................................................41

*Scholes Elec. & Communs. v. Fraser*,
    No. 04-3898 (JAP), 2006 U.S. Dist. LEXIS 39287 (D.N.J. June 14, 2006)........34

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
    833 F.3d 512 (5th Cir. 2016)................................................................25

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
    487 F.3d 928 (D.C. Cir. 2007) ............................................................30

*The Choice Is Yours, Inc. v. Williams*,

No. 2:14-cv-01804, 2016 U.S. Dist. LEXIS 136444 (E.D. Pa. Sep. 30, 2016) ...26

*United States v. Bergrin*,
   650 F.3d 257 (3rd Cir. 2011).................................................................25

*Windt v. Qwest Communs. Int'l, Inc.*,
   529 F.3d 183 (3d Cir. 2008) ...............................................................43

*Wise v. United States*,
   No. 2:21-cv-10168 (BRM) (AME),
   2021 U.S. Dist. LEXIS 222888 (D.N.J. Nov. 17, 2021).......................24

*Worldspan Marine Inc. v. Comerica Bank*,
   No. 18-21924-CIV, 2020 U.S. Dist. LEXIS 35480 (S.D. Fla. Feb. 27, 2020) ....20

**Statutes**

15 U.S.C. § 1114 .....................................................................................23

18 U.S.C. § 1114 .....................................................................................23

18 U.S.C. § 1503 .....................................................................................23

18 U.S.C. § 1961(1) .................................................................................23

18 U.S.C. § 1962(c) ................................................................ 11, 18, 20, 24

18 U.S.C. § 1962(d) ...................................................................... 11, 24

18 U.S.C. § 1964(c) .................................................................................16

18 U.S.C. § 1965(b) .................................................................................16

N.J. Court Rule 4:4-4 ..............................................................................16

**Federal Rules**

Fed. R. Civ. P. 12(b)(2)...........................................................................1, 14

Fed. R. Civ. P. 12(b)(6)........................................................................ 1, 3, 27

Fed. R. Civ. P. 8(a)(2)..............................................................................26

Fed. R. Civ. P. 9(b) .................................................................................24

Fed. R. Civ. P. 9(g) ................................................................................................32

**Other Authorities**

McCarthy on Trademarks and Unfair Competition,
   § 25:9.50 (4th Ed. 2013).......................................................................................29

Defendant IHH Healthcare Berhad ("IHH") submits this motion to dismiss for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2), failure to state a claim under FED. R. CIV. P. 12(b)(6), and the international abstention and *forum non conveniens* doctrines.

## PRELIMINARY STATEMENT

Plaintiff Emqore Envesecure Private Capital Trust ("Plaintiff" or "Emqore") – a Wyoming trust created and controlled by a group of foreign entities – does not allege any basis for hauling IHH, a Malaysian company, into a U.S. court to litigate what the Amended Complaint makes clear is a purely foreign dispute relating to foreign transactions and foreign lawsuits. There is no allegation that IHH has any contacts with the United States. IHH has no operations, offices or employees in the United States, and there is no allegation that IHH (or anyone) did anything in the United States. All of the alleged events occurred abroad. Thus, the claims against IHH must be dismissed for lack of personal jurisdiction because the exercise of jurisdiction over IHH would not comport with due process.

Putting aside the glaring jurisdictional defects, Emqore's claims are utterly frivolous and should be dismissed under Rule 12(b)(6) for failure to state a claim. As an initial matter, there is no allegation that IHH engaged in any wrongful conduct whatsoever. Indeed, the only allegation against IHH in the Amended Complaint is that IHH made an investment in Defendant Fortis Healthcare Ltd.

("Fortis"), an Indian company.  While the Amended Complaint asserts that the two

Indian nationals who allegedly founded Fortis, Defendants Malvinder and

Shivinder Singh (the "Singh Brothers"), engaged in misconduct, IHH is not alleged

to have been involved in that alleged misconduct.  In fact, the Amended Complaint

alleges that IHH did not invest in Fortis until after the Singh Brothers had been

removed from Fortis.  The Amended Complaint also contains vague allegations of

unspecified misconduct by unidentified parties in litigations in India.  However,

IHH is not alleged to have been a party to any such litigations.

Moreover, Emqore fails to state a civil claim under the Racketeering

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and

(d).  Emqore admits that its civil RICO claims would require an extraterritorial

application of that statute.  However, the Supreme Court held in *RJR Nabisco, Inc.*

*v. European Cmty.*, 579 U.S. 325 (2016), that the civil RICO statute does not apply

extraterritorially and therefore a plaintiff must allege a "domestic injury" to state a

civil RICO claim.  Here, Emqore is seeking to redress injuries supposedly suffered

by its foreign predecessors in connection with foreign transactions and foreign

lawsuits.  Such injuries are not domestic, and Emqore's foreign predecessors

cannot domesticate their alleged foreign injuries by establishing Emqore as a

Wyoming trust and assigning their claims to Emqore.

Moreover, the Amended Complaint fails to allege any of the elements of a

RICO claim.  While Emqore asserts that Defendants constitute an association-in-fact enterprise, it does not allege the requisite structural elements of such an enterprise.  Rather, it describes Defendants as a disparate group of actors pursuing their own divergent economic goals in connection with a series of unrelated transactions and often acting at cross-purposes.  The Amended Complaint is devoid of any factual allegations that IHH conducted or participated in the conduct of the supposed enterprise.  Instead, Emqore improperly relies on vague, and legally impermissible, group pleading.  Emqore also fails to adequately allege a single predicate RICO violation, much less a pattern of racketeering activity as required under RICO.

Emqore's non-RICO claims must also be dismissed under Rule 12(b)(6).  The Amended Complaint does not allege any of the elements of the common law claims asserted therein.  Rather, all of Emqore's non-RICO claims allege that Emqore's predecessors were harmed by supposed misconduct in foreign proceedings and ask this Court to declare null and void any judgments entered against Emqore or its predecessors and to enter a broad foreign antisuit injunction against Defendants.  Such relief would impermissibly violate fundamental principles of international comity.  In any event, IHH is not alleged to have been a party to any litigations against Emqore or its predecessors.

Finally, this case should be dismissed pursuant to the international

abstention and *forum non conveniens* doctrines.  Emqore alleges that its foreign predecessors have already commenced numerous foreign legal proceedings based on the same underlying dispute alleged in the Amended Complaint.  That dispute is a purely foreign one between foreign parties arising out of foreign transactions and foreign lawsuits.  This case has no connection to the United States and should never have been filed here.  It should be dismissed.

## BACKGROUND

### A.    The Parties

IHH is a publicly-traded company, incorporated and headquartered in Malaysia.  Am. Compl. ¶ 13.  IHH operates a healthcare network in Asia and Europe and does not have any operations, offices, or employees in the United States.  Declaration of Dr. Kelvin Loh, dated January 25, 2022 ("Loh Decl."), ¶ 2. While the Amended Complaint vaguely alleges that IHH has "essential links to the United States" and is "processed" through an address in California, that address allegedly belongs to a non-party, Khazanah Americas, Inc., which is a subsidiary of one of IHH's Malaysian shareholders, Defendant Khazanah Nasional Berhad ("Khazanah").  Am. Compl. ¶¶ 13-14.  IHH's indirect Singaporean subsidiary, Northern TK Venture Pte. Ltd. ("NTK"), owns a 31.17% stake in Fortis, an Indian company.[1]  *Id.* ¶¶ 12, 34.

---

[1] *See* IHH Healthcare Berhad, Annual Report for 2020, at pp. 8, 294 (available at

Plaintiff Emqore is allegedly a Wyoming trust, *id.* ¶ 5, which apparently has its "administrative offices" in Estonia.  Dkt. No. 82 at ECF 8.  Emqore had no involvement in the alleged events in the Amended Complaint and was, instead, created for the sole purpose of bringing this lawsuit in the United States on behalf of "Plaintiff's Predecessors" – a "network" of foreign entities, including two Indian companies, Participation Finance & Holdings (India) ("PFH") and Walmark Health Private Limited ("Walmark").  *Id.*; Dkt. No. 55-5 at ECF 43; Amended Compl. ¶ 5 at note 1.  Emqore alleges that its Predecessors assigned their claims to Emqore pursuant to an "Assignment" dated January 22, 2020 – well after the events alleged in the Amended Complaint.  Am. Compl. ¶ 5.  That Assignment acknowledges that the claims assigned to Emqore are the subject matter of proceedings before foreign courts and that "a likely adverse decision could … be expected [in those cases]."  Dkt. No. 55-5 at ECF 33.

The Amended Complaint names 28 Defendants – the vast majority of whom are foreign, including IHH.  The Amended Complaint also lists 20 so-called "Non-Party Defendants," all of whom appear to be foreign.

---

https://www.bursamalaysia.com/market_information/announcements/company_announcement/announcement_details?ann_id=3152313).  This Court may take judicial notice of IHH's securities filings for purposes of this motion to dismiss. *See Key Equity Inv'rs Inc. v. Sel-Leb Mktg.,* 246 F. App'x 780, 788 (3d Cir. 2007).

**B.     The Allegations in the Amended Complaint**

The Amended Complaint asserts claims purportedly arising out of two separate transactions – one relating to Fortis and the other relating to Defendant Religare Enterprises Limited ("Religare").  Emqore does not make any allegations against IHH with respect to Religare and therefore only the allegations relating to Fortis need to be considered for purposes of IHH's motion to dismiss.  ***There are no factual allegations of any wrongdoing on the part of IHH with respect to the Fortis transactions***.

The Amended Complaint alleges that two Indian Defendants, the Singh Brothers, siphoned assets out of Fortis in order to frustrate an Indian court judgment entered in favor of non-party Daiichi Sankyo, a Japanese company, in a completely unrelated litigation in 2016.  Am. Compl. ¶¶ 7, 89, 97, 146, 196-213.  ***There is no allegation that IHH had any involvement in any misconduct by the Singh Brothers***.

According to the Amended Complaint, Fortis retained bankers to solicit investments in 2017.  *Id.* at ¶ 116-17.  Several "suitors" allegedly considered investing in Fortis.  *Id.* ¶ 97.  In June 2017, IHH allegedly entered into an exclusive agreement to purchase Fortis, but pulled out of the transaction in June 2017 over concerns about the Singh Brothers' misconduct.  Am. Compl. ¶ 107; Am. Compl., Ex. C ¶ 26-27.

Between June and September 2017, Defendants Ares SSG ("Ares") and Bay Capital Partners Ltd. ("Bay Capital") allegedly commenced lawsuits against the Singh Brothers in India.  *Id.* ¶ 130.  While Emqore asserts that "Defendants" were attempting to conceal the siphoning of Fortis's assets, the Amended Complaint alleges that these lawsuits outlined the Singh Brothers' siphoning of Fortis's assets in "great detail."  *Id.* ¶¶ 130-31.  Indeed, Emqore alleges that these litigations resulted in the public disclosure of the Singh Brothers' misconduct and thereby caused Fortis's share price to decline by 50%.  *Id.* ¶ 131.  ***IHH is not alleged to have been involved in these lawsuits***.

Between September and December 2017, Defendants New York Life Investment Management LLC ("NYLIM") and Siguler, Guff & Company, LP ("Siguler") allegedly filed similar lawsuits against the Singh Brothers in India.  *Id.* ¶ 132.  Emqore alleges that these lawsuits caused Fortis's share price to further decline.  *Id.* ¶ 133.  ***IHH is not alleged to have been involved in these lawsuits***.

After the alleged commencement of the lawsuits against the Singh Brothers and the alleged decline in Fortis's share price, Plaintiff's Predecessors, Walmark and PFH, supposedly began negotiating with the Singh Brothers in September 2017 to acquire an interest in Fortis.  Am. Compl., Ex. B ¶¶ 1-2.  Although Walmark supposedly discovered certain improprieties in Fortis's financial statements, it met with Fortis in India in December 2017 to negotiate a term sheet.

*Id.* ¶¶ 14-15.

Emqore alleges that the term sheet was executed on December 6, 2017. *Id.* ¶ 15. The term sheet refers to a "Proposed Transaction" in which Fortis would issue shares to Walmark in exchange for a payment in Indian rupees. Dkt. No. 34-7, § 3, ECF 2. The term sheet states that it would remain valid for 60 days and would require the execution of further transaction documents within that 60-day period if the proposed transaction were to move forward. *Id.* §§ 14, 24. The term sheet was governed by Indian law and provided for the parties to resolve disputes through arbitration seated in India. *Id.* § 25. It otherwise provided for Indian courts to have exclusive jurisdiction over disputes relating to the proposed transaction. *Id.* § 26. While the term sheet merely sets out the parameters of a "*Proposed* Transaction," the Amended Complaint frivolously asserts that its Predecessors "acquired" "contractual rights to control Fortis" through its "planned investment" in Fortis. Am. Compl. ¶ 97. **IHH is not alleged to be a party to the term sheet**.

Walmark and Fortis allegedly entered into a side letter that provided for Fortis to pay a break-up fee in the event the proposed transaction did not close. Am. Compl., Ex. B ¶¶ 16, 23. Emqore vaguely alleges that the side letter also provided for either PFH or Walmark to acquire the "Fortis Brands." *Id.* ¶¶ 18-19. There is no allegation that the Fortis Brands are federally registered trademarks.

***IHH is not alleged to be a party to the side letter***.

The Amended Complaint alleges that, in February 2018, the "Defendants" conspired to oust the Singh Brothers and take control of Fortis's board of directors. *Id.* ¶ 34; Am. Compl. ¶¶ 111, 165 n.27.  Emqore alleges that Defendants East Bridge Capital Master Fund Ltd. and East Bridge Capital Master Fund I Ltd. (together, "East Bridge") acquired an interest in Fortis at a depressed share price as a result of the lawsuits that NYLIM, Siguler, Ares and Bay Capital filed against the Singh Brothers in 2017.  Am. Compl., Ex. B ¶¶ 31-33.  After acquiring its interest in Fortis, East Bridge allegedly instigated changes to Fortis's management and the composition of its board of directors.  Am. Compl. ¶¶ 108, 125.  As a result of these changes, the Singh Brothers allegedly resigned from their roles at Fortis in February 2018.  Am. Compl., Ex. B ¶ 34.  ***IHH is not alleged to have been involved in East Bridge's investment in Fortis or any of the alleged changes to Fortis's management and board of directors***.

On May 16, 2018, Walmark allegedly asked Fortis to "bring the [term sheet] before its Board for confirmation" even though it had already expired on its own terms months earlier.  *Id.* ¶ 38.  Fortis allegedly refused to do so and claimed that it had not signed the term sheet.  *Id.* ¶ 39.  In October 2018, Walmark allegedly demanded that Fortis pay the break-up fee under the alleged side letter, which Fortis apparently refused to pay.  *Id.* ¶ 43.  ***IHH is not alleged to have been***

*involved in any of the dealings between Walmark and Fortis*.

In December 2018, "Defendants" allegedly filed criminal complaints against the Singh Brothers in India.  Am. Compl. ¶ 88.  Emqore alleges that those criminal charges resulted in the Singh Brothers' arrests in India.  *Id.* ¶ 127.  ***IHH is not alleged to have been involved in the criminal cases against the Singh Brothers***.

The Amended Complaint alleges that, at some point after October 2018, IHH purchased shares of Fortis at a depressed price.  *Id.* ¶¶ 97-98, 108.  Emqore asserts that IHH's investment in Fortis somehow violated the term sheet even though IHH is not a party to the term sheet.  Am. Compl., Ex. B ¶ 42.  It also asserts that, after investing in Fortis, IHH never insisted that the Singh Brothers return the assets they allegedly siphoned back to Fortis.  Am. Compl. ¶ 79 n.2.

The Amended Complaint alleges that Plaintiff's Predecessors commenced several lawsuits and arbitrations in India relating to the term sheet and Fortis.  *Id.* ¶¶ 80-96.  The Amended Complaint alleges that Plaintiff's Predecessors also filed nearly 100 grievances with Indian regulators.  *Id.* ¶ 144.  ***There is no allegation that IHH was a party to any of these Indian proceedings***.

The Amended Complaint vaguely alleges that Plaintiff's Predecessors have been forced to defend themselves in "sham litigation[s]" in India.  *Id.* ¶¶ 241, 243, 246, 248, 251, 255, 258-59, 264, 268-270, 272, 275.  However, the Amended Complaint does not allege who commenced these litigations or otherwise provide

any details about these supposed litigations. ***There is no allegation that IHH was a party to any such litigations***.

Emqore asserts that the alleged events discussed above relating to Fortis – all of which allegedly occurred abroad – somehow constitute a fraudulent RICO scheme that violated 18 U.S.C. §§ 1962(c) and (d).  Emqore also asserts common law claims against IHH for fraud, tortious interference with contract, trespass to chattels, unjust enrichment, civil conspiracy, and breach of implied covenant of good faith and fair dealing in connection with the foreign litigations alleged in the Amended Complaint, even though IHH is not alleged to have been a party to any such litigations.  Emqore also asserts a declaratory judgment claim seeking a declaration that any "judicial process by the Defendants is unenforceable and non-recognizable" as well as an injunction precluding Defendants from commencing, prosecuting or advancing any legal proceedings against Plaintiff or its "co-venturers" before any court, tribunal or administrative agency anywhere in the world, including any actions to enforce any judgments against the assets of Plaintiff, its subsidiaries or its "co-venturers."  *Id.* ¶¶ 272, 275.  Emqore is seeking damages in excess of $6.5 billion.  *Id.* at pp. 79-80.

## C.   Procedural History

Plaintiff commenced this action on June 16, 2020.  In September and October 2020, NYLIM, Siguler, and Bhavdeep Singh filed motions to dismiss the

complaint.  Dkt. Nos. 25, 33, 34.  In November 2020, Emqore's counsel filed a motion to withdraw explaining that they had been retained by "an affiliate of Emqore" and that, "regrettably, Emqore, its affiliates and advisors have not fully cooperated with us … and, overall, we have a substantial difference of opinion on how the prosecution of this action should be handled …"  Dkt. No. 39-1 ¶¶ 2-3. After two other law firms declined to take its case, Emqore's new counsel appeared on April 23, 2021.  Dkt. Nos. 48-50.[2]

On May 25, 2021, Emqore filed a motion to amend its complaint.  Dkt. No. 55.  On November 30, 2021, Magistrate Judge James B. Clark, III granted Emqore's motion to amend, but acknowledged that the amendments may not cure the deficiencies identified in the motions to dismiss the original complaint.[3]  Dkt. No. 99.  On December 3, 2021, Emqore filed its Amended Complaint, which names new defendants and adds new common law claims as well as a new declaratory judgment claim.  Dkt. No. 102.  The Amended Complaint also adds an entire section entitled "Procedural History" consisting entirely of allegations concerning the numerous foreign proceedings that Plaintiff's Predecessors have commenced in connection with the dispute alleged in the Amended Complaint.

---

[2] *In re Gellene*, 203 N.J. 443 (2010) (imposing sanctions on Emqore's counsel).

[3] IHH has not consented to referral of this case to the Magistrate Judge under 28 U.S.C. § 636 and understands that the District Judge will decide this motion.

## ARGUMENT

### I.    PLAINTIFF CANNOT ESTABLISH PERSONAL JURISDICTION OVER IHH

The Supreme Court has repeatedly held that foreign corporations, such as

IHH, are entitled to the protections of due process.  *See, e.g., Daimler AG v.*

*Bauman,* 571 U.S. 117 (2014); *Asahi Metal Indus. Co. v. Superior Court of*

*California*, 480 U.S. 102 (1987); *Helicopteros Nacionales de Colombia, SA v.*

*Hall,* 466 U.S. 408 (1984).  Here, the exercise of personal jurisdiction over IHH

would not comport with the requirements of due process and therefore the claims

against IHH must be dismissed under FED. R. CIV. P. 12(b)(2).

IHH is a Malaysian corporation with a principal place of business in

Malaysia.  It has no operations, offices, or employees in the United States.  Loh

Decl. ¶ 2.  IHH is not "at home" in the United States and therefore is not subject to

the general jurisdiction of this Court.  *See Daimler,* 571 U.S. at 138-39.  Nor is

IHH subject to specific jurisdiction in this case.  The exercise of specific personal

jurisdiction comports with the requirements of due process only where the suit

arises out of the defendant's contacts with the forum.  *See Bristol-Myers Squibb*

*Co. v. Superior Court of California,* 137 S. Ct. 1773, 1780-81 (2017).  While the

Amended Complaint conclusorily asserts the IHH has "certain minimum contacts

with the forum," it does not identify any such contacts and there are no allegations

that IHH did anything in the United States.  Am. Compl. ¶ 57.  Thus, Emqore

cannot establish specific jurisdiction over IHH.

Emqore, nevertheless, vaguely asserts that IHH "has used the United States,

through the United States domiciled RICO Defendants."  *Id.*  However, most

Defendants in this case are foreign, and there are no factual allegations identifying

any acts by any Defendant that supposedly occurred in the United States.  Indeed,

Emqore's claims concern alleged foreign litigations and alleged transactions

between foreign entities to acquire shares of Fortis, an Indian company.  To the

extent any U.S.-based Defendants are alleged to have been involved in those

foreign litigations or foreign transactions, there are no allegations that those

Defendants did anything in the United States.  But even if other Defendants have

contacts with the forum, those contacts cannot support the exercise of jurisdiction

over IHH.  Indeed, Emqore appears to be invoking the sort of "conspiracy theory

of jurisdiction" that this Court recently rejected, in part, because "federal due

process does not square with the conspiracy-jurisdiction theory."  *See Rickman v.*

*BMW of N. Am. LLC*, Civ. No. 18-04363 (KM) (JBC), 2021 U.S. Dist. LEXIS

90403, at *18-19 (D.N.J. May 11, 2021).  Rather, a court can only exercise

jurisdiction over a defendant if that particular defendant has sufficient

jurisdictionally relevant contacts to satisfy due process.[4]  *Id.*

---

[4] While the Amended Complaint vaguely alleges that IHH is "processed" through

Furthermore, the exercise of personal jurisdiction over IHH would violate

due process because it would be unreasonable.  *Burger King Corp. v. Rudzewicz*,

471 U.S. 462, 476-78 (1985).  In determining the due process limits of

reasonableness, courts must consider: (i) the burden on the defendant; (ii) the

forum's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining

convenient and effective relief; (iv) the judicial system's interest in obtaining the

most efficient resolution of controversies; and (v) the procedural and substantive

interests of other nations.  *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312,

324 (3d Cir. 2007).  These factors all demonstrate the unreasonableness of

exercising jurisdiction over IHH.  Forcing IHH to litigate this case halfway around

the world from its home jurisdiction of Malaysia would impose an unnecessary and

unreasonable burden.  New Jersey has no interest in this foreign dispute.  By

contrast, the Amended Complaint makes clear that India has significant interest in

the alleged dispute because that same dispute is allegedly the subject of numerous

proceedings in India.  Furthermore, as discussed below, Emqore's choice of forum

---

an address in California allegedly belonging to non-party Khazanah Americas,
Emqore offers no explanation of that allegation and it purported to serve IHH in
Malaysia, not California.  Am. Compl. ¶¶ 13-14; Dkt. No. 82 at ECF 13.  Emqore
alleges that Khazanah Americas is a subsidiary of Defendant Khazanah, a
Malaysian corporation that is one of IHH's minority shareholders.  Emqore does
not allege any basis for imputing Khazanah America's contacts with California to
IHH.  Moreover, those contacts are jurisdictional irrelevant because Khazanah
Americas is not alleged to have been involved in the underlying dispute.

is entitled to no deference, and litigating in this Court would be extremely inconvenient, inefficient, and impractical.  *See infra* Sections V-VI.[5]

## II.   THE AMENDED COMPLAINT FAILS TO STATE A RICO CLAIM

### A.   Emqore Does Not Allege a Domestic Injury

Emqore effectively admits that it cannot allege a domestic RICO claim and frivolously argues that this Court should apply RICO extraterritorially.  Dkt. No. 55-1 at pp. 13-15.  However, that argument is foreclosed by the Supreme Court's binding decision in *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325 (2016).  The Supreme Court held that 18 U.S.C. § 1964(c), which provides a private right of action for RICO violations, does not apply extraterritorially.  *Id.* at 346.  It explained that freely permitting foreign citizens to invoke the remedies under RICO would allow them to "bypass their home countries' less generous remedies" and potentially create "international friction."  *Id.* at 349, 346-47.  Accordingly, the Supreme Court held that a plaintiff must allege a domestic injury to establish a

---

[5] Where, as here, the exercise of personal jurisdiction would violate due process, a plaintiff cannot avoid dismissal by alleging jurisdiction under a long-arm statute. *See IMO Indus. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).  But, in any event, Emqore cannot establish long-arm jurisdiction under 18 U.S.C. § 1965(b) because that statute only confers jurisdiction over defendants that are served in the United States. *See Darrick Enters. v. Mitsubishi Motors Corp.*, Civ. No. 05-4359 (NLH), 2007 U.S. Dist. LEXIS 72956, at *82 (D.N.J. Sep. 28, 2007).  Nor can Emqore establish long-arm jurisdiction under N.J. Court Rule 4:4-4(b)(1)(B) because IHH was not personally served by a person "specially appointed" by this Court.  This Court denied Emqore's motion for alternative service, Dkt. No. 8, and thus N.J. Court Rule 4:4-4(b)(3) is also inapplicable.

civil RICO claim.  *Id.*  "[T]he location of a RICO injury depends on where the plaintiff 'suffered the injury' – not where the injurious conduct took place."  *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 702 (3d Cir. 2018).

The Amended Complaint does not allege a domestic injury.  It states that Plaintiff suffered injuries in the form of "impairment to Plaintiff's interest in executed contracts, including the 1995 Settlement Agreement and the 1998 Final Release and the attorneys' fees and costs to defend itself in … sham litigation in Ecuador."  Am. Compl. ¶ 225.  However, those allegations have nothing to do with this case and appear to have been improperly copied from the pleadings in another lawsuit.  In any event, all of the agreements alleged in the Amended Complaint involved foreign transactions between foreign parties such that any "impairment" of those contracts would have been suffered abroad.  Likewise, any litigation costs incurred by Emqore's foreign Predecessors in connection with the foreign proceedings alleged in the Amended Complaint would have been incurred abroad, and any impairment to those foreign Predecessors' "intangible bundle of litigation rights was suffered" outside of the United States.  *See Armada (Sing.) PTE, Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1095 (7th Cir. 2018).

The fact that Emqore is a Wyoming trust is of no moment.  The Third Circuit has held that the "domestic injury" requirement does not necessarily depend on the plaintiff's place of incorporation or residency.  *See Humphrey*, 905

17

F.3d at 701-02.  Rather, the analysis must focus on where the injury was initially

suffered.  *See Cevdet Aksüt Oğullari Koll. STI v. Cavusoglu*, 245 F. Supp. 3d 650,

658 (D.N.J. 2017).  Here, any injury arising out of the foreign transactions and

foreign lawsuits alleged in the Amended Complaint was initially suffered by

Emqore's foreign Predecessors outside of the United States.  Those foreign

Predecessors cannot manufacture a domestic injury by creating, and assigning their

claims to, a Wyoming trust.  *See Birim Grp., LLC v. Paa Kwesi Nduom*, No. 20 C

07198, 2021 U.S. Dist. LEXIS 225850, at *10 (N.D. Ill. Nov. 23, 2021) ("If a

foreign citizen's RICO claim could be domesticated simply by assigning it to any

domestic entity, it would render the domestic injury requirement a complete nullity

and exacerbate the very concerns the Supreme Court considered in *RJR*

*Nabisco*."); *Worldspan Marine Inc. v. Comerica Bank*, No. 18-21924-CIV, 2020

U.S. Dist. LEXIS 35480, at *27 (S.D. Fla. Feb. 27, 2020) (similar).

## B.  Emqore Fails to State a § 1962(c) RICO Claim Against IHH

To state a RICO claim under Section 1962(c), a plaintiff must allege:

> (1) that two or more persons agreed to conduct or to
> participate, directly or indirectly, in the conduct of an
> enterprise's affairs through a pattern of racketeering
> activity; (2) that the defendant was a party to or member
> of that agreement; and (3) that the defendant joined the
> agreement or conspiracy knowing of its objective to
> conduct or participate, directly or indirectly, in the conduct
> of an enterprise's affairs through a pattern of racketeering
> activity.

*Humphrey*, 905 F.3d at 699.  "The requirements of § 1962(c) must be established as to each individual defendant."  *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008).  Here, the Amended Complaint fails to adequately plead any of these elements with respect to IHH.

### 1.   Emqore Does Not Allege the Existence of an "Enterprise"

Emqore conclusorily alleges that "Defendants" constitute an association-in-fact enterprise.  Am. Compl. ¶ 173.  "[A]n association-in-fact enterprise must have at least three structural features: [1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. United States*, 556 U.S. 938, 946 (2009).  To survive a motion to dismiss, a plaintiff must plead facts sufficient to "indicate how the different actors are associated" and to show that the defendants were "acting together for a common purpose or course of conduct."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010).  Mere allegations of alleged parallel conduct and wrongdoing are not sufficient to show the requisite concerted action.  *See id.* at 374.

The Amended Complaint does not identify any "common purpose."  Nor are there any factual allegations showing IHH's relationship to the other defendants, much less allegations that IHH acted in concert with them.  To the contrary, the Amended Complaint describes a disparate group of persons pursuing their own

19

economic interests in connection with entirely separate transactions and often acting at cross-purposes with one another.[6]  For example, while Emqore identifies the Singh Brothers as the leaders of the alleged enterprise, Am. Compl. ¶ 173(a), it alleges that other members of the supposed enterprise filed multiple lawsuits against the Singh Brothers, caused the Singh Brothers to be removed from their positions at Fortis and to be arrested in India.  *Id.* ¶¶ 125, 127; Am. Compl., Ex. B ¶¶ 34-35.  Such allegations belie the notion that Defendants formed a RICO enterprise to pursue a common purpose.  *See Craig Outdoor*, 528 F.3d at 1026 (holding defendants' "purposes were not sufficiently aligned" to form a RICO enterprise); *Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004) (plaintiff failed to plead a common purpose where the enterprise members had "divergent goals").

2. Emqore Fails to Allege that IHH "Conducted or Participated in" the Conduct of a RICO Enterprise

Section 1962(c) requires factual allegations "showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis omitted).  "[O]ne is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself."  *Id.* at 183.  Thus, allegations

---

[6] Most of the Defendants are alleged to have been involved in the transaction relating to Religare, not Fortis.  There is no allegation that IHH had any relationship to those Defendants or any involvement in the Religare transaction.

showing that each defendant had "some part in directing the enterprise's affairs is required." *Id.* at 179 (emphasis omitted).

Here, the Amended Complaint contains no factual allegations showing that IHH conducted or participated in the affairs of the supposed enterprise. Instead, Emqore relies on impermissible group pleading allegations against the "RICO Defendants" collectively without any specific allegations against IHH. *See Hawk Mt. LLC v. Mirra*, Civ. No. 13-2083-SLR-SRF, 2016 U.S. Dist. LEXIS 72962, at *69 (D. Del. June 3, 2016) ("[T]he group pleading allegations in the second amended complaint are insufficient to establish Walsh's involvement in the RICO scheme."); *see also Wise v. United States*, No. 2:21-cv-10168 (BRM) (AME), 2021 U.S. Dist. LEXIS 222888, at *18 (D.N.J. Nov. 17, 2021).

At bottom, the Amended Complaint alleges that several "suitors," including Plaintiff's Predecessors and IHH, pursued an investment in Fortis and that IHH ultimately invested in Fortis. Am. Compl. ¶¶ 97, 107; Am. Compl., Ex. B ¶¶ 1, 25. Emqore cannot assert a RICO claim against IHH for pursuing its "own ostensibly legitimate business affairs." *See Mega Concrete, Inc. v. Smith,* Civ. No. 09-4234, 2011 U.S. Dist. LEXIS 30789, at *30 (E.D. Pa. Mar. 24, 2011).

### 3.   Emqore Does Not Allege Any "Pattern of Racketeering"

A "pattern of racketeering activity" requires the commission of "at least two acts of racketeering activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S.

229, 232 (1989).  Here, the Amended Complaint does not allege that IHH engaged

in any predicate acts.  It alleges that other Defendants committed extortion and

wire fraud and that IHH was "willful[ly] ignoran[t]" of those acts.  Am. Compl. ¶

221.  But Emqore cannot assert a RICO claim against IHH when IHH is not

alleged to have engaged in any predicate acts of racketeering.  *See United States v.*

*Bergrin*, 650 F.3d 257, 267 (3rd Cir. 2011).

Moreover, the Amended Complaint does not adequately allege any predicate

acts of racketeering.  As an initial matter, the RICO predicates asserted in the

Amended Complaint are allegedly based on "Defendants'" purported conduct in

various foreign proceedings.  Am. Compl. ¶¶ 178, 188, 190, 219-20, 225.  Putting

aside the fact that IHH is not alleged to have been a party to those proceedings, it is

well established that a plaintiff cannot predicate a civil RICO claim on alleged

misconduct in a separate litigation.  *See Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir.

2018) ("litigation activity 'cannot act as a predicate offense for a civil-RICO

claim.'" (quoting *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th

Cir. 2016))); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087-88 (11th Cir. 2004)

(deciding that the "alleged conspiracy to extort money through the filing of

malicious lawsuits" was not predicate acts of extortion or mail fraud under RICO);

*Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) (deciding

that meritless litigation is not a predicate act of extortion under RICO).

Moreover, the Amended Complaint's allegations of supposed RICO predicates are also frivolous on their face.

- ***Obstruction of Justice***.   The Amended Complaint states that "RICO Defendants" obstructed justice by "falsely represent[ing] that Cabrera was an independent expert."  Am. Compl. ¶ 190.  That allegation has nothing to do with this case, and Emqore's entire obstruction of justice allegation appears to have been copied from the pleadings in an unrelated lawsuit.  In any event, obstruction of justice only applies with respect to proceedings in a "court of the United States" and does not apply to the foreign proceedings alleged in the Amended Complaint.  18 U.S.C. § 1503.

- ***Trademark Infringement***.  Emqore's assertion of trademark infringement as a RICO predicate is frivolous.  Am. Compl. ¶ 216.  Trademark infringement is not a RICO predicate.  *See* 18 U.S.C. § 1961(1); *The Choice Is Yours, Inc. v. Williams*, No. 2:14-cv-01804, 2016 U.S. Dist. LEXIS 136444, at *20 (E.D. Pa. Sep. 30, 2016).  In any event, Emqore does not allege that the "Fortis Brands" are federally registered marks.  *See* 15 U.S.C. § 1114.[7]

- ***Mail & Wire Fraud***.  Mail and wire fraud must be pled with specificity under Rule 9(b).  *See Desmond v. Siegel*, No. 10-5562 (DRD), 2012 U.S. Dist. LEXIS 109579, at *29 (D.N.J. Aug. 6, 2012).  To satisfy Rule 9(b), the plaintiff must allege a specific fraudulent statement, who made it, when it was made and where it was made.  *See Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007); *Rockefeller Ctr. Props. Sec. Litig. v. Rockefeller*, 311 F.3d 198, 217 (3d Cir. 2002).  Here, the Amended Complaint does not identify any alleged misrepresentations, let alone with the specificity required by Rule 9(b).  Nor are there allegations that IHH made any misstatements or any use of the mails or wires.

- ***Securities Fraud***.  Again, Emqore fails to allege any fraud with the requisite specificity under Rule 9(b).  Moreover, IHH is not among the Defendants who are alleged to have been involved in the transactions that allegedly violated the securities laws.  Am. Compl. ¶¶ 195-214.  In any event, the U.S. securities laws do not apply to those purely foreign transactions.  *See Morrison v. Nat'l*

---

[7] Emqore erroneously cites to "18 U.S.C. § 1114" – which concerns the killing of U.S. officials and, obviously, has no relevance here.  Am. Compl. ¶ 216.

*Australia Bank*, 561 U.S. 247, at 248 (2010).

- ***Extortion***.  While Emqore's extortion allegation is entirely predicated on "Defendants'" allegedly fraudulent conduct in foreign litigations, IHH is not alleged to have been a party to any such litigations.  Moreover, a civil RICO claim cannot be predicated on an "alleged conspiracy to extort money through the filing of malicious lawsuits."  *Raney*, 370 F.3d at 1087-88; *see also Deck*, 349 F.3d at 1258 (similar).

- ***Money Laundering***.  Emqore's one-sentence allegation of money laundering vaguely asserts that "Defendants" caused a "transfer of funds to or from the United States" with the intent of changing Fortis's board of directors.  Am. Compl. ¶ 189.  However, Emqore does not identify any such transfers, and all of the alleged transactions involved foreign parties and were supposedly denominated in foreign currencies.  *See* Am. Compl., Ex. B. ¶ 15.  In any event, IHH is not alleged to have been involved in making any transfers or changes to Fortis's board.  Am. Compl. ¶ 189.

Finally, the predicate acts must be "related, and … amount to or pose a threat of continued criminal activity."  *H.J.,* 492 U.S. at 239.  Here, the vague and scattershot nature of the allegations in the Amended Complaint offers no real timeline and therefore it fails to allege the requisite continuity of illicit conduct under Section 1962(c).  *See id.*; *Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 610-11 (3d Cir. 1991).

## C.  Emqore Fails to Plead a RICO Conspiracy Claim Against IHH

As an initial matter, Emqore's RICO conspiracy claim under 18 U.S.C. § 1962(d) must be dismissed because, as discussed above, Emqore has not stated a viable underlying RICO claim.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 373.  Furthermore, "[t]o state a claim for a RICO conspiracy under section

24

1962(d), a plaintiff must allege that defendants (1) agreed to commit predicate

racketeering acts (2) with knowledge that the acts formed a pattern of racketeering

activity in violation of § 1962(a), (b), or (c)." *A-Valey Eng'rs, Inc. v. Bd. of

Chosen Freeholders*, 106 F. Supp. 2d 711, 717 (D.N.J. 2000).  Here, the Amended

Complaint fails to allege any agreement between IHH and any other Defendant,

much less an agreement to knowingly engage in predicate acts of racketeering.

## III.   EMQORE FAILS TO STATE A CLAIM FOR DECLARATORY RELIEF

Count Nine of the Amended Complaint seeks a declaratory judgment that

any foreign judgment or order obtained by Defendants against Emqore or its

Predecessors is null and void and further enjoining Defendants "from commencing,

prosecuting or advancing in any way" any legal proceedings anywhere in the

world, including any proceedings to enforce any judgments against Emqore or its

Predecessors.  Am. Compl. ¶¶ 272, 275.  While this claim appears to be predicated

on the vague allegations that Emqore's Predecessors were forced to defend

supposed sham litigations in India, there is no allegation that IHH is a party to any

such litigations.  *See id.* ¶ 234.

Moreover, Count Nine runs afoul of Rule 8(a)(2), which requires sufficient

factual allegations to "give the defendant fair notice of what the ... claim is and the

grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The Amended

Complaint does not identify any "sham litigations" commenced by any Defendant, much less identify any allegedly wrongful conduct in such litigations. Thus, IHH is left to speculate as to the basis for Count Nine.

Count Nine should also be dismissed because it fails "to state a claim *upon which relief can be granted*." FED. R. CIV. P. 12(b)(6) (emphasis added). Emqore has no basis for seeking the extraordinary remedies requested in Count Nine. While Emqore asks this Court to declare unenforceable any foreign judgments that may be entered against Emqore or its Predecessors, it does not offer any authority to support the proposition that an unsuccessful litigant in a foreign proceeding may appeal to a U.S. court to vacate the judgment of the foreign court. Such relief would violate international comity and constitute a serious affront to the sovereign dignity of the foreign court. *Cf. TermoRio S.A. E.S.P. v. Electranta S.P.,* 487 F.3d 928, 936 (D.C. Cir. 2007). The exceptionally broad foreign antisuit injunction sought by Emqore would likewise raise serious international comity concerns. *See Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 371 (5th Cir. 2003).

## IV.   EMQORE'S COMMON LAW CLAIMS ARE NOT ADEQUATELY PLED

Counts Three through Eight of the Amended Complaint purport to assert a variety of common law causes of action. However, those Counts are largely indistinguishable from each other and are effectively reformulations of Emqore's

declaratory judgment claim that likewise seek a broad global antisuit injunction against the Defendants based on alleged misconduct in foreign proceedings.  Am. Compl. ¶¶ 241, 243, 246, 248, 251, 255, 258-59, 264, 268-270, 272, 275.  Those claims should be dismissed for all the reasons stated above, *see supra* Section III, as well as the pleading deficiencies identified below.[8]

### A.    Emqore's Fraud Claim Is Not Pled with Specificity

Count Three asserts a claim for common law fraud.  Am. Compl. ¶ 238.  However, as discussed above, the Amended Complaint does not allege any fraudulent conduct with the requisite specificity required under Rule 9(b).

### B.    Emqore Fails to Plead a Tortious Interference Claim

Count Four asserts a claim for tortious interference with contract.  To state a claim for tortious interference with contract, a plaintiff must allege that: (1) it had a protected contractual interest; (2) defendant intentionally and maliciously interfered with that contractual interest; (3) there was a reasonable likelihood that the anticipated benefit from the protected interest would have been realized but for the interference; and (4) it suffered economic damage.  *See Cargill Global Trading v. Applied Development Co.,* 706 F. Supp. 2d 563, 575 (D.N.J. 2010).  Here, the Amended Complaint does not adequately allege these elements.

---

[8] None of Emqore's claims appear to be governed by New Jersey law, and IHH reserves its right to invoke foreign law.

Emqore alleges that Defendants engaged in unspecified fraudulent conduct in foreign litigations that "frustrate[d]" its supposed contract rights and caused it to incur expenses litigating "claims in Ecuador."  Am. Compl. ¶¶ 245-46.  Those allegations have nothing to do with this case, and appear to be copied from the pleadings in an unrelated lawsuit.  In any event, there are no allegations that IHH is a party to any foreign litigations involving Emqore or its Predecessors, much less allegations that IHH engaged in intentional and malicious litigation conduct.

To be sure, Emqore asserts that IHH's alleged investment in Fortis somehow violated the term sheet.  Am. Compl., Ex. B ¶ 42.  However, the Amended Complaint does not allege any intentional or malicious conduct by IHH.  "Interference is *intentional* when the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.  *Malice* means that the interference was inflicted without justification or excuse."  *Cargill*, 706 F. Supp. 2d at 575-76 (internal citations omitted; emphasis original).  A party's conduct is justified where it is pursuing its own economic interest and has a business-related explanation for its conduct.  *Id.* at 576.  Here, the Amended Complaint alleges that IHH was exploring an investment in Fortis well before Emqore's Predecessors entered into the term sheet.  Am. Compl., Ex. B ¶¶ 14-15; Am. Compl., Ex. C ¶ 26.  Thus, it is clear that IHH had a legitimate business interest in investing in Fortis that predated and was therefore completely

unrelated to the term sheet.  Furthermore, IHH allegedly made its investment in Fortis months after the term sheet expired.  Dkt. No. 34-7, § 24.  And there are no allegations that IHH otherwise acted maliciously.

Moreover, Emqore fails to allege that it was reasonably likely to realize the supposed benefit of the term sheet.  Emqore alleges that the term sheet was executed on December 6, 2017, but the term sheet states that it was only valid for 60 days and therefore expired on February 4, 2018.  There is no allegation that the parties reached any agreement to move forward with the proposed transaction in the term sheet.  To the contrary, Emqore alleges that, in May 2018 (i.e. well after the term sheet expired), Fortis refused to recognize the term sheet on the grounds that it was a forgery.  Am. Compl., Ex. B ¶¶ 37-39.  Thus, the Amended Complaint makes clear that the proposed transaction contemplated by the term sheet was not going to be consumated regardless of whether IHH invested in Fortis.

### C.    Emqore Fails to Allege a Trespass to Chattels Claim

Count Five asserts a claim for trespass to chattels alleging that the "RICO Defendants" obtained a "fraudulent judgment" that somehow interfered with "the brands" as well as Plaintiff's "resources and funds."  Am. Compl. ¶¶ 250-51.  However, there are no allegations that IHH obtained any judgment against Emqore or its Predecessors.  Moreover, trespass to chattel applies only to tangible personal property and does not apply to intangible property, such as "the brands."  *See*

29

*Dynamic Measurement Grp., Inc. v. Univ. of Or.*, 121 F. Supp. 3d 1047, 1059 (D. Or. 2015); *see also DHI Grp., Inc. v. Kent*, No. H-16-1670, 2017 U.S. Dist. LEXIS 178481, at *14 (S.D. Tex. Apr. 21, 2017); MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 25:9.50 (4th Ed. 2013).  Emqore similarly cannot assert a trespass claim with respect to its "resources and funds" because it does not allege a trespass as to any specific, discreet funds.  *Cf. Scholes Elec. & Communs. v. Fraser*, No. 04-3898 (JAP), 2006 U.S. Dist. LEXIS 39287, at *13 (D.N.J. June 14, 2006).  In fact, Emqore does not allege a trespass at all.  It alleges that its Predecessors spent their "resources and funds" on litigation costs.

**D.     Emqore Fails to Allege that IHH Was Unjustly Enriched**

Count Six asserts a claim for unjust enrichment based on the allegation that "Defendants have been and will continue to be unjustly enriched by benefits obtained due to the expectation of an imminent judgment and the forthcoming judgment itself."  Am. Compl. ¶ 257.  However, there is no allegation that IHH has sought, much less obtained, any judgment against Emqore or its Predecessors.

**E.     Emqore Fails to Allege that IHH Breached Any Implied Covenant**

Count Eight asserts a claim for breach of implied covenant of good faith and fair dealing based on unintelligible allegations that are unrelated to IHH.  Am. Compl. ¶ 266.  In any event, Emqore cannot assert a claim for breach of an implied covenant because IHH is not a party to any contracts with Emqore or its

Predecessors.  *See Luongo v. Village Supermarket, Inc.*, 261 F. Supp. 3d 520, 532 (D.N.J. 2017).

### F.   Emqore Fails to State a Civil Conspiracy Claim

Count Seven asserts a claim for civil conspiracy.  However, that claim must be dismissed because Emqore fails to state a viable underlying tort claim.  *See INDECS Corp. v. Claim Doc, LLC*, No. 16-4421 (KM) (JBC), 2020 U.S. Dist. LEXIS 182931, at *24 (D.N.J. Oct. 2, 2020).  Furthermore, Emqore does not allege the requisite element of "special damages" at all, much less with the specificity required by Rule 9(g).  *See Karachi Bakery India v. Deccan Foods LLC,* No. 14-5600 (JMV), 2017 U.S. Dist. LEXIS 180404, at *30 (D.N.J. Oct. 31, 2017).

### V.   THIS CASE SHOULD BE DISMISSED UNDER THE INTERNATIONAL ABSTENTION DOCTRINE

The international abstention doctrine recognizes that courts have the inherent power to dismiss an action based on the pendency of a related proceeding in a foreign jurisdiction.  *See Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc.*, 949 F. Supp. 1123, 1127 (S.D.N.Y. 1997).  In applying that doctrine, courts consider: (1) the similarity of the issues, (2) the order in which the actions were filed, (3) the adequacy of the alternate forum, (4) the potential prejudice to either party, (5) the convenience of the parties, (6) the connection between the litigation and the United States, and (7) the connection between the litigation and

the foreign jurisdiction.  *See Pexcor Mfg. Co. v. Uponor AB*, 920 F. Supp. 2d 151, 153 (D.D.C. 2013).  All of those factors weigh in favor of dismissal here.

The Amended Complaint alleges that Emqore's Predecessors filed numerous duplicative foreign proceedings before Emqore filed this case.  Am. Compl. ¶¶ 80-96.  While IHH is not a party to those foreign proceedings, the Amended Complaint makes clear that those proceedings arise out of the same underlying dispute and involve the same basic claims for relief as those alleged in the Amended Complaint.  *Id.*  Emqore cannot challenge the adequacy of the foreign courts or claim any prejudice of litigating abroad in view of the fact that its Predecessors have already commenced numerous foreign proceedings and agreed to a forum selection clause in the term sheet that gives Indian courts exclusive jurisdiction over any disputes relating to the proposed transaction between Walmark and Fortis.  Dkt. No. 34-7, §§ 25-26.  Litigating this case in New Jersey would be extremely inconvenient because it has no connection to the United States. It is a purely foreign dispute allegedly arising out of foreign transactions and foreign legal proceedings.  Most of the parties are foreign and most, if not all, of the evidence and witnesses are located overseas.

Moreover, the international abstention doctrine is grounded in principles of judicial economy and international comity.  *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1223-24 (11th Cir. 1999).  Here, the resolution of Emqore's claims would

require ruling on matters that are already pending before Indian courts, such as the validity of the term sheet and Emqore's supposed rights thereunder.  Judicial economy is not served by allowing Plaintiff to simultaneously litigate the same issues in both India and the United States.  The first-filed Indian proceedings should take precedence because Emqore's claims are derivative of the claims in the Indian proceedings and require resolution of matters that are governed by Indian law – *i.e.* Plaintiff's supposed rights under the term sheet and the propriety of the parties' conduct in the Indian proceedings.

International comity also weighs heavily in favor of dismissal.  As an initial matter, international comity favors dismissal where, as here, there is a risk of inconsistent rulings.  Furthermore, all of Emqore's claims are predicated on alleged litigation misconduct in proceedings in India, and Emqore is asking this Court to enjoin Defendants from engaging in any foreign litigation and to declare null and void any foreign judgments against Emqore or its Predecessors.  Such a ruling by this Court would be a serious affront to the sovereignty of India's courts and would violate fundamental principles of international comity.  *See Karaha Bodas*, 335 F.3d at 374; *see also Base Metal Trading Ltd. v. Russian Aluminum,* 98 F. App'x 47, 50 (2d Cir. 2004).  Accordingly, this case should be dismissed under the international abstention doctrine.

## VI.   THIS CASE SHOULD BE DISMISSED UNDER THE
##        *FORUM NON CONVENIENS* DOCTRINE

Alternatively, this Court should dismiss this case under the *forum non conveniens* doctrine, which gives courts discretion to dismiss a case where a "trial in the plaintiff's chosen forum would be burdensome …." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 259 (1981).  The *forum non conveniens* doctrine requires an evaluation of: (1) the amount of deference to accord the plaintiff's choice of forum; (2) the availability of an adequate alternative forum; (3) relevant "private interest" factors affecting the convenience of the litigants; and (4) relevant "public interest" factors affecting the convenience of the forum.  *See Collins v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017).  Those factors weigh heavily in favor of dismissal.

*First*, Emqore's choice of a New Jersey forum for this case is entitled to no deference.  Indeed, a plaintiff's choice of forum is entitled to little deference where, as here, "the plaintiff or real parties in interest are foreign." *See Piper Aircraft*, 454 U.S. at 255.  Plaintiff is not a New Jersey resident, and, although it claims to be a Wyoming trust, the real-parties-in-interest are Emqore's foreign Predecessors who created Emqore for the sole purpose of commencing this litigation in the United States.  Am. Compl. ¶ 5; Dkt. No. 55-5 at ECF 42-43.  The settlor of the Emqore trust is allegedly an Estonian resident.  Dkt. No. 55-5 at ECF 10.  Emqore apparently has offices in Estonia and several employees in India.  Dkt.

No. 82 at ECF 8; Dkt. No. 94-4 ¶¶ 12-16.  Accordingly, Emqore should be treated as foreign for purposes of the *forum non conveniens* analysis and its choice of forum should be given no deference.  *See Rustal Trading US, Inc. v. Makki,* 17 F. App'x 331, 338 n.6 (6th Cir. 2001) (holding that a U.S. corporation was effectively a foreign plaintiff for *forum non conveniens* purposes because it was "a shell corporation formed for the sole purpose of bringing this lawsuit and whose only asset is its right of action obtained by assignment" from its foreign predecessor).

Emqore's choice of forum is also entitled to no deference in view of the numerous foreign proceedings commenced by its foreign Predecessors.  Indeed, "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons … the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion." *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (*en banc*).  Here, Emqore's predecessors have already commenced numerous duplicative foreign legal proceedings.  Am. Compl. ¶¶ 79-96.  In apparent anticipation of adverse decisions in those cases, those foreign Predecessors created Emqore as a Wyoming trust for the sole purpose of pursuing this U.S. litigation on their behalf.  Dkt. No. 55-5 at ECF 33.  Thus, the initiation of this action is, at best, a transparent attempt at forum shopping and, at worst, an malicious use of process designed to harass Defendants through vexatious and

duplicative litigations.  A *forum non conveniens* dismissal is therefore particularly appropriate in this case.  *See Piper Aircraft*, 454 U.S. at 241; *see also Base Metal Trading SA v. Russian Aluminum,* 253 F. Supp. 2d 681, 708-10 (S.D.N.Y. 2003) (dismissing RICO claims on *forum non conveniens* grounds where the plaintiff had already unsuccessfully pursued litigation abroad).

**Second**, IHH is a Malaysian company and there is no dispute that Malaysia is an adequate alternative forum.  The fact that Emqore is asserting civil RICO claims does not change the analysis.  As the Third Circuit has held: "Federal courts have refused to afford RICO claims special treatment in *forum non conveniens* inquiries and have found dismissal on this basis proper in cases involving RICO claims."  *Windt v. Qwest Communs. Int'l, Inc.,* 529 F.3d 183, 193 (3d Cir. 2008). *See also Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 872-73 (3d Cir. 2013) (dismissing RICO claims on *forum non conveniens* grounds); *Princeton Football Partners LLC v. Football Ass'n of Ireland*, No. 11-5227 (MLC), 2012 U.S. Dist. LEXIS 101681, at *11, 31 (D.N.J. July 23, 2012) (same).

**Third**, the private interest factors also weigh heavily in favor of dismissal. Those factors address the convenience of the parties and include the ease of access to evidence and the ability to compel witnesses.  *See Windt*, 529 F.3d at 189-90. Here, most, if not all, of the evidence in this case is likely to be located abroad. Furthermore, the Amended Complaint identifies numerous so-called "Non-Party

Defendants" – all of whom appear to be foreign and thus beyond the compulsory power of this Court.  Am. Compl. ¶¶ 31-47.  Thus, litigating this exclusively foreign dispute in New Jersey would be costly, inefficient, and fraught with practical obstacles.

*Fourth*, the public interest factors also weigh heavily in favor of dismissal. Those factors "include administrative difficulties arising from increasingly overburdened courts; local interests in having the case tried at home; desire to have the forum match the law that is to govern the case to avoid conflict of laws problems or difficulty in the application of foreign law; and avoiding unfairly burdening citizens in an unrelated forum with jury duty."  *Kisano,* 737 F.3d at 873. Here, Emqore is unnecessarily burdening this Court with a vexatious lawsuit that is duplicative of several other lawsuits pending in abroad.  New Jersey has no interest in this purely foreign dispute.  This case clearly implicates issues of foreign law as the underlying agreements are governed by foreign law and Emqore has already submitted foreign law.  Dkt. No. 55-4.  None of Emqore's common law claims appear to be governed by New Jersey law and will require, at minimum, resolution of serious conflict of law issues.

## CONCLUSION

For the foregoing reasons, this Court should grant IHH's motion and dismiss the Amended Complaint with prejudice.

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

*/s/ Jacques Semmelman*

Jacques Semmelman
Joseph D. Pizzurro (pro hac vice pending)
Kevin A. Meehan (pro hac vice)
101 Park Avenue
New York, NY 10178
(212) 696-6000
jsemmelman@curtis.com
jpizzurro@curtis.com
kmeehan@curtis.com

*Attorneys for Defendant*
*IHH Healthcare Berhad*

Dated:  January 28, 2022

38