THE HONORABLE KEVIN MCNULTY

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

EMQORE ENVESECURE PRIVATE
CAPITAL TRUST,

            Plaintiff,

    v.

BHAVDEEP SINGH, et al.,

            Defendants.

Civil Action No. 2:20-cv-07324

**RETURN DATE: APRIL 4, 2022**

**ORAL ARGUMENT REQUESTED**

## DEFENDANT KHAZANAH NASIONAL BERHAD'S
## <u>MOTION TO DISMISS AMENDED COMPLAINT</u>

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

Jacques Semmelman
Joseph D. Pizzurro (pro hac vice pending)
Kevin A. Meehan (pro hac vice)
101 Park Avenue
New York, NY 10178
(212) 696-6000
jsemmelman@curtis.com
jpizzurro@curtis.com
kmeehan@curtis.com

*Attorneys for Defendant*
*Khazanah Nasional Berhad*

Dated:  January 28, 2022

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................1

BACKGROUND ..............................................................................4

      A.    The Parties..................................................................4

      B.    The Allegations in the Amended Complaint ............................5

      C.    Procedural History ....................................................11

ARGUMENT ................................................................................12

I.    The Claims Against Khazanah Must Be Dismissed for Lack of Subject Matter Jurisdiction under the FSIA ........................................12

      A.    The FSIA's Waiver Exception Does Not Apply ......................15

      B.    The FSIA's Commercial Activity Exception Does Not Apply........................................................................16

      C.    FSIA's Tort Exception Does Not Apply.................................21

II.    Emqore Cannot Establish Personal Jurisdiction over Khazanah ........23

      A.    Emqore Cannot Establish Personal Jurisdiction under the FSIA ........................................................................23

      B.    Exercising Personal Jurisdiction over  Khazanah Would Violate Due Process................................................................24

III.    The Case Should Be Dismissed Under the International Abstention and *Forum Non Conveniens* Doctrines............................26

      A.    Abstention Is Warranted Because Plaintiff Has Already Commenced Numerous Duplicative Proceedings Abroad .......26

      B.    Dismissal Is Warranted on *Forum Non Conveniens* Grounds....................................................................27

CONCLUSION..............................................................................31

i

# <u>TABLE OF AUTHORITIES</u>

<u>Pg.</u>

**Cases**

*Abelesz v. Magyar Nemzeti Bank,*
  692 F.3d 661 (7th Cir. 2012) ................................................................................18

*Antares Aircraft, L.P. v. Federal Republic of Nigeria,*
  999 F.2d 33 (2d Cir. 1993) ................................................................................21

*Argentine Republic v. Amerada Hess Shipping Corp.,*
  488 U.S. 428 (1989) ........................................................... 1, 13, 26, 28

*Asahi Metal Indus. Co. v. Superior Court of California,*
  480 U.S. 102 (1987) ................................................................................29

*Base Metal Trading SA v. Russian Aluminum,*
  253 F. Supp. 2d 681 (S.D.N.Y. 2003) ................................................................................35

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran,*
  734 F.3d 1175 (D.C. Cir. 2013) ................................................................................21

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,*
  137 S. Ct. 1312 (2017) ........................................................... 14, 15, 17

*Bristol-Myers Squibb Co. v. Superior Court of California,*
  137 S. Ct. 1773 (2017) ................................................................................31

*Butler v. Sukhoi Co.,*
  579 F.3d 1307 (11th Cir. 2009) ................................................................................17

*Canfield v. Statoil USA Onshore Props.,*
  No. 3:16-0085, 2017 U.S. Dist. LEXIS 40870 (M.D. Pa. Mar. 22, 2017) ..........30

*Corporacion Mexicana de Servicios Maritimos, S.A. v. M/T RESPECT,*
  89 F.3d 650 (9th Cir. 1996) ................................................................................18

*Crystallex Int'l Corp. v. Petroleos de Venezuela, S.A.,*
  251 F. Supp. 3d 758 (D. Del. 2017) ........................................................... 17, 20

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014) ........................................................... 29, 30

*Dale v. Colagiovanni*,
   337 F. Supp. 2d 825 (S.D. Miss. 2004) ...............................................................16

*Darrick Enters. v. Mitsubishi Motors Corp.*,
   Civ. No. 05-4359 (NLH),
   2007 U.S. Dist. LEXIS 72956 (D.N.J. Sep. 28, 2007)........................................28

*Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc.*,
   949 F. Supp. 1123 (S.D.N.Y. 1997).....................................................................32

*Ezeiruaku v. Bull*,
   617 F. App'x 179 (3d Cir. 2015)..........................................................................14

*Federal Ins. Co. v. Richard I. Rubin & Co., Inc.*,
   12 F.3d 1270 (3d Cir. 1993) .................................................................... 14, 19, 25

*Frank v. Commonwealth of Antigua & Barbuda*,
   842 F.3d 362 (5th Cir. 2016) ................................................................................23

*Gilson v. Republic of Ireland*,
   682 F. 2d 1022 (D.C. Cir. 1982) ..........................................................................29

*Gould, Inc. v. Mitsui Mining & Smelting Co.*,
   750 F. Supp. 838 (N.D. Ohio 1990) .....................................................................16

*Gregorian v. Izvestia*,
   871 F.2d 1515 (9th Cir. 1989)..............................................................................30

*Guevara v. Republic of Peru*,
   608 F.3d 1297 (11th Cir. 2010)............................................................................19

*Guirlando v. T.C. Ziraat Bankasi A.S.*,
    602 F.3d 69 (2d Cir. 2010) .......................................................................... 23, 24

*Helicopteros Nacionales de Colombia, SA v. Hall*,
   466 U.S. 408 (1984) .............................................................................................29

*In re Papandreou*,
   139 F.3d 247 (D.C. Cir. 1998) .............................................................................31

*Iragorri v. United Technologies Corp.*,
   274 F.3d 65 (2d Cir. 2001) ...................................................................................34

*Jennette v. Holsey*,
   No. 3:06cv874, 2006 U.S. Dist. LEXIS 53702 (M.D. Pa. May 30, 2006) ..........16

*Keller v. Central Bank of Nigeria*,
   277 F.3d 811 (6th Cir. 2002) ................................................................................16

*Kensington Int'l Ltd. v. Itoua*,
   505 F.3d 147 (2d Cir. 2007) ................................................................................22

*Key Equity Inv'rs Inc. v. Sel-Leb Mktg.*,
   246 F. App'x 780 (3d Cir. 2007) ..........................................................................5

*Kisano Trade & Invest Ltd. v. Lemster*,
   737 F.3d 869 (3d Cir. 2013) ................................................................................36

*McNeily v. United States*,
   6 F.3d 343 (5th Cir. 1993) ..................................................................................16

*Mickel Drilling Partners v. Cabot Oil & Gas Corp.*,
   No. 3:CV-11-0061, 2012 U.S. Dist. LEXIS 148515 (M.D. Pa. Oct. 16, 2012) ....9

*OBB Personenverkehr AG v. Sachs*,
   136 S. Ct. 390 (2015) .......................................................................... 14, 20, 24

*Odhiambo v. Republic of Kenya*,
   764 F.3d 31 (D.C. Cir. 2014) ..............................................................................23

*Ohntrup v. Fire Arms Center Inc.*,
   516 F. Supp. 1281 (E.D. Pa. 1981)......................................................................18

*Petruska v. Gannon Univ.*,
   462 F.3d 294 (3d Cir. 2006) ................................................................................17

*Pexcor Mfg. Co. v. Uponor AB*,
   920 F. Supp. 2d 151 (D.D.C. 2013) ....................................................................32

*Philippines v. Pimentel*,
   553 U.S. 851 (2008) ............................................................................................15

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ............................................................................................33

*Process & Indus. Devs. v. Fed. Republic of Nig.*,
  962 F.3d 576 (D.C. Cir. 2020) ..................................................................... 15, 17

*Republic of Argentina v. Weltover, Inc.*,
  504 U.S. 607 (1992) ...................................................................................20

*Republic of Sudan v. Harrison*,
  139 S. Ct. 1048 (2019) .............................................................................. 27, 28

*Rustal Trading US, Inc. v. Makki*,
  17 F. App'x 331 (6th Cir. 2001)..................................................................34

*Samco Global Arms, Inc. v. Arita*,
  395 F.3d 1212 (11th Cir. 2005).................................................................22

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) ........................................................... 13, 20, 24, 28

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ...................................................................................31

*Smith v. Knights of Columbus*,
  No. 15-112-SLR, 2015 U.S. Dist. LEXIS 86104 (D. Del. July 1, 2015)............16

*Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General del
  Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana,
  S.C.*,
  923 F.2d 380 (5th Cir. 1991) ..................................................................... 22, 26

*Topping v. Cohen*,
  No. 2:14-cv-146-FtM-29DNF, 2015 U.S. Dist. LEXIS 65242 (M.D. Fla. May
  19, 2015)....................................................................................................16

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
  30 F.3d 148 (D.C. Cir. 1994) ....................................................................28

*Verlinden B.V. v. Central Bank of Nigeria*,
  461 U.S. 480 (1983) ...................................................................................14

*Vermeulen v. Renault, U.S.A., Inc.*,
  985 F.2d 1534 (11th Cir. 1993)..................................................................30

*Virtual Countries, Inc. v. Republic of S. Afr.*,

300 F.3d 230 (2d Cir. 2002) ........................................................ 21, 24

*Westfield v. Federal Republic of Germany*,
633 F.3d 409 (6th Cir. 2011) ...........................................................21

*Windt v. Qwest Commc'ns Int'l, Inc.*,
529 F.3d 183 (3d Cir. 2008) ............................................................35

*World Wide Minerals v. Republic of Kazakhstan*,
296 F.3d 1154 (D.C. Cir. 2002) .......................................................18

**Statutes**

18 U.S.C. § 1962(c) ........................................................................11

18 U.S.C. § 1962(d) ........................................................................11

18 U.S.C. § 1965(b) ........................................................................28

28 U.S.C. § 1330(a) ................................................................ 2, 14, 15

28 U.S.C. § 1330(b) .....................................................................2, 27

28 U.S.C. § 1603(a) ........................................................................13

28 U.S.C. § 1603(b) .....................................................................1, 15

28 U.S.C. § 1604 .................................................................. 1, 13, 15

28 U.S.C. § 1605 ...........................................................................27

28 U.S.C. § 1605(a)(1) ............................................................... 17, 18

28 U.S.C. § 1605(a)(2) ........................................................... 19, 20, 24

28 U.S.C. § 1605(a)(5) .....................................................................26

28 U.S.C. § 1608 ..........................................................................2, 28

**Federal Rules**

FED. R. CIV. P. 12(b)(1) .....................................................................1

FED. R. CIV. P. 12(b)(2) .....................................................................1

FED. R. CIV. P. 12(b)(4)............................................................................................1

FED. R. CIV. P. 12(b)(5)............................................................................................1

**Legislative History**

H.R. Rep. No. 94-1487 (1976),
    *as reprinted in* 1976 U.S.C.C.A.N. 6604 .........................................................24

Defendant Khazanah Nasional Berhad ("Khazanah") respectfully submits this motion to dismiss for lack of subject matter and personal jurisdiction pursuant to the Foreign Sovereign Immunities Act ("FSIA") and Fed. R. Civ. P. 12(b)(1)-(2), improper service of process under the FSIA and Fed. R. Civ. P. 12(b)(4)-(5) and the international abstention and *forum non conveniens* doctrines.

## PRELIMINARY STATEMENT

Khazanah is Malaysia's sovereign wealth fund.  It is a Malaysian corporation that is wholly owned by the Malaysian government and thus qualifies as an "agency or instrumentality of a foreign state" as defined in the FSIA.  28 U.S.C. § 1603(b).  The FSIA is the sole basis for obtaining jurisdiction over an agency or instrumentality of a foreign state, such as Khazanah.  *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989).  Pursuant to the FSIA, Khazanah is presumptively immune from the jurisdiction of U.S. courts unless one of the FSIA's exceptions to immunity apply.  28 U.S.C. § 1604. Indeed, establishing one of the FSIA's enumerated exceptions to immunity is a requisite element of subject matter jurisdiction under the FSIA, 28 U.S.C. § 1330(a).  Here, Plaintiff Emqore Envesecure Private Capital Trust ("Plaintiff" or "Emqore") – an alleged Wyoming trust created and controlled by foreign entities, Am. Compl. ¶ 14  – acknowledges that Khazanah is a foreign sovereign, Dkt. No. 55-1 at ECF 11, and is therefore entitled to sovereign immunity.  However, the

Amended Complaint does not assert any of the FSIA's exceptions to immunity. None apply.  Therefore, the claims against Khazanah must be dismissed with prejudice for lack of subject matter jurisdiction under the FSIA.

Khazanah must also be dismissed from this case for lack of personal jurisdiction.  To establish personal jurisdiction under the FSIA, a plaintiff must establish one of the FSIA's exceptions to immunity and serve the defendant in accordance with the FSIA's exclusive procedures for serving foreign sovereigns. 28 U.S.C. § 1330(b).  Again, none of the FSIA's exceptions to immunity apply, and Emqore has not even attempted to serve Khazanah in accordance with the FSIA.  28 U.S.C. § 1608.

Furthermore, the exercise of personal jurisdiction over Khazanah would not comport with the requirements of due process.  As a Malaysian corporation, Khazanah is not subject to general jurisdiction in the United States.  Nor is Khazanah subject to specific jurisdiction in this case.  The Amended Complaint does not allege that Khazanah (or anyone else) has done anything in the United States.  All of the alleged events in the Amended Complaint allegedly occurred abroad.  Thus, Emqore cannot establish personal jurisdiction over Khazanah.

This Court should also dismiss this case under the international abstention doctrine, which permits courts to dismiss a lawsuit in favor of a previously filed foreign lawsuit to avoid inconsistent rulings and to promote efficiency.  Here, the

Amended Complaint alleges that Emqore's supposed predecessors – all of whom are foreign entities – have already commenced numerous foreign legal proceedings in connection with the same foreign transactions alleged in the Amended Complaint.  Anticipating an unfavorable outcome in those foreign proceedings, Emqore's foreign predecessors allegedly created Emqore for the sole purpose of commencing this duplicative lawsuit in the United States.  While Khazanah is not a party to any of those foreign proceedings, Emqore should not be permitted to open a new litigation front in the United States to litigate the same dispute that its predecessors are litigating overseas.

Alternatively, this Court should dismiss this case under the *forum non conveniens* doctrine, which allows courts to dismiss a case in favor of a more convenient forum where the case has little connection to the United States.  This case has no connection to the United States.  Again, the Amended Complaint alleges a purely foreign dispute relating to a foreign transactions between foreign parties to acquire interests in a foreign company.  Nearly all of the parties to this case are foreign, including Khazanah.  While Emqore is allegedly a Wyoming trust, it is a *de facto* foreign entity that was created by its foreign predecessors in a transparent attempt to get another bite at the apple by bringing this case in New Jersey while simultaneously litigating the same dispute in numerous foreign proceedings.  This case represents the very sort of blatant and vexatious forum

3

shopping that the *forum non conveniens* doctrine is designed to prevent.  Put bluntly, Emqore has no good faith basis for bringing this case in the United States. It should be dismissed with prejudice.

**BACKGROUND**

### A.     The Parties

Khazanah is Malaysia's sovereign wealth fund and is wholly owned by the Malaysian government.  Am. Compl. ¶ 14.  It is a corporation formed under the laws of Malaysia and has its principal place of business in Kuala Lumpur, Malaysia.  *Id.*  The Amended Complaint alleges that Khazanah owns a subsidiary, Khazanah Americas, Inc. ("KAI"), that has an office in California.  Am. Compl. ¶ 14.  KAI is a separate company and is not a party to this case.  There is no allegation that KAI had any involvement in the underlying dispute.  Khazanah indirectly owns a minority interest in Defendant IHH Healthcare Berhad ("IHH"), a publicly traded Malaysian company that, in turn, holds an indirect minority interest in Defendant Fortis Healthcare Ltd. ("Fortis"), an Indian company.[1]  Am. Compl. ¶ 13.

---

[1] IHH Healthcare Berhad, Annual Report for 2020, at pp. 8, 294, 309 (*available at* https://www.bursamalaysia.com/market_information/announcements/company_announcement/announcement_details?ann_id=3152313).  This Court may take judicial notice of IHH's securities filings for purposes of this motion to dismiss. *See Key Equity Inv'rs Inc. v. Sel-Leb Mktg.,* 246 F. App'x 780, 788 n.13 (3d Cir. 2007).

Emqore is allegedly a Wyoming trust, Am. Compl. ¶ 5, that apparently has its "administrative offices" in Estonia. Dkt. No. 82 at ECF 8. Emqore had no involvement in the events alleged in the Amended Complaint. It was created for the sole purpose of bringing this lawsuit in the United States on behalf of "Plaintiff's Predecessors" – a "network" of foreign entities, including two Indian companies: Participation Finance & Holdings (India) ("PFH") and Walmark Health Private Limited ("Walmark"). Am. Compl. ¶¶ 5, 102. Plaintiff's Predecessors allegedly assigned their claims to Emqore pursuant to an "Assignment" dated January 22, 2020 – well after the events alleged in the Amended Complaint. Am. Compl. ¶ 5. That Assignment acknowledges that the claims that were supposedly assigned to Emqore are the subject matter of proceedings pending before foreign courts and that "a likely adverse decision could … be expected" in those cases. Dkt. No. 55-5 at ECF 33.

The Amended Complaint names 28 Defendants – the vast majority of whom are foreign, including Khazanah. The Amended Complaint also lists 21 so-called "Non-Party Defendants," all of whom appear to be foreign.

## B.  The Allegations in the Amended Complaint

While the Amended Complaint mentions Khazanah in passing, the allegations against Khazanah are extremely vague and vanishingly thin. The Amended Complaint asserts claims purportedly arising out of two separate and

distinct foreign transactions – one relating to Fortis and the other relating to

Defendant Religare Enterprises Limited ("Religare").  There are no allegations

against Khazanah with respect to the Religare transaction.  Thus, for purposes of

Khazanah's motion to dismiss, this Court need only consider the few vague

allegations against Khazanah relating to Fortis.

According to the Amended Complaint, Fortis is an Indian company that was

allegedly founded by two Indian nationals, Defendants Malvinder and Shivinder

Singh (the "Singh Brothers").  Am. Compl. ¶¶ 7, 12, 97.  The Singh Brothers

allegedly siphoned assets out of Fortis in a supposed attempt to frustrate an Indian

court judgment entered in favor of non-party Daiichi Sankyo, a Japanese company,

in a completely unrelated litigation in 2016.  Am. Compl. ¶¶ 7, 89, 97, 146, 196-

213.  There are no factual allegations that Khazanah was involved in the Singh

Brothers' alleged misconduct.[2]

In June 2017, Malaysian Defendant IHH allegedly entered into an exclusive

agreement to acquire an interest in Fortis.  Am. Compl., Ex. C ¶ 26.  However, on

---

[2] Paragraph 173(b) of Amended Complaint vaguely alleges that Khazanah somehow "exert[ed] influence" over the Singh Brothers' enterprises and "turn[ed] a blind eye" to the Singh Brothers' misconduct.  Am. Compl. ¶ 173(b).  However, the reference to Khazanah appears to be one of many typos in the Amended Complaint as the remainder of Paragraph 173(b) concerns another Defendant.  In any event, there is not a single pleaded fact in the Amended Complaint to support the conclusory allegations in Paragraph 173(b).  Nor are there any factual allegations that Khazanah had any dealings with the Singh Brothers.

June 28, 2017, IHH allegedly pulled out of the deal over concerns about the Singh

Brothers' misconduct.  *Id.* ¶ 27; Am. Compl. ¶ 107.  Khazanah is not alleged to

have been involved in this deal.

Between June and December 2017, certain Defendants allegedly filed

lawsuits against the Singh Brothers in India.  Am. Compl. ¶¶ 130-33.  The

Amended Complaint alleges that these lawsuits resulted in the public disclosure of

the Singh Brothers' misconduct and thereby caused Fortis's share price to decline.

*Id.*  Khazanah is not alleged to have been a party to these lawsuits.

Meanwhile, Plaintiff's Indian Predecessors, Walmark and PFH, supposedly

began negotiating with the Singh Brothers in September 2017 to acquire an interest

in Fortis.  Am. Compl., Ex. B ¶¶ 1-2.  The Amended Complaint alleges that

Walmark met with Fortis in India in December 2017 to negotiate a term sheet,

which was allegedly executed in India on December 6, 2017.  *Id.* ¶¶ 14-15.  The

term sheet refers to a "Proposed Transaction" in which Fortis would issue shares to

Walmark in exchange for a payment in Indian rupees.  Dkt. No. 34-7, § 3.  The

term sheet states that it would remain valid for 60 days and would require the

execution of further transaction documents within that 60-day period if the

proposed transaction were to move forward.  *Id.* §§ 14, 24.  The term sheet was

governed by Indian law and provided for the parties to resolve disputes through

arbitration seated in India.  *Id.* § 25.  It otherwise provided for Indian courts to

7

have exclusive jurisdiction over disputes relating to the proposed transaction.  *Id.* § 26.  Emqore alleges that Walmark and Fortis also entered into a side letter that provided for Fortis to pay a break-up fee in the event the proposed transaction did not close.  Am. Compl., Ex. B ¶¶ 16, 23.  Khazanah is not a party to the term sheet or the side letter.

According to the Amended Complaint, in February 2018, the "Defendants" allegedly conspired to oust the Singh Brothers and take control of Fortis's board of directors.  *Id.* ¶ 34; Am. Compl. ¶¶ 111, 165 n.27.  The Amended Complaint alleges that Defendants New York Life Investment Management LLC ("<u>NYLIM</u>"), Siguler, Guff & Company, LP ("<u>Siguler</u>") and the International Finance Corporation ("<u>IFC</u>") recruited Defendants East Bridge Capital Master Fund Ltd. and East Bridge Capital Master Fund I Ltd. (together, "<u>East Bridge</u>") to acquire an interest in Fortis.  Am. Compl. ¶ 108.  However, that same paragraph identifies the IFC, NYLIM, and Siguler as being involved in the separate and distinct Religare transaction.[3]  *Id.*  Indeed, the Amended Complaint alleges that those Defendants were investors in Religare – not Fortis.  *Id.* ¶¶ 9-11.  Thus, while Emqore vaguely alleges that those Defendants purportedly consulted with Khazanah before

---

[3] Emqore previously characterized the IFC, NYLIM and Siguler as "Religare Defendants."  Dkt. No. 1 at pp. 6-7.  *See also Mickel Drilling Partners v. Cabot Oil & Gas Corp.,* No. 3:CV-11-0061, 2012 U.S. Dist. LEXIS 148515, at *22 (M.D. Pa. Oct. 16, 2012) (refusing to accept as true amended allegations that contradicted the allegations in the original complaint).

recruiting East Bridge to invest in Fortis, the incongruity of that allegation together with the fact that the Amended Complaint is extremely disjointed and riddled with typos suggest that this allegation was made in error. *Id.* ¶ 108. But, in any event, there are no factual allegations to explain the supposed "consultation" between those Defendants and Khazanah. Nor is there any allegation that there was anything wrong about this alleged "consultation."

The Amended Complaint alleges that, after acquiring an interest in Fortis, East Bridge supposedly instigated changes to Fortis's management and the composition of its board of directors. *Id.* ¶¶ 108, 125. As a result of these changes, the Singh Brothers allegedly resigned from their roles at Fortis in February 2018. Am. Compl., Ex. B ¶ 34. Khazanah is not alleged to have been involved in East Bridge's investment in Fortis or any of the alleged changes to Fortis's management and board of directors.

On May 16, 2018, Walmark allegedly asked Fortis to "bring the [term sheet] before its Board for confirmation." *Id.* ¶ 38. Fortis allegedly refused to do so and claimed that it had not signed the term sheet. *Id.* ¶ 39. In October 2018, Walmark allegedly demanded that Fortis pay a break-up fee under the alleged side letter, which Fortis apparently refused to pay. *Id.* ¶ 43. Khazanah is not alleged to have been involved in any of the dealings between Walmark and Fortis.

In December 2018, "Defendants" allegedly filed criminal complaints against

9

the Singh Brothers in India resulting in the Singh Brothers' being arrested.  Am. Compl. ¶¶ 88, 127.  Khazanah is not alleged to have been involved in the criminal cases against the Singh Brothers.

The Amended Complaint alleges that, at some point after October 2018, IHH purchased shares of Fortis at a depressed price.  *Id.* ¶¶ 97-98, 108.  Emqore vaguely alleges that Khazanah played a role in "luring" IHH back to the negotiating table with Fortis.  *Id.* ¶ 126.  There are no factual allegations to explain what Khazanah supposedly did to "lure" IHH back to the negotiating table.

The Amended Complaint alleges that Plaintiff's Predecessors commenced several lawsuits, arbitrations and regulatory proceedings in India relating to the term sheet and Fortis.  *Id.* ¶¶ 80-96, 144.  It also vaguely alleges that Plaintiff's Predecessors have been forced to defend themselves in "sham litigation[s]" in India.  *Id.* ¶¶ 241, 243, 246, 248, 251, 255, 258-59, 264, 268-270, 272, 275.  There is no allegation that Khazanah is a party to any of these proceedings.

Emqore asserts that the alleged events discussed above relating to Fortis – all of which allegedly occurred abroad – somehow constitute a fraudulent scheme that violated the Racketeering, Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d).  Emqore also asserts common-law claims against Khazanah for fraud, tortious interference with contract, trespass to chattels, unjust enrichment, civil conspiracy, and breach of implied covenant of good faith

and fair dealing in connection with the foreign litigations alleged in the Amended Complaint.  Emqore also asserts a declaratory judgment claim seeking a declaration that any "judicial process by the Defendants is unenforceable and non-recognizable" as well as an injunction precluding Defendants from commencing, prosecuting or advancing any legal proceedings against Plaintiff or its "co-venturers" anywhere in the world, including any actions to enforce any judgments against the assets of Plaintiff, its subsidiaries or its "co-venturers."  *Id.* ¶¶ 272, 275.  Emqore is seeking damages in excess of $6.5 billion.  *Id.* at pp. 79-80.

### C.   Procedural History

Emqore commenced this action on June 16, 2020.  The vast majority of Defendants, including Khazanah, are foreign, and Emqore filed a motion for leave to serve the foreign Defendants via email and courier service on July 2, 2020.  Dkt. No. 4.  This Court denied that motion.  Dkt. No. 8 at ECF 6-7.  Thereafter, Emqore filed a declaration from Dilip Kumar, an Indian attorney, who claims that he was retained through Emqore's offices in Estonia to effect service on Defendants in this case.  Dkt. No. 82 at ECF 8.  Mr. Kumar allegedly engaged unidentified "service providers" in Singapore, Mauritius, and Malaysia to serve Defendants in those jurisdictions.  *Id.* at ECF 9.  Mr. Kumar appended a chart to his declaration stating that Khazanah was served "in-person" on September 29, 2021.  *Id.* at ECF 13.  Mr. Kumar does not identify who purportedly attempted to serve Khazanah or provide

11

any details regarding how that person supposedly attempted to service Khazanah.
This was Emqore's only attempt to serve Khazanah.

Meanwhile, several Defendants filed motions to dismiss.  Dkt. Nos. 25, 33-
34, 80.  On May 25, 2021, Emqore filed a motion to amend its complaint.  Dkt.
No. 55.  On November 30, 2021, Magistrate Judge James B. Clark, III granted
Emqore's motion to amend, but acknowledged that the amendments may not cure
the deficiencies identified in the motions to dismiss the original complaint.  Dkt.
No. 99.[4]  On December 3, 2021, Emqore filed its Amended Complaint, which
names new defendants and adds new common-law claims as well as a new
declaratory judgment claim.  Dkt. No. 102.  The Amended Complaint also adds an
entire section entitled "Procedural History" consisting entirely of allegations
concerning the numerous foreign proceedings that Plaintiff's Predecessors have
commenced in connection with the dispute alleged in the Amended Complaint.

## ARGUMENT

## I.   THE CLAIMS AGAINST KHAZANAH MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION UNDER THE FSIA

The FSIA provides "the sole basis for obtaining jurisdiction over a foreign
state in the courts of this country."  *Amerada Hess*, 488 U.S. at 443.  The FSIA
defines a "foreign state" to include "an agency or instrumentality of a foreign

---

[4] Khazanah has not consented to referral of this case to the Magistrate Judge under
28 U.S.C. § 636 and understands that the District Judge will decide this motion.

state."  28 U.S.C. § 1603(a).  Pursuant to the FSIA, foreign states are

presumptively immune from the jurisdiction of U.S. courts.  *See* 28 U.S.C. § 1604;

*Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).  That presumption can be

overcome only in a "nonjury civil action" where the plaintiff establishes the

substantive requirements of one of the FSIA's enumerated exceptions to immunity.

*See* 28 U.S.C. § 1330(a); *Ezeiruaku v. Bull,* 617 F. App'x 179, 181 (3d Cir. 2015).

If the plaintiff fails to establish an exception to immunity, the case must be

dismissed for lack of subject matter jurisdiction.  *See OBB Personenverkehr AG v.*

*Sachs* ("*OBB*"), 136 S. Ct. 390, 393 (2015); *Federal Ins. Co. v. Richard I. Rubin &*

*Co., Inc.*, 12 F.3d 1270, 1282 (3d Cir. 1993).

The Supreme Court has repeatedly held that foreign sovereign immunity

under the FSIA is a "threshold" issue that must be decided at the outset of the case.

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S.

Ct. 1312, 1324 (2017); *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480,

493 (1983).  Thus, foreign states cannot be compelled to address the merits of a

case unless and until the court determines that one of the FSIA's exceptions to

immunity applies and that decision is upheld on an immediate interlocutory appeal.

*See Helmerich & Payne*, 137 S. Ct. at 1323; *Process & Indus. Devs. v. Fed.*

*Republic of Nig.* ("*P&ID*"), 962 F.3d 576, 585 (D.C. Cir. 2020); *see also*

*Philippines v. Pimentel*, 553 U.S. 851, 864 (2008) (the "court's consideration of

13

the merits was itself an infringement on foreign sovereign immunity").

Khazanah is a Malaysian company that is wholly owned by the Government of Malaysia and thus qualifies as "an agency or instrumentality of a foreign state" under the FSIA.  28 U.S.C. § 1603(b).  Khazanah is therefore presumptively immune from the jurisdiction of U.S. courts.  28 U.S.C. § 1604.  As an initial matter, there is serious doubt as to whether a RICO claim can ever be brought against a foreign state, such as Khazanah.  The FSIA limits the exercise of subject matter jurisdiction to "*civil* action[s]" and contains no exceptions to immunity for criminal matters.  28 U.S.C. § 1330(a) (emphasis added).  Several courts have, thus, construed Section 1330(a)'s limited grant of subject matter jurisdiction over "civil" actions as precluding the exercise of jurisdiction over civil RICO claims on the grounds that such claims require the establishment of a predicate *criminal* offense.  *See Keller v. Central Bank of Nigeria*, 277 F.3d 811, 820 (6th Cir. 2002); *Dale v. Colagiovanni*, 337 F. Supp. 2d 825, 842 (S.D. Miss. 2004), *aff'd in part and rev'd in part on other grounds,* 443 F.3d 425 (5th Cir. 2006); *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 750 F. Supp. 838, 844 (N.D. Ohio 1990); *cf. McNeily v. United States*, 6 F.3d 343, 350 (5th Cir. 1993) (federal agencies cannot be held liable under RICO); *Smith v. Knights of Columbus*, No. 15-112-SLR, 2015 U.S. Dist. LEXIS 86104, at *11 (D. Del. July 1, 2015) (same); *Jennette v. Holsey*, No. 3:06cv874, 2006 U.S. Dist. LEXIS 53702, at *2 (M.D. Pa. May 30, 2006)

(same); *Topping v. Cohen,* No. 2:14-cv-146-FtM-29DNF, 2015 U.S. Dist. LEXIS 65242, at *31 n.12 (M.D. Fla. May 19, 2015) ("[G]overnment entities cannot be held civilly liable under [RICO].").

In any event, Emqore does not invoke any of the FSIA's exceptions to immunity, and, as demonstrated below, none apply.  Thus, the Amended Complaint must be dismissed with prejudice.  *See, e.g., Butler v. Sukhoi Co.,* 579 F.3d 1307, 1314 (11th Cir. 2009).[5]

### A.    The FSIA's Waiver Exception Does Not Apply

The FSIA's waiver exception applies where the foreign state waived its sovereign immunity with respect to the action at issue.  28 U.S.C. § 1605(a)(1). The waiver exception is narrowly construed and does not apply absent strong evidence that the foreign state intended to waive its immunity from the jurisdiction of U.S. courts.  *See Abelesz v. Magyar Nemzeti Bank,* 692 F.3d 661, 670 (7th Cir. 2012); *World Wide Minerals v. Republic of Kazakhstan,* 296 F.3d 1154, 1162

---

[5] Khazanah's motion presents a facial challenge to subject matter jurisdiction that attacks the legal sufficiency of Emqore's jurisdictional allegations.  *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006); *Crystallex Int'l Corp. v. Petroleos de Venezuela, S.A.,* 251 F. Supp. 3d 758, 763-64 (D. Del. 2017), *rev'd on other grounds,* 879 F.3d 79 (3d Cir. 2018) .  While the allegations in the Amended Complaint are accepted as true for purposes of this motion, nothing in this memorandum should be construed as an admission by Khazanah as to the truth or accuracy of any allegation.  Khazanah reserves its right to seek dismissal of the Amended Complaint on the merits in the event the Court denies this motion to dismiss for lack of jurisdiction under the FSIA and that decision is upheld by the Third Circuit.  *See Helmerich & Payne*, 137 S. Ct. at 1323; *P&ID*, 962 F.3d at 585.

(D.C. Cir. 2002). Here, Emqore does not, and cannot, claim that Khazanah explicitly waived its immunity in this case. Nor does this case fall within any of the very limited circumstances in which courts may imply a waiver of immunity under Section 1605(a)(1). *See Corporacion Mexicana de Servicios Maritimos, S.A. v. M/T RESPECT,* 89 F.3d 650, 656 (9th Cir. 1996); *Ohntrup v. Fire Arms Center Inc.,* 516 F. Supp. 1281, 1285 (E.D. Pa. 1981).

## B. The FSIA's Commercial Activity Exception Does Not Apply

The FSIA's commercial activity exception provides that a foreign state is not immune from the jurisdiction of U.S. courts where:

> [T]he action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). Here, the commercial activity exception does not apply because (i) Emqore cannot establish the requisite jurisdictional nexus with the United States under any clause of Section 1605(a)(2); and (ii) this case is not "based upon" Khazanah's commercial activity.

### 1. Emqore Cannot Establish a Jurisdictional Nexus to the U.S.

All three clauses of the FSIA's commercial activity exception require a jurisdictional nexus between the United States and the foreign state's commercial

activity that is the basis of the plaintiff's claim.  *See* 28 U.S.C. § 1605(a)(2);

*Federal Ins.*, 12 F.3d at 1287-88; *Guevara v. Republic of Peru*, 608 F.3d 1297,

1307 (11th Cir. 2010).  Emqore alleges no such nexus.

The first and second clauses of the FSIA's commercial activity exception

apply only where the suit is based upon the foreign state's conduct in the United

States.  *See* 28 U.S.C. § 1605(a)(2); *see also OBB*, 136 S. Ct. at 396; *Nelson*, 507

U.S. at 358; *Crystallex,* 251 F. Supp. 3d at 767, 770.  Those exceptions are

therefore inapplicable here because there is no allegation that Khazanah did

anything in the United States.[6]

The third clause (or so-called "direct effect" clause) of the FSIA's

commercial activity exception is also inapplicable.  The direct effect clause applies

only where the action is "based upon" an act by the foreign state abroad that

"causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).  A "direct

effect" is one that follows as an immediate consequence of the foreign state's

extraterritorial act.  *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618

(1992).  The "direct effect" clause requires more than "purely trivial effects in the

---

[6] Because Khazanah is a Malaysian corporation, the only plausible inference is that any alleged conduct by Khazanah occurred in Malaysia.  *See Crystallex,* 251 F. Supp. 3d at 767 ("The Court agrees with PDVSA [a Venezuelan state-owned company] that the Complaint fails to allege where PDVSA's acts occurred; the only plausible inference is that they occurred where PDVSA is solely located: in Venezuela.").

United States." *Id.  See also Westfield v. Federal Republic of Germany*, 633 F.3d 409, 414 (6th Cir. 2011) ("When considering whether an action caused a direct effect in the United States we are cognizant of the Act's presumption that foreign sovereigns are immune, and wary of applying this requirement too loosely such that our courts become a haven for airing the world's disputes."); *Virtual Countries, Inc. v. Republic of S. Afr.*, 300 F.3d 230, 238 (2d Cir. 2002) ("Congress did not intend to provide jurisdiction whenever the ripples caused by an overseas transaction manage eventually to reach the shores of the United States.").

While Emqore claims to be a Wyoming trust, it is well established that "an American entity's mere financial loss is insufficient to establish a direct effect in the United States." *Westfield,* 633 F.3d at 417; *see also Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1184 (D.C. Cir. 2013); *Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 999 F.2d 33, 36 (2d Cir. 1993).

Moreover, Emqore is seeking to redress supposed harms suffered by its foreign Predecessors and therefore, assuming that the supposedly tortious conduct alleged in the Amended Complaint had any effect at all, that effect was felt outside of the United States.  *See Kensington Int'l Ltd. v. Itoua,* 505 F.3d 147, 158 (2d Cir. 2007) ("Kensington is a foreign corporation and thus any alleged injury it suffered occurred outside the United States."); *Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General del Sindicato Revolucionario de Trabajadores*

*Petroleros de la Republica Mexicana, S.C.* ("*Stena*"), 923 F.2d 380, 390 (5th Cir. 1991) ("Stena is a Swedish corporation; any financial loss it has suffered affects Sweden, not the United States.").

Emqore's foreign Predecessors cannot manufacture a "direct effect in the United States" by purporting to assign their claims to Emqore, a newly created Wyoming trust. *See Samco Global Arms, Inc. v. Arita*, 395 F.3d 1212, 1218 (11th Cir. 2005) (holding that the assignment of a claim to a U.S. entity did not demonstrate a direct effect in the U.S.); *see also Odhiambo v. Republic of Kenya*, 764 F.3d 31, 38 (D.C. Cir. 2014) (holding that plaintiff could not establish a direct effect in the United States by emigrating to the United States); *Guirlando v. T.C. Ziraat Bankasi A.S.,* 602 F.3d 69, 77-79 (2d Cir. 2010) (holding that a foreign tort injuring an American plaintiff abroad did not have a direct effect in the United States simply because the plaintiff subsequently returned to the United States).

Finally, as explained below, there are no allegations that Khazanah did anything, much less allegations that Emqore suffered any harm as a direct and immediate consequence of Khazanah's actions. *See infra* Section I.B.2. Rather, Emqore's claims are entirely predicated on the alleged conduct of third parties, and therefore Emqore cannot establish that Khazanah's alleged conduct caused a *direct* effect in the United States. *See Frank v. Commonwealth of Antigua & Barbuda*, 842 F.3d 362, 369-70 (5th Cir. 2016) ("While Antigua may have helped facilitate

19

Stanford's sale of the fraudulent [certificates of deposit], Stanford's criminal activity served as an intervening act interrupting the causal chain between Antigua's actions and any effect on investors."); *Guirlando*, 602 F.3d at 79-80 (finding no "direct effect" where a third party's allegedly illegal conduct was an "intervening element" that broke the causal chain between the defendant's actions and the effect on the plaintiff); *see also Virtual Countries,* 300 F.3d at 238 ("This tangled causal web does not provide the requisite immediacy to establish jurisdiction [under the direct effect clause].").

> 2.      This Case Is Not "Based Upon"
>         <u>Khazanah's Commercial Activity</u>

All three clauses of Section 1605(a)(2) require the plaintiff's action to be "based upon" the foreign state's alleged commercial acts.  The "based upon" requirement "calls for something more than a mere connection with, or relation to" the foreign state's alleged commercial conduct.  *Nelson*, 507 U.S. at 358.  Rather, the Supreme Court held in *OBB* that an action is "based upon" an act of the foreign state only if that act constitutes the "gravamen" of the plaintiff's lawsuit – *i.e.*, the "acts that actually injured [the plaintiff]."  136 S. Ct. at 395.

Here, Khazanah is not alleged to have engaged in any "acts that actually injured [the plaintiff]" and thus Khazanah's alleged conduct does not form the "gravamen" of this case.  *See id.*  At most, Emqore vaguely alleges Khazanah played a role in "luring" IHH back to the negotiating table with Fortis in 2018 after

20

IHH previously pulled out of a deal to acquire an interest in Fortis in June 2017. Am. Compl. ¶ 126.  However, that allegation does not constitute the "gravamen" of this case.  Indeed, there is no allegation that Khazanah's conduct caused any harm to Emqore or its Predecessors.  Rather, all of the claims in the Amended Complaint are predicated on allegations that Emqore's Predecessors were injured as a result of supposed misconduct by third parties in foreign legal proceedings.  Am. Compl. ¶¶ 225, 234, 241, 246, 251.  Khazanah is not alleged to have been a party to any such proceedings, and the Third Circuit has held that the FSIA's commercial activity exception applies only where the lawsuit is "based upon" the commercial acts of the foreign state and not the acts of third parties.  *See Federal Ins.*, 12 F.3d at 1288.

Finally, the Amended Complaint alleges that Khazanah owns a U.S. subsidiary, KAI.  However, the Third Circuit has held that the FSIA's commercial activity exception does not apply simply because a foreign state defendant owns a U.S. subsidiary.  *See id.* at 1286-87.  In any event, there are no allegations that KAI had any involvement in the underlying dispute.

### C.    FSIA's Tort Exception Does Not Apply

The FSIA's tort exception confers jurisdiction over tort claims against foreign states seeking money damages "for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or

omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5). This exception applies only where the entire tort – meaning both the wrongful conduct and the resulting injury – occurred in the United States. *See Amerada Hess*, 488 U.S. at 441. The tort exception does not apply to foreign torts regardless of whether the alleged tort "may have had effects in the United States." *Id.* Here, Emqore alleges that all of the supposedly tortious conduct occurred abroad and any injury resulting from that foreign conduct would have been suffered by Emqore's foreign Predecessors outside of the United States. *See Stena,* 923 F.2d at 390. Moreover, as explained above, there is no allegation that Khazanah did anything in the United States. Thus, the FSIA's tort exception does not apply.

The tort exception also states that it "shall not apply to … any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 1605(a)(5)(B). That exclusion clause precludes Emqore from invoking the tort exception with respect to any of its claims because those claims are all predicated on alleged abuses of process by third parties in foreign proceedings. In addition, that exclusion clause also establishes that the tort exception does not apply to Emqore's tortious interference claim or any of Emqore's claims that are predicated on allegations of

fraud.[7]

## II.   EMQORE CANNOT ESTABLISH PERSONAL JURISDICTION OVER KHAZANAH

Because none of the FSIA's exceptions to immunity apply and because

Plaintiff failed to serve Khazanah under the FSIA, Plaintiff cannot establish a

statutory basis for personal jurisdiction over Khazanah.  Nor would the exercise of

jurisdiction over Khazanah comport with the requirements of due process.

### A.   Emqore Cannot Establish Personal Jurisdiction under the FSIA

The FSIA's personal jurisdiction statute restricts the exercise of personal

jurisdiction over foreign states to cases where the plaintiff has established subject

matter jurisdiction under the FSIA and there is effective service of process

pursuant to the FSIA.  28 U.S.C. § 1330(b); *Republic of Sudan v. Harrison*, 139 S.

Ct. 1048, 1054 (2019).  Emqore cannot satisfy either prerequisite.  As explained

above, Emqore cannot establish subject matter jurisdiction because none of the

FSIA's exceptions to foreign sovereign immunity apply.  *See supra* Section I.

Moreover, Emqore has made no attempt to serve Khazanah pursuant to 28

U.S.C. § 1608, which "sets ... the exclusive procedures for service on a foreign

state." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir.

---

[7] The FSIA's other exceptions to immunity only apply to cases involving expropriations, rights in immovable property located in the United States, the enforcement of arbitration awards, maritime liens and terrorism, and are so obviously inapplicable that they warrant no discussion.  28 U.S.C. §§ 1605(a)(3), (4) and (6), 1605(b)-(d), 1605A, 1605B.

1994) (quoting H.R. Rep. No. 94-1487, at 24 (1976), *as reprinted in* 1976

U.S.C.C.A.N. 6623).  Emqore filed a declaration from an Indian attorney that

appends a chart indicating, without providing any details, that Khazanah was

served "in person."  Dkt. No. 83 at ECF 9, 13.  However, the FSIA does not

provide for personal service on foreign states.  28 U.S.C. § 1608.  Thus, Emqore's

failure to comply with the FSIA's service provisions mandates dismissal for lack

of personal jurisdiction.[8]

### B.   Exercising Personal Jurisdiction over Khazanah Would Violate Due Process

Regardless of whether there is a statutory basis for personal jurisdiction

under the FSIA, the exercise of personal jurisdiction must comply with the

requirements of due process.  *See, e.g., Gilson v. Republic of Ireland*, 682 F. 2d

1022, 1028 (D.C. Cir. 1982) ("[A] statute cannot grant personal jurisdiction where

the Constitution forbids it.").  The Supreme Court has repeatedly held that foreign

corporations are entitled to the protections of due process.  *See, e.g., Daimler AG v.*

*Bauman,* 571 U.S. 117 (2014); *Asahi Metal Indus. Co. v. Superior Court of*

*California*, 480 U.S. 102 (1987); *Helicopteros Nacionales de Colombia, SA v.*

---

[8] Emqore cannot invoke 18 U.S.C. § 1965(b) as a basis for personal jurisdiction because (i) the FSIA is the exclusive statutory basis for obtaining jurisdiction over a foreign state, *see Nelson*, 507 U.S. at 355; *Amerada Hess*, 488 U.S. at 443; *see also Harrison*, 139 S. Ct. at 1062; and (ii) Khazanah was not served in the United States, *see Darrick Enters. v. Mitsubishi Motors Corp.*, Civ. No. 05-4359 (NLH), 2007 U.S. Dist. LEXIS 72956, at *82 (D.N.J. Sep. 28, 2007).

*Hall,* 466 U.S. 408 (1984).  And state-owned corporations, such as Khazanah, are entitled to the protections of due process just like any other foreign corporation. *See Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1545 (11th Cir. 1993); *Gregorian v. Izvestia,* 871 F.2d 1515 (9th Cir. 1989); *Canfield v. Statoil USA Onshore Props.*, No. 3:16-0085, 2017 U.S. Dist. LEXIS 40870, at *33 (M.D. Pa. Mar. 22, 2017).

Here, the exercise of personal jurisdiction over Khazanah would not comport with the requirements of due process.  While the Amended Complaint conclusorily asserts that other foreign Defendants have "certain minimum contacts with the forum", Am. Compl. ¶¶ 55-64, Emqore tellingly does not make that allegation against Khazanah.  Nor could it.  Khazanah is a Malaysian corporation with a principal place of business in Malaysia.  It is not "at home" in the United States and therefore is not subject to the general jurisdiction of this Court.  *See Daimler,* 571 U.S. at 138-39.  Nor can Emqore establish specific jurisdiction over Khazanah. The exercise of specific personal jurisdiction comports with the requirements of due process only where the suit arises out of the defendant's contacts with the forum.  *See Bristol-Myers Squibb Co. v. Superior Court of California,* 137 S. Ct. 1773, 1780-81 (2017).  There is no allegation that Khazanah has any contacts with the United States.  Indeed, all of alleged events in the Amended Complaint are alleged to have occurred entirely outside of the United States.

## III.   THE CASE SHOULD BE DISMISSED UNDER THE INTERNATIONAL ABSTENTION AND *FORUM NON CONVENIENS* DOCTRINES

Although, as explained above, Khazanah's jurisdictional defenses under the FSIA are threshold issues that must be decided before Khazanah can be compelled to address the merits of this case, *see supra* at p. 13, this Court may dismiss this case on non-merits grounds, such as the international abstention and *forum non conveniens* doctrines, without ruling on Khazanah's jurisdictional defenses under the FSIA if doing so offers a more straightforward path to dismissal.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 436 (2007); *In re Papandreou*, 139 F.3d 247, 251, 255 (D.C. Cir. 1998).

### A.   Abstention Is Warranted Because Plaintiff Has Already Commenced Numerous Duplicative Proceedings Abroad

The international abstention doctrine recognizes that courts have the inherent power to dismiss an action based on the pendency of a related proceeding in a foreign jurisdiction.  *See Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc.*, 949 F. Supp. 1123, 1127 (S.D.N.Y. 1997).  In applying that doctrine, courts consider: (1) the similarity of the issues, (2) the order in which the actions were filed, (3) the adequacy of the alternate forum, (4) the potential prejudice to either party, (5) the convenience of the parties, (6) the connection between the litigation and the United States, and (7) the connection between the litigation and

the foreign jurisdiction.  *See Pexcor Mfg. Co. v. Uponor AB*, 920 F. Supp. 2d 151, 153 (D.D.C. 2013).  All of those factors weigh in favor of dismissal here.

The Amended Complaint alleges that Emqore's foreign Predecessors filed numerous foreign legal proceedings before Emqore filed this case.  Am. Compl. ¶¶ 80-96.  While Khazanah is not a party to those foreign proceedings, the Amended Complaint makes clear that those foreign proceedings arise out of the same underlying foreign dispute and involve the same basic claims for relief as those asserted in the Amended Complaint.  *Id.*  Litigating this case in New Jersey would be extremely inconvenient because the dispute has no connection to the United States.  It is a purely foreign dispute relating to alleged foreign transactions and foreign legal proceedings.  Most of the parties are foreign and most, if not all, of the evidence and witnesses are located abroad.

## B. Dismissal Is Warranted on *Forum Non Conveniens* Grounds

Alternatively, this Court should dismiss this case under the *forum non conveniens* doctrine, which gives courts discretion to dismiss a case where a "trial in the plaintiff's chosen forum would be burdensome …."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).  The *forum non conveniens* doctrine requires courts to determine the amount of deference to accord the plaintiff's choice of forum and whether such deference, if any, is outweighed by the inconvenience of

litigating in the chosen forum when considering "all relevant public and private interest factors." *Id.*

Here, Emqore's choice of a New Jersey forum is entitled to no deference. Indeed, a plaintiff's choice of forum is entitled to little deference where, as here, "the plaintiff or real parties in interest are foreign." *Id.* at 255 .  Plaintiff is not a New Jersey resident, and, although it claims to be a Wyoming trust, the real-parties-in-interest are Emqore's foreign Predecessors who created Emqore for the sole purpose of commencing this litigation in the United States.  Am. Compl. ¶ 5; Dkt. No. 55-5 at ECF 43.  The settlor of the Emqore trust is allegedly an Estonian resident.  Dkt. No. 55-5 at ECF 10.  Emqore apparently has offices in Estonia and several employees in India.  Dkt. No. 82 at ECF 8; Dkt. No. 94-4 ¶¶ 12-16. Accordingly, Emqore should be treated as foreign for purposes of the *forum non conveniens* analysis and its choice of forum should be given no deference.  *See Rustal Trading US, Inc. v. Makki,* 17 F. App'x 331, 338 n.6 (6th Cir. 2001) (holding that a U.S. corporation was effectively a foreign plaintiff for *forum non conveniens* purposes because it was "a shell corporation formed for the sole purpose of bringing this lawsuit and whose only asset is its right of action obtained by assignment" from its foreign predecessor).

In addition, "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons … the less deference the plaintiff's

choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion*"*, *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (*en banc*).  Here, Emqore's decision to commence this lawsuit in New Jersey was clearly motivated by forum shopping.  Its foreign Predecessors have already commenced numerous foreign proceedings.  Am. Compl. ¶¶ 79-96.  In apparent anticipation of adverse decisions in those cases, those Predecessors created Emqore as a Wyoming trust for the sole purpose of pursuing this U.S. litigation on their behalf.  Dkt. No. 55-5 at ECF 33.  Thus, the initiation of this action is, at best, a transparent attempt at forum shopping and, at worst, a malicious use of process designed to harass Defendants through vexatious and duplicative litigations.  A *forum non conveniens* dismissal is therefore particularly appropriate in this case.  *See Base Metal Trading SA v. Russian Aluminum,* 253 F. Supp. 2d 681, 708-10 (S.D.N.Y. 2003) (dismissing RICO claims on *forum non conveniens* grounds where the plaintiff had already unsuccessfully pursued litigation abroad).

Moreover, Emqore's choice of a New Jersey forum is vastly outweighed by the private and public interest factors.  The private interest factors address the convenience of the parties and include the ease of access to evidence and the ability to compel witnesses.  *See Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189-90 (3d Cir. 2008).  Here, most, if not all, of the evidence in this case is

likely to be located abroad.  Furthermore, the Amended Complaint identifies

numerous so-called "Non-Party Defendants" – all of whom appear to be foreign

and thus beyond the compulsory power of this Court.  Am. Compl. ¶¶ 31-47.

Thus, litigating this exclusively foreign dispute in New Jersey would be costly,

inefficient, and fraught with practical obstacles.

The public interest factors also weigh heavily in favor of dismissal.  Those

factors "include administrative difficulties arising from increasingly overburdened

courts; local interests in having the case tried at home; desire to have the forum

match the law that is to govern the case to avoid conflict of laws problems or

difficulty in the application of foreign law; and avoiding unfairly burdening

citizens in an unrelated forum with jury duty."  *Kisano Trade & Invest Ltd. v.

Lemster,* 737 F.3d 869, 873 (3d Cir. 2013).  Here, Emqore is unnecessarily

burdening this Court with a vexatious lawsuit that is duplicative of several other

lawsuits pending abroad.  New Jersey has no interest in this purely foreign dispute.

This case clearly implicates issues of foreign law as the underlying agreements are

governed by foreign law and Emqore has already submitted foreign law.  Dkt. No.

55-4.  None of Emqore's common-law claims appear to be governed by New

Jersey law and will require, at minimum, resolution of serious conflict of law

issues.

**CONCLUSION**

For the foregoing reasons, this Court should grant Khazanah's motion and dismiss this case with prejudice.

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

*/s/ Jacques Semmelman*

Jacques Semmelman
Joseph D. Pizzurro (pro hac vice pending)
Kevin A. Meehan (pro hac vice)
101 Park Avenue
New York, NY 10178
(212) 696-6000
jsemmelman@curtis.com
jpizzurro@curtis.com
kmeehan@curtis.com

*Attorneys for Defendant*

Dated: January 28, 2022                    *Khazanah Nasional Berhad*

31