# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

EMQORE ENVESECURE PRIVATE CAPITAL TRUST,

Plaintiff,

v.

BHAVDEEP SINGH; MALVINDER MOHAN SINGH; SHIVINDER MOHAN SINGH; SHAKEEB ALAM; FORTIS HEALTHCARE LIMITED; EAST BRIDGE CAPITAL MASTER FUND LTD.; EAST BRIDGE CAPITAL MASTER FUND I LTD.; EAST BRIDGE CAPITAL MANAGEMENT LP; IHH HEALTHCARE BERHAD; KHAZANAH NASIONAL BERHAD; RELIGARE ENTERPRISES LIMITED; RELIGARE FINVEST LIMITED; RELIGARE ENTERPRISES LTD; CARE HEALTH INSURANCE LIMITED; RELIGARE BROKING LIMITED; DBS BANK; SRL LIMITED; NEW YORK LIFE INVESTMENT MANAGEMENT, LLC; INTERNATIONAL FINANCE CORPORATION; SIGULER GUFF & COMPANY, LP; BAY CAPITAL ADVISORS PRIVATE LIMITED; ARES MANAGEMENT CORPORATION; MITSUI & CO. LTD.; MITSUI & CO (USA) INC.; ARES MANAGEMENT CORPORATION; ARES SSG; SIDDHARTH DINESH MEHTA; SHAM MAHESHWARI; ABC CORP. (1-10) (fictitious entities), and JOHN AND JANES DOES 1-10 (fictitious entities),

Defendants.

FORTIS HEALTHCARE HOLDINGS LIMITED; NORTHERN TK VENTURE PTE. LTD.; BESTEST DEVELOPERS PRIVATE LIMITED; RELIGARE HEALTH TRUST; SGGD PROJECTS DEVELOPMENT PRIVATE LIMITED; DAIICHI SANKYO, INC.; RANCHEM PRIVATE LIMITED; RASHMI SALUJA; RAVI RAJAGOPAL; SECURITIES EXCHANGE BOARD OF INDIA; RESERVE BANK OF INDIA; STATE BANK OF INDIA; INDIA HORIZONS FUND LIMITED; RESILIENT INDIA GROWTH FUND; RHC HOLDINGS PRIVATE LIMITED; RELIGARE HEALTH TRUST; M.V. DOSHI; LKP FINANCE LTD.; SS KOTHARI MEHTA & COMPANY; IDBI

Hon. Kevin McNulty, U.S.D.J.

Civil Action No. 20-07324 (KM) (JBC)

Return date: March 21, 2022

TRUSTEESHIP SERVICES LIMITED; and GURINDER
SINGH DHILLON,

        Non-Party Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT ON BEHALF OF DEFENDANT
NEW YORK LIFE INVESTMENT MANAGEMENT LLC**

---

**CHIESA SHAHINIAN & GIANTOMASI PC**
ONE BOLAND DRIVE
WEST ORANGE, NJ  07052
973.325.1500
Attorneys for Defendant
New York Life Investment Management, LLC

On the Brief:
Shirley U. Emehelu, Esq.
Brigitte M. Gladis, Esq.

4860-8072-8075

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iii

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS ........................................................................ 2

    A.    The Parties and Background Facts............................................. 2

    B.    The Alleged Scheme .................................................................. 4

    C.    Plaintiff's Misidentification of NYLIM as a Defendant............ 7

    D.    Plaintiff's Claims in the Amended Complaint........................... 8

ARGUMENT ............................................................................................ 9

    POINT I .......................................................................................... 9

        THIS COURT SHOULD DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO THE FORUM *NON CONVENIENS* DOCTRINE ......................................................... 9

        A.    THE STANDARD FOR DISMISSAL PURSUANT TO THE FORUM *NON CONVENIENS* DOCTRINE................................ 9

        B.    THE PARTIES, TRANSACTIONS, COMMUNICATIONS AND OTHER CONDUCT AT THE HEART OF THIS MATTER WERE SITUATED IN INDIA, THUS JUSTIFYING THIS COURT TO DISMISS THE CASE ON FORUM *NON CONVENIENS* GROUNDS ............................ 11

    POINT II ........................................................................................ 15

        THIS COURT SHOULD DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM ........................................... 15

        A.    THE STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(B)(6) ..................................................................... 16

        B.    PLAINTIFF LACKS STANDING TO ASSERT ITS RICO CLAIMS (COUNTS 1 AND 2) AGAINST NYLIM .............................. 17

        C.    PLAINTIFF'S RICO CLAIMS (COUNTS 1 AND 2) AND COMMON LAW FRAUD CLAIM (COUNT 3) AGAINST NYLIM ARE NOT SET FORTH WITH PROPER

PARTICULARITY AND ARE RIFE WITH GROUP
PLEADING..................................................................................... 19

D.    PLAINTIFF'S AMENDED COMPLAINT DOES NOT
PROPERLY PLEAD THE ELEMENTS OF A RICO
CLAIM AGAINST NYLIM ............................................................... 24

1.  Plaintiff's Amended Complaint Does Not Properly
Allege the Existence of an Enterprise Involving
NYLIM ..................................................................................... 24

2.  Plaintiff's Complaint Does Not Allege That NYLIM
"Conducted or Participated In" the Conduct of an
"Enterprise".............................................................................. 27

3.  Plaintiff Has Failed to Allege Any "Pattern of
Racketeering Activity" Involving NYLIM ................................... 28

E.    PLAINTIFF HAS NOT PROPERLY PLED A RICO
CONSPIRACY CLAIM AGAINST NYLIM (COUNT 2) ..................... 29

F.    PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM
(COUNT 4) AGAINST NYLIM MUST BE DISMISSED ..................... 30

G.    PLAINTIFF HAS FAILED TO PROPERLY PLEAD A
"TRESPASS TO CHATTELS" CLAIM, WHICH MUST BE
DISMISSED (COUNT 5) .......................................................... 31

H.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT
6) MUST BE DISMISSED ........................................................ 32

I.    PLAINTIFF'S "CONSPIRACY" CLAIM AGAINST
NYLIM (COUNT 7) IS NOT PROPERLY PLED................................. 32

J.    PLAINTIFF HAS NOT PROPERLY ASSERTED A
BREACH OF GOOD FAITH AND FAIR DEALING
CLAIM AGAINST NYLIM (COUNT 8).................................................. 33

K.    PLAINTIFF HAS FAILED TO PROPERLY PLEAD A
DECLARATORY JUDGMENT CLAIM (COUNT 9)........................... 34

CONCLUSION.................................................................................... 35

4860-8072-8075

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A-Valey Engineers, Inc. v. Bd. of Chosen Freeholders of County of Camden*,
106 F. Supp.2d 711 (D.N.J. 2000) (Brotman, J.) .........................................................21, 29, 31

*Adamson v. Ortho-McNeil Pharms., Inc.*,
463 F. Supp. 2d 496 (D.N.J. 2006) (Wolfson, J.) ...................................................................17

*Allstate New Jersey Ins. Co. v. Summit Pharmacy, Inc.*,
No. 13-5809, 2014 WL 1767528 (D.N.J. May 2, 2014) (Simandle, C.J.)..............................25

*Anderson v. Ayling*,
396 F.3d 265 (3d Cir. 2005)...................................................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................16, 17, 32, 33

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................................16

*Boyle v. United States*,
556 U.S. 938 (2009)...............................................................................................................25

*Cooney v. BAC Home Loans Servicing, LP*,
No. CIV. 10-4066 ..................................................................................................................21

*Delzotti v. Morris*,
2015 WL 5306215 (D.N.J. Sept. 10, 2015) (Simandle, C.J.) .................................................33

*District 1199P Health and Welfare Plan v. Janssen, L.P.*,
784 F. Supp. 2d 508 (D.N.J. 2011) (Wolfson, J.) ..................................................................21

*Elsevier Inc. v. W.H.P.R., Inc.*,
692 F.Supp.2d 297 (S.D.N.Y.2010)...................................................................................25, 27

*Falat v. County of Hunterdon*,
2013 U.S. Dist. LEXIS, 2013 WL 1163751 (D.N.J. Mar. 19, 2013).......................................22

*Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*,
2014 WL 12634303 (D.N.J. Aug. 4, 2014) (Martini, J.) ........................................................31

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009)...................................................................................................16

4860-8072-8075

## TABLE OF AUTHORITIES

**Page**

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010)............................................................................25, 26

*John Wiley & Sons, Inc. v. Rivadeneyra*,
    2013 WL 6816369 (D.N.J. Dec. 20, 2013) (Hochberg, J.)...................................22

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
    926 F.2d 1406 (3d Cir. 1991)..................................................................................28

*Kisano Trade & Invest Ltd. v. Lemster*,
    737 F.3d 869 (3d Cir. 2013).............................................................................13, 14

*Kolar v. Preferred Real Estate Investments Inc.*,
    361 Fed. Appx. 354 (3d Cir. 2010).................................................................20, 30

*Luongo v. Village Supermarket, Inc.*,
    261 F. Supp.3d 520 (D.N.J. 2017) (McNulty, J.) ...................................................33

*MDNet, Inc. v. Pharmacia Corp.*,
    147 Fed. Appx. 239 (3d Cir. 2005).........................................................................22

*Mele v. Fed. Reserve Bank of N.Y.*,
    359 F.3d 251 (3d Cir. 2004).......................................................................7, 12, 17

*Monte v. Kessling*,
    Civ. No. 18-11363, 2018 WL 3421330 (D.N.J. July 13, 2018) (Vazquez, J.) .......22

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
    331 F.3d 406 (3d Cir. 2003)....................................................................................32

*Poling v. K Hovnanian Enterprises*,
    99 F. Supp. 2d 502 (D.N.J. 2000) (Hochberg, J.) ...........................................20, 24

*Rao v. BP Prods. N. Am., Inc.*,
    589 F.3d 389 (7th Cir. 2009) ..................................................................................25

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993).................................................................................................27

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
    678 F.3d 235 (3d Cir. 2012).....................................................................................18

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007).................................................................................................13

iv

# TABLE OF AUTHORITIES

**Page**

*Swift v. Pandey*,
2013 WL 6022093 (D.N.J. Nov. 13, 2013) (Linares, J.) ........................................................32

*Twp. of Marlboro v. Scannapieco*,
545 F. Supp.2d 452 (D.N.J. 2008) (Pisano, J.) ........................................................18

*United States v. Turkette*,
452 U.S. 576 (1981).........................................................................................25

*University of Maryland at Baltimore v. Peat, Marwick, Main & Co.*,
996 F.2d 1534 (3d Cir. 1993)..............................................................................27

*Windt v. Qwest Communications, Int'l, Inc.*,
529 F.3d 183 (3d Cir. 2008)............................................................ *passim*

*Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
2014 WL 1577694 (D.N.J. Apr. 21, 2014) (Hochberg, J.) ....................................22

## Statutes

18 U.S.C. § 1961(1) ..........................................................................................28

18 U.S.C. § 1961(4) ..........................................................................................24

18 U.S.C. § 1961(5) ..........................................................................................28

18 U.S.C. § 1962 ..........................................................................................18, 19

18 U.S.C. § 1962(d) ..........................................................................................29

18 U.S.C. § 1964(c) ..........................................................................................18, 19

## Other Authorities

Fed. R. Civ. P. 9(g) ..........................................................................................33

Fed. R. Civ. P. 9(b) ..........................................................................................20, 21, 22

Fed. R. Civ. P. 8(a) ..........................................................................................33

Fed. R. Civ. P. 12(b)(6)...................................................................... *passim*

v

## PRELIMINARY STATEMENT

Plaintiff Emqore Envesecure Private Capital Trust's ("Plaintiff") attempt to cure the critical pleading deficiencies found in its initial Complaint through the filing of the Amended Complaint has failed. Rather than provide additional facts that would implicate Defendant New York Life Investment Management, LLC ("NYLIM") in its ambiguously concocted RICO "enterprise," Plaintiff has succeeded only in asserting muddled allegations concerning the supposed fraudulent "scheme" of which it was a purported victim and hiding behind vague group pleading to avoid confronting the reality that it cannot fashion any additional facts to implicate NYLIM. Indeed, Plaintiff has now had two bites at the apple to explain any actionable relationship between itself and NYLIM – let alone set forth the manner in which NYLIM purportedly caused Plaintiff any harm in connection with a fraudulent "scheme" or even the contours of that fraudulent "scheme." Notwithstanding this renewed opportunity, Plaintiff has utterly failed to meet any of these minimal pleading requirements. The reason for its failure is evident – Plaintiff has apparently named NYLIM as a defendant for the sole purpose of filing this action in the District of New Jersey when it unquestionably belongs in a foreign court.

As the Amended Complaint makes clear, even if Plaintiff had valid claims (which it does not, as discussed further below), those claims would be more appropriately adjudicated in India, a location central to Plaintiff's allegations (to the extent they can be deciphered at all), and a location in which Plaintiff's predecessors have apparently already litigated claims related to the present dispute. Accordingly, NYLIM respectfully requests that the Court dismiss this action pursuant to the doctrine of forum *non conveniens*. At a minimum, for the reasons discussed below, Plaintiff's Amended Complaint should be dismissed as to NYLIM, as it fails to state any claim against NYLIM as a matter of law.

## **STATEMENT OF FACTS**[1]

Plaintiff's Amended Complaint contends that Defendants have "tortiously interfered with and injured the Plaintiff" through an alleged RICO scheme, with the intention to "disrupt Plaintiff's business, relations and prospects and thereby force the Plaintiff into abandoning its claims against the Defendants." (Amended Complaint ("Am. Compl."), ¶¶ 1-3). Plaintiff further alleges that the Defendants have "each committed numerous criminal acts as part of their scheme to defraud and extort the Plaintiff, and have each participated in the operation or management of the criminal enterprise." (*Id*. ¶ 6). However, as demonstrated by Plaintiff's own allegations regarding NYLIM and publicly available facts, Plaintiff's Amended Complaint not only misidentifies NYLIM as a proper party to this case, but also fails to plead any specific facts that would support NYLIM's involvement in *any* purported RICO scheme or any criminal activity whatsoever. Given the fraud-based nature of Plaintiff's claims and Plaintiff's utter failure to identify with specificity *any* conduct in which NYLIM directly engaged — let alone any fraudulent conduct — Plaintiff's claims must be dismissed.

### A.    The Parties and Background Facts

Plaintiff is a trust settled under the laws of Wyoming with a principal place of business at 1712 Pioneer Avenue, Suite 387, Cheyenne, Wyoming 82001.  (*Id*. ¶ 5).  Plaintiff alleges that "[b]y an Assignment dated January 22, 2020 Loancore Servicing Solutions Private Limited, Walmark Health Private Limited, Loancore Limited, Walmark Holdings Limited, Emqore EU and

---

[1]  Unless otherwise stated, the allegations referenced herein are drawn from the Amended Complaint and, for purposes of this motion only, are presumed to be true.  In addition, so as not to burden the Court with facts irrelevant to NYLIM's motion, the facts identified herein are only those Amended Complaint allegations that pertain to Plaintiff's claims against NYLIM, rather than the entire universe of allegations made by Plaintiff against all Defendants.

4860-8072-8075

Stratgala AG . . . assigned all right, title and interest in any and all claims against the defendants herein to Plaintiff." (*Id*. ¶ 5).[2]

According to Plaintiff, Defendant Malvinder Mohan Singh and Defendant Shivinder Mohan Singh (together, the "Singh Brothers") inherited a pharmaceutical company in India, Ranbaxy Limited, and purportedly "falsified material data and records" to induce "non-party Defendant" Daiichi Sankyo, Inc. to acquire it. (*Id*. ¶¶ 7, 32). Plaintiff claims that thereafter, the Singh Brothers invested money from the sale "for expansion of REL and Fortis Ltd." (*Id*. ¶ 103). The Amended Complaint alleges that the Singh Brothers are located in India and are "fraudsters" who are "high-ranking members" of a religious cult. (*Id*. ¶ 7). According to Plaintiff, Daiichi Sankyo commenced an arbitration against the Singh Brothers and obtained an award in the amount of approximately $600 million dollars, following which Daiichi Sankyo commenced enforcement proceedings in India. (*Id*. ¶ 103).

Plaintiff contends that NYLIM "owned approximately 7% of Defendant Religare Finvest Limited ["RFL"]. . . through NYLIM Jacob Ballas India Fund III LLC and maintained board representation in RFL," and that "NYLIM also holds an equity interest in Defendant SR Limited ["SRL"] . . . and continues to enjoy board representation in SRL." (*Id*. ¶ 9). The Amended Complaint alleges that both RFL and SRL are Indian entities. (*Id*. ¶¶ 17, 29). Plaintiff baldly alleges that RFL and SRL, "through [their] significant shareholder and co-conspirator NYLIM,

---

[2] While we assume for purposes of this motion the truth of Plaintiff's contention that it was validly assigned its claimed interests, we do not concede the accuracy of these allegations. Specifically, Plaintiff has not pled that it received any approvals pursuant to India's Foreign Exchange Management Act of 1999, and regulations promulgated thereunder, which would effectuate a legally binding assignment of rights to Plaintiff. Plaintiff does not appear to have attached a copy of the referenced Assignment Deed to its filed Amended Complaint.

which is located in New Jersey, directed acts in furtherance of the scheme in New Jersey." (*Id*. ¶¶ 60, 63).

Plaintiff's Amended Complaint also contains a series of allegations setting forth the purported "Procedural History" of this matter. (*Id*. ¶¶ 79-96). While the purpose of including these allegations is unclear, these paragraphs highlight numerous legal actions filed *in India* by Plaintiff's "Predecessor" concerning matters related to the facts at issue in this action and involving certain of the named Defendants in this action. (*Id*.). Although Plaintiff repeatedly references "Defendants'" alleged conduct in connection with those proceedings, NYLIM is not specifically identified as having any involvement in those proceedings or their underlying facts. (*Id*.). Plaintiff's description of those foreign proceedings as the "procedural history" of *this* matter is telling.

### B.     The Alleged Scheme

Plaintiff's claims in this action purportedly pertain to an "illegal scheme involving mail and wire fraud, bankruptcy fraud, tortious interference, and abuse of process" by the Singh Brothers and "their confederates" with the goal of "stripping Emqore or the Plaintiff Predecessors (used interchangeably) valuable contractual rights to control Fortis Ltd. and REL that Emqore had acquired pursuant to its multimillion dollar planned investment in [India-based entities] REL and Fortis Ltd. when every other suitor had refused to indulge with these errant and now incarcerated promoters." (*Id*. ¶ 97). Plaintiff contends that the "RICO Enterprise" conducted this "scheme" to "enable the defendants Bay Capital and Ares SSG to directly or indirectly acquire REL and IHH Berhad to acquire Fortis Ltd., both valuable assets at fire sale prices brought about by the Defendant's collective conduct." (*Id*. ¶ 98).

The apparent crux of Plaintiff's claims in this action is that the Singh Brothers and "their RICO Enterprise members" sought to "surreptitiously obtain control of REL and Fortis Ltd." and

4860-8072-8075

"strip[] Emqore of its control rights pursuant to contracts." (*Id*. ¶ 101). Plaintiff contends that the Singh Brothers "recruited RICO Enterprise Members IFC, NYLIM, and Siguler to invest in REL and Fortis Ltd. (through SRL) to lend credibility to the enterprise[.]" (*Id*. ¶¶ 104, 106). Plaintiff also suggests that at some point, the Singh Brothers began siphoning funds from REL and Fortis Ltd. and that when Plaintiff and/or its predecessors "discovered the gross financial misconduct," Defendants "created a united front, to take over REL and to block Emqore's control over REL." (*Id*. ¶¶ 107-108). According to Plaintiff, the Singh Brothers, "with the assistance of RICO Enterprise Members, IFC, NYLIM, and Siguler, started encumbering their assets" and "used approximately 23 entities to encumber assets and take funds from their owned companies REL and Fortis Ltd. without declaring related party transactions," purportedly when NYLIM "was on the board of RFL, the finance subsidiary[.]" (*Id*. ¶ 122). Plaintiff vaguely alleges that NYLIM purportedly benefited from this "scheme" because of "inflated revenue and increased profits that enabled higher dividends" to be distributed to the RICO Defendants. (*Id*. ¶ 123).

Plaintiff alleges that the so-called "RICO Enterprise" had to "strip Emqore of its control rights pursuant to the binding agreements." (*Id*. ¶ 110). To do so, in 2018, "the RICO Enterprise Members took board control of REL and Fortis Ltd. and handed over the management of REL to Bay Capital and that of Fortis Ltd. to IHH Berhad." (*Id*. ¶¶ 111, 125). The "Defendants" then purportedly "made fraudulent representations" that they planned to "maximize the value of REL and Fortis Ltd." but really "hoped to further drive down the price of REL and Fortis Ltd. by increasing the company's desperation and risk of liquidation." (*Id*. ¶ 112). As a part of this purported "scheme," Defendants Bay Capital and Ares SSG allegedly commenced sham litigations against the Singh Brothers on the basis that they oppressed minority shareholders by "degrading the value of REL and Fortis Ltd." (*Id*. ¶ 130, *see also id*. ¶¶ 162-163). Plaintiff claims that at the

same time, "Defendants were negotiating" unspecified "transactions" to "conceal the fund siphoning at REL and Fortis Ltd." (*Id*. ¶ 131). Plaintiff then contends that NYLIM and Siguler "commenced action on the same grounds against the Singh Brothers, detailing every fraudulent transaction and putting in public domain" which allegedly caused a downturn in the share price of REL and Fortis Ltd.'s stock. (*Id*. ¶¶ 132-135). Thereafter, "[h]aving driven the value of the entities down and replacing board members, Defendants then illegally reneged on the agreements with Plaintiff's Predecessors and took over control of the Religare and Fortis entities through self-dealing." (*Id*. ¶ 165).

Ultimately, "[w]ith Eqmore's planned negotiations in shambles, Defendants now fully in control of REL and Fortis Ltd., Emqore resigned from its now worthless contracts to explore alternative ways to salvage its investments." (*Id*. ¶ 113). Plaintiff alleges that thereafter, the supposed "RICO Enterprise" abused the "judicial process" by, among other things, making misrepresentations regarding Emqore's purported interest in REL and Fortis Ltd. (*See id*. ¶¶ 113-114). In doing so, Plaintiff essentially concedes that the issues involved in this case have been previously raised and considered in other unspecified proceedings (likely in India), but claims that it "has not pleaded the injuries alleged in this Complaint relating to the complete loss of its rights in any court." (*Id*. ¶¶ 113-115; *see also id*. ¶ 138). Notably, Plaintiff alleges that between March 2018 and March 2020 "Emqore raised over 96 instances of *grievances with the Indian Regulators and Agencies*, all of which remain unattended, even while the RICO Defendants files one frivolous complaint after the other." (*Id*. ¶ 144) (emphasis added).

In addition to the above, Plaintiff for the first time alleges that NYLIM (and other Defendants) purportedly "tacitly sanctioned" an "elaborate scheme" to "hyperinflate the stock of a failing enterprise[] ABG Shipyard Limited." (*Id*. ¶ 124). Plaintiff does not clearly articulate

NYLIM's purported role in this "scheme" or set forth how this "scheme" is related to the other allegedly "fraudulent" conduct.

## C.   Plaintiff's Misidentification of NYLIM as a Defendant

As discussed above, Plaintiff's Amended Complaint alleges that NYLIM "owned approximately 7% of Defendant RFL through NYLIM Jacob Ballas India Fund III LLC ("Fund III") and maintained board representation in RFL." (*Id.* ¶ 9).  These allegations are fundamentally incorrect on several grounds and reflect that Plaintiff incorrectly named NYLIM as a Defendant in this case.  Although normally the allegations in a complaint are taken as true in considering a motion to dismiss, the Court may consider documents integral to the allegations raised in the complaint.  *See Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004).  The allegations related to NYLIM's purported ownership of a minority interest in RFL are the only purported link Plaintiff identifies between NYLIM and the alleged "scheme."  As such, extrinsic documents that dispute this asserted ownership interest are integral to the allegations against NYLIM in the Amended Complaint and should be considered by this Court in determining whether to dismiss the claims against NYLIM.  Examining these relevant documents in turn and Plaintiff's own admission in its Amended Complaint, it is clear that Plaintiff erroneously named NYLIM as a defendant in this case.

First, by its own admission, Plaintiff concedes that Fund III (a private equity fund domiciled in Mauritius),[3] held a minority interest in RFL — not NYLIM.  (*See* Am. Compl. ¶ 9) ("Defendant NYLIM owned approximately 7% of Defendant Religare Finvest Limited . . .

---

[3] *See, e.g.*, NYLIM Jacob Ballas India Fund III LLC, SEC Form D Notice of Sale of Securities (filed May 12, 2008), available at https://www.sec.gov/cgi-bin/browse-edgar?CIK=1435025 (last accessed Jan. 22, 2022).

**through NYLIM Jacob Ballas India Fund III LLC** and maintained board representation in RFL.") (emphasis added). Second, with respect to NYLIM's purported interest in Fund III itself, Plaintiff incorrectly implies that NYLIM was an investor of Fund III. In reality, NYLIM's New York-based parent, New York Life Insurance Company, held an interest in Fund III — not NYLIM. (*See* January 28, 2022 Declaration of Shirley U. Emehelu ("Emehelu Decl."), attaching a true and accurate copy of the India Fund III Structure Chart, as Exhibit ("Ex.") A). [4]

In short, Plaintiff's claims against NYLIM in the Amended Complaint are nothing but a house of cards based upon a faulty premise — namely, that NYLIM owned an interest in RFL. Because that premise is simply incorrect, all of Plaintiff's claims against NYLIM must fall.

### D.     Plaintiff's Claims in the Amended Complaint

Based upon the above generalized allegations of wrongdoing incorrectly implicating NYLIM, Plaintiff's Amended Complaint asserts claims for RICO, RICO conspiracy, fraud, tortious interference with contract, trespass to chattels, unjust enrichment, civil conspiracy, breach of implied covenant of good faith and fair dealing, and a request for declaratory judgment against NYLIM. As set forth below, however, the facts Plaintiff pleads in the Amended Complaint are insufficient to support these claims, and for that reason, each of Plaintiff's claims must be dismissed.

---

[4] Even if Plaintiff had named Fund III and/or New York Life Insurance Company as defendants in this case — in lieu of NYLIM — this Court arguably would lack personal jurisdiction over these parties as neither of them are based in New Jersey.

4860-8072-8075

## ARGUMENT

**POINT I**

**THIS COURT SHOULD DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO THE FORUM *NON CONVENIENS* DOCTRINE**

Perhaps even more than Plaintiff's original Complaint, Plaintiff's Amended Complaint demonstrates that Plaintiff has erroneously selected this jurisdiction as the venue in which to file this action. Plaintiff, a Wyoming trust (*see* Am. Compl. ¶ 5), has chosen to bring this action in the District of New Jersey where only three of the nearly *forty* named defendants and so-called "non-party defendants" are alleged to be located — namely, moving Defendant NYLIM, Defendant Bhavdeep Singh, and "non-party" Defendant Daiichi Sankyo, Inc. (*See, e.g., id.*, ¶¶ 8, 9, 32).[5] Plaintiff's Amended Complaint fares no better than its original Complaint with respect to tying any alleged conduct to the United States, let alone New Jersey. The Amended Complaint articulates *no* specific conduct underlying its fraud-based claims that actually occurred in New Jersey. Accordingly, for the reasons set forth below, this Court should exercise its broad discretion to dismiss this case on forum *non conveniens* grounds in favor of litigation in India — indeed, where Plaintiff has conceded that it already attempted to assert its claims.

### A.   THE STANDARD FOR DISMISSAL PURSUANT TO THE FORUM *NON CONVENIENS* DOCTRINE

"[T]he district court is accorded substantial flexibility in evaluating a forum *non conveniens* motion, and '[e]ach case turns on its facts.'" *Windt v. Qwest Communications, Int'l, Inc.*, 529 F.3d 183, 188 (3d Cir. 2008) (internal citation omitted). "Although a plaintiff's choice

---

[5] The fact that a "non-party" Defendant is located in New Jersey does not strengthen Plaintiff's argument that this case is properly venued here; indeed, given the number of individuals and entities against whom Plaintiff has asserted claims in this action, if Daiichi Sankyo, Inc. had even a tangential part to play in the so-called "scheme" against Plaintiff, it seems likely Plaintiff would have asserted direct claims.

of forum should rarely be disturbed, . . . a federal court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Id.* at 189 (internal quotations omitted). "When an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case." *Id.* (citing *Koster v. (Am.) Lumbermans Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

"[T]he Supreme Court has prescribed a balancing of private interest factors affecting the convenience of the litigants and public interest factors affecting the convenience of the forum" for a District Court's consideration in deciding a motion to dismiss based on forum *non conveniens*. *See id.* The private interest factors include, in pertinent part: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (internal quotation and citation omitted). The public interest factors for consideration include "administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in 'having the trial of a diversity case in a forum that is at home with the state law that must govern the case'; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (internal citation omitted)

"Applying these precepts to a particular case, when considering a motion to dismiss on forum *non conveniens* grounds, a district court must first determine whether an adequate

alternative forum can entertain the case." *Id.* at 189-90. "If such a forum exists, the district court must then determine the appropriate amount of deference to be given the plaintiff's choice of forum." *Id.* at 190. "Once the district court has determined the amount of deference due the plaintiff's choice of forum, the district court must balance the relevant public and private interest factors." *Id.* "If the balance of these factors indicates that trial in the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience, the district court may, in its discretion, dismiss the case on forum *non conveniens* grounds." *Id.*

None of the aforementioned factors supports Plaintiff's choice of forum in the District of New Jersey. Accordingly, Plaintiff's Amended Complaint should be dismissed pursuant to the doctrine of forum *non conveniens*.

### B. THE PARTIES, TRANSACTIONS, COMMUNICATIONS AND OTHER CONDUCT AT THE HEART OF THIS MATTER WERE SITUATED IN INDIA, THUS JUSTIFYING THIS COURT TO DISMISS THE CASE ON FORUM *NON CONVENIENS* GROUNDS

As noted above, when deciding a motion to dismiss on the basis of forum *non conveniens*, a court must consider both private interest and public interest factors to determine whether the plaintiff's chosen forum should be respected, or whether a matter would be more appropriately decided in another forum. In this case, none of these factors support Plaintiff's choice of filing in this District. Rather, as discussed further below, the parties involved in this matter are primarily located in foreign jurisdictions, and Plaintiff has not adequately tied its allegations to any conduct that occurred in New Jersey. Accordingly, this matter should be dismissed pursuant to the doctrine of forum *non conveniens*.

On a motion to dismiss involving a forum *non conveniens* question, the Court must conduct a multi-step inquiry, which begins with the initial question of whether there exists another forum that may decide the case. *See Windt*, 529 F.3d at 189-90. In this case, there plainly is another

more appropriate forum.  As Plaintiff acknowledges, the entities at the heart of their allegations —

REL, RFL, and Fortis — are all Indian entities, as are a number of the other parties to this matter.

(*See, e.g.,* Am. Compl., ¶¶ 12, 17, 27).  Additionally, Plaintiff's Amended Complaint is devoid of

any specific allegations that the myriad "transactions" referenced therein and in its "Exhibits"

(ECF No. 102-1) occurred or were negotiated in this District – let alone in the United States.  (*See*

*id.* ¶ 116 and "Exhibits A, B, and C" to the Am. Compl.).[6]

Moreover, Plaintiff's Amended Complaint suggests that certain of the parties now named

in this action have engaged in related litigation in India; and further, Plaintiff's predecessor,

Loancore, was restrained by the Indian courts from instituting legal action involving REL in any

court *outside* of India.  (*See* Emehelu Decl., attaching a true and accurate copy of the High Court

of Delhi, India's March 3, 2020 Order in *Religare Enerprises* [sic] *Limited v. Loancore Serving*

*Solutions Private Limited*, as Ex. B).[7]  Plaintiff's Amended Complaint actually details a number

of legal proceedings that occurred in India, which Plaintiff characterizes as the "procedural

history" of this matter.  (Am. Compl., ¶¶ 79-96).  Accordingly, the Indian court system is certainly

a forum available to deal with Plaintiff's claims – especially given its apparent familiarity with the

facts underlying this action – and is a more appropriate forum than the courts in this District.

---

[6] Plaintiff filed a document titled Exhibits A, B, and C contemporaneously with the filing of the Amended Complaint.  (*See* ECF No. 102-1).  The allegations in the Amended Complaint do not appear to reference these Exhibits and it is therefore unclear as to the purpose of these Exhibits or why they have been appended to the Amended Complaint.  To the extent the Exhibits represent additional allegations against the Defendants to this action, they should have been included in the body of the Amended Complaint and therefore they need not be considered for purposes of this motion.

[7] As noted above, the Court can consider matters of public record in connection with a Rule 12(b)(6) motion to dismiss.  *Mele*, 359 F.3d at 256 n.5.

The second inquiry for the Court on a forum *non conveniens* motion is what degree of deference should be accorded to Plaintiff's choice of forum.  As in *Windt*, Plaintiff's choice of this forum should be accorded a low degree of deference.  The Third Circuit concluded in that case that the district court properly had considered the particular circumstances of the case, including the parties' connections with New Jersey and the fact that there was a pending litigation in the Netherlands.  *Windt*, 529 F.3d at 191.  The Third Circuit ultimately concluded that the district court properly had accorded a low degree of deference to the plaintiff's choice of forum, because "[a]lthough two individual defendants in th[e] case [we]re residents of New Jersey, that state [wa]s not the home forum of the corporate defendant or another individual defendant named in the Trustees' amended complaint" and "[t]here [wa]s also no indication that evidence [wa]s concentrated in New Jersey, nor [wa]s there an indication that a substantial amount of conduct giving rise to the instant dispute occurred in New Jersey."  *Id.*; *see also Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 874 (3d Cir. 2013) ("When a plaintiff is foreign, however, the choice of a United States forum deserves less deference."); *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) ("When the plaintiff's choice is not its home forum, . . . the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable." (internal quotation marks omitted)).  The same can be said of this case.  Only *three* of the nearly *forty* Defendants and so-called "non-party" Defendants named in this case — including NYLIM, which, as discussed above, is not a proper party to this action — are located in New Jersey.  Likewise, Plaintiff is also not located here, but rather is a Wyoming trust.  (Am. Compl., ¶ 5).  Plaintiff has articulated no specific conduct that occurred in New Jersey, nor has Plaintiff identified any witnesses or evidence located here.  Indeed,

13

it is unclear why Plaintiff has selected this forum.  Nonetheless, that choice should be granted a low degree of deference.

Finally, the private interest and public interest factors "tip decidedly" in favor of the foreign forum, and therefore also support NYLIM's motion to dismiss on forum *non conveniens* grounds. *See Windt*, 529 F.3d at 192.  "To reiterate, private interests include such things as ease of access to sources of proof, ability to compel witness attendance, and other potential obstacles to a cost-effective and expeditious trial." *Kisano Trade & Invest Ltd.*, 737 F.3d at 877.  None of these factors support Plaintiff's choice of forum in New Jersey.  As discussed above, Plaintiff's claims involve conduct that occurred internationally and involve primarily Indian entities.  In light of the fact that NYLIM is not a properly named Defendant — leaving only at most two named Defendants located in New Jersey — it is difficult to imagine what witnesses or evidence may be located in New Jersey.  In short, litigating a foreign dispute in New Jersey would be far from cost effective or expeditious, particularly given the impacts from the still-current COVID-19-pandemic on international traveling.  *See Kisano Trade & Invest Ltd.*, 737 F.3d at 878 ("The location of the parties, their witnesses, and the availability of evidence favor resolution in Israel.").

Similarly, the public interest factors here weigh in favor of a resolution outside of New Jersey.  Indeed, many of the conclusions reached by the Third Circuit in *Windt* similarly apply here:

> We agree with the District Court that the Trustees' complaint does not raise a local dispute. The Trustees' amended complaint alleges fraud and mismanagement perpetrated on a Dutch company by executives, board members and a corporate shareholder of that Dutch company. Although two of the defendants are residents of New Jersey, there are no allegations that actions or events occurring in New Jersey gave rise to the fraud and mismanagement at issue in this case. Moreover, without a dispute local to the community of New Jersey, there is little public interest in subjecting that community to the burdens of jury service.

14

*Windt*, 529 F.3d at 193.  In this case, Plaintiff's claims primarily involve Indian entities.   Further, Plaintiff can identify no specific conduct that purportedly occurred in New Jersey, and it makes little sense to empanel a New Jersey jury to consider issues not at all relevant to New Jersey.  While Plaintiff does assert RICO claims, the involvement of claims raised under that United States federal statute does not preclude this Court's dismissal of Plaintiff's Amended Complaint on the basis of forum *non conveniens* when both the private interest and public interest factors tip decidedly in favor of dismissal.  *See Windt*, 529 F.3d at 193 ("Federal courts have refused to afford RICO claims special treatment in *forum non conveniens* inquiries and have found dismissal on this basis proper in cases involving RICO claims.") (citing *Gemini Capital Group v. Yap Fishing Corp.*, 150 F.3d 1088 (9th Cir. 1998); *Alfadda v. Fenn*, 159 F.3d 41 (2d Cir. 1998); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir. 1997); *Kempe v. Ocean Drilling & Exploration Co.*, 876 F.2d 1138 (5th Cir. 1989)).

Given the foregoing, this Court should conclude that "litigating this dispute in New Jersey would be oppressive or vexatious to the Defendants and that such oppression or vexation outweigh[s] [any] convenience to the [Plaintiff] in litigating this dispute in New Jersey."  *See Windt*, 529 F.3d at 197.  Plaintiff's Amended Complaint should therefore be dismissed with prejudice.  However, even if the Court declines to exercise its substantial discretion to dismiss this case on forum *non conveniens* grounds, Plaintiff's failure to properly plead its various claims against NYLIM warrants dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## POINT II

### THIS COURT SHOULD DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM

Despite only directly addressing NYLIM in a handful of the substantive allegations in its Amended Complaint, Plaintiff has asserted numerous causes of action against NYLIM — namely,

RICO, RICO conspiracy, fraud, tortious interference, trespass to chattels, unjust enrichment, civil conspiracy, breach of implied covenant of good faith and fair dealing, and a request for declaratory judgment against NYLIM. However, as discussed further below, each of these claims fails to properly plead any liability on the part of NYLIM, and each is factually and legally deficient. Accordingly, all of Plaintiff's claims against NYLIM must be dismissed with prejudice for failure to state a claim.

### A.    THE STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(B)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege sufficient facts to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face only if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The mere recital of the elements of a cause of action, supported only by conclusory statements, does not suffice. *Id.* Rather, a plaintiff must demonstrate more than "a sheer possibility that a defendant acted unlawfully," and, if the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 678; *Twombly*, 550 U.S. at 570. A complaint that merely pleads facts that are "consistent with" a defendant's liability, "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Therefore, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). As such, "a court considering a motion to dismiss can choose

to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*

Two principles must be applied in reviewing a motion to dismiss. First, although a court must accept all factual allegations within the complaint as true, this principle "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. As such, because a court is "not bound to accept as true a legal conclusion couched as a factual allegation," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Adamson v. Ortho-McNeil Pharms., Inc.*, 463 F. Supp. 2d 496, 500 (D.N.J. 2006) (Wolfson, J.) ("when deciding a motion to dismiss, the Court need not credit a complaint's conclusory allegations, bald assertions, or legal conclusions masquerading as factual claims"). The second principle requires that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. In addition to the allegations of the complaint, a court may consider matters of public record, documents specifically referenced in or attached to the complaint, and documents integral to the allegations raised in the complaint. *Mele*, 359 F.3d at 256 n.5.

Applying this standard to the allegations in Plaintiff's Amended Complaint demonstrates that Plaintiff has failed to state a claim against NYLIM, and Plaintiff's claims against NYLIM must be dismissed.

## B.   PLAINTIFF LACKS STANDING TO ASSERT ITS RICO CLAIMS (COUNTS 1 AND 2) AGAINST NYLIM

As an initial matter, Plaintiff's RICO claims against NYLIM are fatally flawed because Plaintiff lacks standing to assert such claims. As courts have repeatedly made clear, a plaintiff asserting a RICO claim must plead that the defendant is the proximate cause of the injury suffered, and the failure to do so warrants dismissal of the claim. Plaintiff has asserted no specific

4860-8072-8075

allegations demonstrating that NYLIM was the proximate cause of any of Plaintiff's purported harm.  For this reason, Plaintiff's RICO claims against NYLIM must be dismissed.

"In addition to meeting the constitutional standing requirements, 'plaintiffs seeking recovery under RICO must satisfy additional standing criterion set forth in section 1964(c) of the statute.'" *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 246 (3d Cir. 2012) (quoting *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000)).  The RICO statute itself sets forth the additional necessary standing criterion.  Specifically:

> Any person **injured in his business or property by reason of a violation of section 1962** of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]

18 U.S.C. § 1964(c) (emphasis added).  "Under this section, a 'plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.'" *Twp. of Marlboro v. Scannapieco*, 545 F. Supp.2d 452, 458 (D.N.J. 2008) (Pisano, J.) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  "Civil RICO 'standing' is usually viewed as a 12(b)(6) question of stating an actionable claim, rather than as a 12(b)(1) question of subject matter jurisdiction." *Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2005).

"To establish standing under section 1964(c), 'a RICO plaintiff [must] make two related but analytically distinct threshold showings[:] (1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." *Twp. of Marlboro*, 545 F. Supp.2d at 458 (quoting *Maio*, 221 F.3d at 483).  Although "RICO is to be read broadly, . . . section 1964(c)'s limitation of RICO standing to persons injured in their business or property has a restrictive significance[.]" *Id.* (internal quotation omitted). This is designed to help to "assure that RICO is not expanded to provide a federal cause

of action and treble damages to every tort plaintiff[.]" *Id.*   "Therefore, a plaintiff, to make a showing of standing under 18 U.S.C. § 1964(c), must proffer 'proof of a concrete financial loss and not mere injury to a valuable intangible property interest.'" *Id.* (quoting *Maio*, 221 F.3d at 483).

In this case, Plaintiff has failed to establish that its supposed damages are linked in any way to any conduct undertaken by NYLIM that supposedly violates 18 U.S.C. § 1962 or 18 U.S.C. § 1964(c).  Plaintiff's Amended Complaint baldly claims that Plaintiff was "injured in its business and property" through, among other things, "impairment of Plaintiff's interest in executed contracts" and attorneys' fees incurred in defending sham litigation. (Am. Compl., ¶ 225). However, the Amended Complaint does not articulate how NYLIM was the proximate cause of these purported injuries. As set forth further below, Plaintiff does not identify any *specific* actions supposedly taken by NYLIM — rather, it speaks only in generalities and groups NYLIM's purported conduct with that of other Defendants.

Accordingly, Plaintiff has failed to plead facts sufficient to demonstrate that any actions NYLIM purportedly undertook (which are not even specifically identified in the Amended Complaint) constituted the proximate cause of any injuries to Plaintiff.  For that reason, Plaintiff's RICO claims against NYLIM must be dismissed.

### C.   PLAINTIFF'S RICO CLAIMS (COUNTS 1 AND 2) AND COMMON LAW FRAUD CLAIM (COUNT 3) AGAINST NYLIM ARE NOT SET FORTH WITH PROPER PARTICULARITY AND ARE RIFE WITH GROUP PLEADING

Even assuming Plaintiff is able to overcome the hurdle of establishing standing to assert RICO claims, those claims as pled in the Amended Complaint, as well as Plaintiff's common law fraud claim, are critically deficient, as they fail to identify NYLIM's purported RICO violations or alleged fraudulent conduct with the specificity required pursuant to the Federal Rules of Civil

Procedure.  Rather, Plaintiff attempts to hide behind ambiguous group pleading, often resorting to allegations against the "Defendants" as a whole, without identifying with any specificity the particular conduct supposedly undertaken by each Defendant.  Because Plaintiff has failed to state its RICO claims with sufficient particularity, those claims must be dismissed as to NYLIM.

Where a plaintiff alleges wire and/or mail fraud as the basis of a RICO violation, the allegations of fraud must comport with the heightened pleading standard under Federal Rule of Civil Procedure 9(b).  *Poling v. K Hovnanian Enterprises*, 99 F. Supp. 2d 502, 508 (D.N.J. 2000) (Hochberg, J.) (citing *Saporito v. Combustion Engineering Inc.*, 843 F.2d 666, 673 (3d Cir. 1988), *vacated on other grounds*, 489 U.S. 1049, 109 S. Ct. 1306, 103 L. Ed. 2d 576 (1989)).  Importantly, "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."  *Kolar v. Preferred Real Estate Investments Inc.*, 361 Fed. Appx. 354, 363 (3d Cir. 2010) (internal quotation omitted).

Specifically, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  To plead fraud with sufficient particularity under Rule 9(b), a plaintiff must "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  *Poling*, 99 F. Supp. 2d at 508 (internal quotation omitted).  "To satisfy the pleading requirement, plaintiffs may plead the specific conduct alleged to be fraudulent along with the 'date, place and time' that the alleged fraud occurred or use some 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"  *Id.* (dismissing

RICO claims predicated on mail fraud pursuant to Rule 12(b)(6) for failure to plead with particularity under Rule 9(b)). In other words, the pleading must contain the "who, what, when and where details of the alleged fraud." *District 1199P Health and Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 527 (D.N.J. 2011) (Wolfson, J.) (internal quotation omitted). However, "[w]here the relevant date, place or time is not specified, Rule 9(b) will be met so long as plaintiff otherwise [has] inject[ed] precision and some measure of substantiation into [his] allegations of fraud." *A-Valey Engineers, Inc. v. Bd. of Chosen Freeholders of County of Camden*, 106 F. Supp.2d 711, 715 (D.N.J. 2000) (Brotman, J.) (internal quotation omitted) (dismissing RICO claim for lack of specificity in pleading).

It is axiomatic that "a complaint must allege, in more than legal boilerplate, those facts about the conduct of each defendant giving rise to liability." *Cooney v. BAC Home Loans Servicing, LP*, No. CIV. 10-4066 JBS/JS, 2011 WL 2517045, at *2 (D.N.J. June 22, 2011) (Simandle, J.) (citing *Twombly*, 550 U.S. at 555). However, by identifying numerous Defendants (or all Defendants) in each of the allegations that relates to Plaintiff's fraud claims, Plaintiff has failed to implicate NYLIM specifically in the conduct pertaining to its RICO claims. Consequently, Plaintiff has not identified any specific facts regarding NYLIM that would give rise to liability. Indeed, this District has held:

> Mere "conclusory allegations against defendants as a group" which "fail to allege the personal involvement of any defendant" are insufficient to survive a motion to dismiss. *Galicki v. New Jersey*, 2015 U.S. Dist. LEXIS 84365, at *8, 2015 WL 3970297 (D.N.J. June 29, 2015) [(Linares, J.)]. A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.* When a number of defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct." *Falat v. County of Hunterdon*, 2013 U.S. Dist. LEXIS, at *12, 2013 WL 1163751 (D.N.J. Mar. 19, 2013) [(Chesler,

21

4860-8072-8075

J.] (emphasis in original). A Complaint that contains "impermissibly vague group pleading" will be dismissed. *Id*. at * 11.

*Monte v. Kessling*, Civ. No. 18-11363, 2018 WL 3421330, at *5 (D.N.J. July 13, 2018) (Vazquez, J.) (granting motion to dismiss).  As the court found in *Falat v. Cty. of Hunterdon*, Plaintiff "cannot merely state that 'Defendants did x,'" but rather, Plaintiff "must specifically allege which Defendants engaged in what wrongful conduct."  *Falat*, 2013 WL 1163751 at *3; *see also MDNet, Inc. v. Pharmacia Corp.*, 147 Fed. Appx. 239, 245 (3d Cir. 2005) ("When multiple defendants are involved, the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant."); *John Wiley & Sons, Inc. v. Rivadeneyra*, 2013 WL 6816369, at *8 (D.N.J. Dec. 20, 2013) (Hochberg, J.) ("An allegation of fraud against multiple defendants will be dismissed where the facts as alleged in the complaint do not show that each defendant either made a fraudulent representation or objectively manifested agreement to participate in the scheme surrounding the other defendants' fraudulent representations."); *Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2014 WL 1577694, at *4 (D.N.J. Apr. 21, 2014) (Hochberg, J.) (finding the complaint failed under Rule 9(b) by lumping together defendants without alleging that specific defendants made false or misleading statements and the court was unable to ascertain what role each individual defendant played in the alleged fraud).

Like the Complaint, Plaintiff's Amended Complaint clings to group pleading by repeatedly referencing the "RICO Defendants," "Defendants," or "RICO Enterprise Members" rather than identifying specific conduct undertaken by each Defendant.  (*See, e.g.,* Am. Compl., ¶¶ 79, 80, 84, 88, 95, 100, 101, 111-114, 124, 127, 129, 137, 139, 144, 155, 156, 163, 167, 173, 176-194, 230-236, 237-243, 245-249, 250-255, 257-259, 261-264, 266-270, 272-275).  Accordingly, the Amended Complaint has not properly pled the claims with the required particularity.  Although the Amended Complaint contains 275 paragraphs, it only specifically references NYLIM in a

22

handful of those paragraphs.  The paragraphs referencing NYLIM do not describe with any particularity any conduct NYLIM purportedly undertook in connection with the so-called schemes identified in the Amended Complaint, but rather only refer to NYLIM along with other named Defendants (apparently as a means to avoid using the generic label "Defendants" in every paragraph while still engaging in improper group pleading).  Even then, the conduct supposedly undertaken by these Defendants is described only generically, with no factual details about how it was accomplished.  (*Id*. ¶ 124) (stating that IFC, NYLIM, and Siguler "tacitly sanctioned" an "elaborate scheme" and suggesting that NYLIM and others "orchestrated" "stock manipulation tactics," without explaining exactly what NYLIM or others purportedly did).  Perhaps most critically, none of the paragraphs describing the supposed "patterns" of racketeering activity supporting Plaintiff's RICO claims specifically mention NYLIM at all, except to state that NYLIM and others "tacitly approved" certain transactions, without explaining how, and to summarily contend that NYLIM somehow furthered the supposedly fraudulent "RICO Enterprise."  (*See id*. ¶¶ 176-194; 195-214, 219).  Plaintiff simply alleges that "Defendant IFC, NYLIM, and Siguler have used or caused to be used the mail or wires in furtherance of the RICO Defendants' scheme to defraud." (*Id*. ¶ 219).  However, Plaintiff does not explain how specifically NYLIM did so. The Amended Complaint identifies no specific mail, phone calls or emails in which NYLIM was involved.  Plaintiff's silence on this point is therefore dispositive of its RICO, RICO conspiracy, and fraud claims against NYLIM, which must each be dismissed.

Accordingly, Plaintiff's reliance on group pleading does not satisfy Plaintiff's burden of alleging its allegations *against each Defendant* in this action — including NYLIM — with particularity.  As such, Plaintiff's RICO claims against NYLIM should be dismissed.

### D.   PLAINTIFF'S AMENDED COMPLAINT DOES NOT PROPERLY PLEAD THE ELEMENTS OF A RICO CLAIM AGAINST NYLIM

Putting aside Plaintiff's fatal error in failing to plead its RICO claims with specificity, Plaintiff also has failed to properly plead the requisite elements of a RICO claim.  Specifically, Plaintiff's RICO claim against NYLIM is deficient for the following reasons: (1) Plaintiff fails to plead the "structure" necessary to establish an "enterprise," (2) Plaintiff fails to properly plead that NYLIM "conducted or participated in" the conduct of an "enterprise," and (3) Plaintiff has failed to identify any "pattern of racketeering activity" involving NYLIM.  For these reasons, Plaintiff's RICO claims against NYLIM are fatally flawed and must be dismissed with prejudice.

Section 1962(c) of the RICO Act provides:

> It shall be unlawful for any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

Accordingly, to state a claim for a violation of RICO, a plaintiff must plead: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Poling*, 99 F. Supp. 2d at 508.  Plaintiff's Complaint simply does not adequately allege these elements as against NYLIM.

### 1.   Plaintiff's Amended Complaint Does Not Properly Allege the Existence of an Enterprise Involving NYLIM

As an initial matter, Plaintiff's RICO claim is deficient because it does not properly allege the existence of an "enterprise" involving NYLIM.  For this reason alone, Plaintiff's RICO claim against NYLIM must be dismissed.

The RICO statute defines "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in

fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiff's RICO allegations evince a strained, but unsuccessful attempt to plead an "association-in-fact enterprise." (*See* Am. Compl., ¶ 173). As the U.S. Supreme Court explained in *United States v. Turkette*, 452 U.S. 576, 583 (1981):

> The enterprise is an entity, for present purposes a group of persons [and entities] associated together for a common purpose of engaging in a course of conduct. . . [and] is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element [from "pattern of racketeering activity"] which must be proved by the [plaintiff] . . . and proof of one does not necessarily establish the other.

In *Boyle v. United States*, 556 U.S. 938, 946 (2009), the Supreme Court reaffirmed and further explained its rationale in *Turkette*, holding that an association-in-fact enterprise must have a "structure" comprised of at least three features — namely: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (cited by *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 366 (3d Cir. 2010); *Allstate New Jersey Ins. Co. v. Summit Pharmacy, Inc.*, No. 13-5809, 2014 WL 1767528, at *10 (D.N.J. May 2, 2014) (Simandle, C.J.).

Moreover, "a RICO claim must plead facts plausibly implying the existence of an enterprise with the structural attributes identified in *Boyle*[.]" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 369-70 (citing *Boyle*, 129 S.Ct. at 2244; *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 400 (7th Cir. 2009) (upholding dismissal of RICO claims because, inter alia, the plaintiff's allegations of an association-in-fact enterprise "d[id] not indicate how the different actors are associated and d[id] not suggest a group of persons acting together for a common purpose or course

25

of conduct"); *Elsevier Inc. v. W.H.P.R., Inc*., 692 F.Supp.2d 297, 307 (S.D.N.Y.2010) (finding that the complaint "fail[ed] to plead the existence of . . . the so-called association in fact enterprise" because it d[id] not plausibly "tie[ ] together the various defendants allegedly comprising the association in fact into a single entity that was formed for the purpose of working together," that is, "acting in concert.")).  "[U]nless a plaintiff must allege something more than the fact that individuals were all engaged in the same type of illicit conduct during the same time period — the RICO statute's allowance for association-in-fact enterprises becomes an open gateway to the imposition of potentially massive costs on numerous defendants, regardless of whether there is even a hint of the collaboration necessary to trigger liability."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 370 (internal citation and quotation marks omitted).

Here, Plaintiff woefully has failed to allege an association-in-fact enterprise. While alleging without support that "Defendants" have "organized their operation into a cohesive group with specific and assigned responsibilities and a command structure," Plaintiff fails to identify those purported "specific and assigned responsibilities" and does not even attempt to delineate how the supposed "command structure" actually works.  (*See* Am. Compl., ¶ 173).  Plaintiff's only real attempt to describe this purported "association in fact" is a bombastic claim that NYLIM and Siguler were "primarily responsible for managing the RICO Defendants' 'private army'" and supposedly "caused money to be transferred out of the United States" to somehow siphon funds from "these listed enterprises[.]"  (*Id.*).  Plaintiff's allegations amount to nothing more than rhetorical window dressing – an unsuccessful attempt to assert a RICO claim without complying with the actual pleading requirements.  Plaintiff's Amended Complaint wholly fails to explain how the identified actors are in any way associated with one another besides loosely referencing a supposed mafia-type organization.  As such, Plaintiff's allegations remain an association in fiction,

rather than an association in fact, and warrant dismissal for failure to state a claim. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 366, 369-70 (3d Cir. 2010); *see also Elsevier Inc. v. W.H.P.R., Inc.*, 692 F.Supp.2d 297, 307 (S.D.N.Y.2010).

> 2. Plaintiff's Complaint Does Not Allege That NYLIM "Conducted or Participated In" the Conduct of an "Enterprise"

Assuming without conceding that Plaintiff sufficiently has pled the existence of an enterprise, the barebones allegations asserted against NYLIM in Plaintiff's Amended Complaint do not establish that NYLIM "conducted or participated in" the conduct of that "enterprise" as required to assert a RICO claim under 18 U.S.C. § 1962(c). Because Plaintiff has failed to properly plead this critical element of a RICO claim, Plaintiff's RICO claims against NYLIM must be dismissed with prejudice.

The Supreme Court has held that "[i]n order to 'participate, directly or indirectly, in the conduct of [an] enterprise's affairs,' one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). That being said, "RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required." *Id.* (emphasis in original); *see also University of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) ("There must be a nexus between the person and the conduct in the affairs of an enterprise.").

Plaintiff does not even attempt to allege that NYLIM "directed" *any* specific actions in connection with the so-called "enterprise." (*See* Am. Compl., ¶¶ 170-236). In the sixty-six paragraphs comprising Plaintiff's RICO claims (Counts 1 and 2), Plaintiff does not allege any specific actions undertaken by NYLIM or that any such actions "directed" the "enterprise" in any way. In fact, the language used by Plaintiff to describe NYLIM's purported actions demonstrates that Plaintiff is not alleging NYLIM "directed" anything: "Defendants NYLIM and Siguler . . .

frequently *caused* money to be transferred out of the United States for this purpose and further *permitted* the siphoning of funds from these listed enterprises . . ." (*Id.* ¶ 173(e)) (emphasis added). As such, Plaintiff has failed to properly plead this element of its RICO claims.

        3.      Plaintiff Has Failed to Allege Any
                    "Pattern of Racketeering Activity"
                    Involving NYLIM

Finally, as if the two previous deficiencies were not enough, Plaintiff has not pled allegations sufficient to suggest that NYLIM has engaged in any "pattern of racketeering activity" as required to sustain a RICO claim. For this reason, as well, Plaintiff's RICO claims against NYLIM must be dismissed.

The RICO statute defines "racketeering activity" as acts involving a number of predicate offenses, including mail fraud and wire fraud. *See* 18 U.S.C. § 1961(1). Further, the statute states that a "pattern of racketeering activity" requires "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). To satisfy the "pattern of racketeering activity" element, "a plaintiff must show also 'that the racketeering acts are related, *and* that they amount to or pose a threat of continued criminal activity'" — i.e., *both* prongs are required to demonstrate a pattern under RICO. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir. 1991) (citing *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989)) (emphasis in original). As with the longevity analysis related to the "structure" of the enterprise, the "continuity" prong in this context refers "'either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 241). In that regard, "[a] short-term scheme threatening no future criminal activity will not suffice." *Id.* Importantly, "'[p]redicate acts extending over a few weeks or months and threatening no future

criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242).

The Amended Complaint contains a section explicitly titled "pattern of racketeering activity." However, only three of the paragraphs describing the supposed "racketeering activity" identify NYLIM by name at all, and even then, those paragraphs only (1) state that NYLIM (and others) "tacitly approved" certain transactions, without explaining what that means (Am. Compl. ¶ 195); (2) claim that NYLIM (and others) supposedly engaged in ill-defined "improper practices" in connection with financial statements, without explaining what practices are being referenced or how NYLIM allegedly engaged in them (*id*. ¶ 214); and (3) contend that NYLIM (and others) "used or caused to be used the mail or wires in furtherance of the RICO Defendants' scheme to defraud" without identifying *any* examples of such use to support this claim, and that NYLIM somehow "permitted false testimony" in certain proceedings, without identifying the proceedings, the testimony, or how NYLIM supposedly did so (*id*. ¶ 219).

Given the foregoing, Plaintiff has not properly pled that NYLIM has engaged in a "pattern of racketeering activity," and Plaintiff's RICO claims against NYLIM must be dismissed.

### E.     PLAINTIFF HAS NOT PROPERLY PLED A RICO CONSPIRACY CLAIM AGAINST NYLIM (COUNT 2)

In addition to asserting claims under 18 U.S.C. § 1962(c), Plaintiff also alleges a RICO conspiracy in violation of 18 U.S.C. § 1962(d) in Count 2 of its Amended Complaint.  However, for many of the same reasons that Plaintiff's substantive RICO claim must be dismissed, Plaintiff's RICO conspiracy claim against NYLIM must likewise fail.

"To state a claim for a RICO conspiracy under section 1962(d), a plaintiff must allege that defendants (1) agreed to commit predicate racketeering acts (2) with knowledge that the acts formed a pattern of racketeering activity in violation of § 1962(a), (b), or (c)."  *A-Valey Engineers,*

*Inc.*, 106 F. Supp.2d at 717.  Where a pleading "fails to describe the general composition of the conspiracy and each defendant's role therein" as well as any "allegations that defendants, in agreeing to commit the predicate acts of mail and wire fraud, did so with knowledge that such acts constituted a pattern of racketeering activity in violation of § 1962(a), (b), or (c)" a RICO conspiracy claim must be dismissed.  *See id.*  Moreover, a plaintiff's RICO conspiracy claim must be dismissed if the pleadings do not state a substantive RICO claim.  *Kolar v. Preferred Real Estate Invest., Inc.*, 361 Fed. Appx. 354, 367 (3d Cir. 2010).

As set forth above, Plaintiff has failed to sufficiently articulate the alleged RICO predicate claims of wire and mail fraud, instead baldly claiming that NYLIM and others improperly used the mail or wires in furtherance of a scheme to defraud, without articulating what NYLIM specifically did or agreed to do (or indeed, what *any* Defendant specifically did).  (*See* Am. Compl., ¶¶ 229-236).  Because Plaintiff has failed to properly plead any predicate acts or that NYLIM had knowledge of or agreed to such predicate acts, Plaintiff's RICO conspiracy claim must be dismissed.  *See Kolar*, 361 Fed. Appx. at 367.

### F.   PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM (COUNT 4) AGAINST NYLIM MUST BE DISMISSED

Plaintiff contends in Count 4 of the Amended Complaint that "Defendants" intentionally interfered with "valid and enforceable contracts bestowed upon the Plaintiffs."  (*See* Am. Compl., ¶¶ 244-249).  However, Plaintiff fails to identify what those purported "valid and enforceable contracts" are, let alone that NYLIM was directly involved in any way with either of those contracts.  Accordingly, Plaintiff's tortious interference claim against NYLIM must be dismissed.

In order to allege a tortious interference claim under New Jersey law, a plaintiff must assert the following elements: (1) plaintiff had a reasonable expectation of economic benefit or advantage; (2) defendants knew of plaintiff's expectation; (3) defendants wrongfully, intentionally

interfered with that expectation; (4) absent defendants' interference, a reasonable probability existed that plaintiff would have received the expected economic benefit; and (5) plaintiff suffered damages resulting from defendants' interference. *A-Valey Engineers, Inc.*, 106 F. Supp.2d at 719 (citing *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 186 (3d. Cir. 1992)).

Plaintiff does not provide any facts to support a tortious interference claim against NYLIM. Nowhere does Plaintiff plead or even suggest NYLIM was aware of any purported "valid and enforceable contracts" involving Plaintiff, let alone explain the supposedly "wrongful acts" NYLIM purportedly performed that interfered with any expectations allegedly held by Plaintiff. (Am. Compl., ¶¶ 244-249).  Accordingly, Count 4 likewise must be dismissed.

## G.      PLAINTIFF HAS FAILED TO PROPERLY PLEAD A "TRESPASS TO CHATTELS" CLAIM, WHICH MUST BE DISMISSED (COUNT 5)

Count Five is titled "Trespass to Chattels" and is asserted against all Defendants.  (*See* Am. Compl., ¶¶ 250-255).  "Under New Jersey law, 'a cognizable claim for trespass occurs when personal property, in the actual use of the owner, is injured or taken by a trespasser, so that the owner is deprived of the use of it.'" *Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 2014 WL 12634303, *6 (D.N.J. Aug. 4, 2014) (Martini, J.) (quoting *Arcand v. Brother International Corp.*, 673 F. Supp.2d 282, 312 (D.N.J. 2009) (Wolfson, J.)) (dismissing trespass to chattels claim for failure to state a claim when plaintiff failed to allege an element of the cause of action).  Plaintiff's cause of action appears to be based on supposed "interference" the "RICO Defendants" engaged in with respect to undefined "property, resources, and funds." (Am. Compl., ¶ 251).  Plaintiff has not sufficiently alleged that NYLIM interfered with any personal property in such a way as to deprive Plaintiff's use of it.  Accordingly, Plaintiff's "trespass to chattels" claim must be dismissed.

## H.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT 6) MUST BE DISMISSED

Count Six asserts an unjust enrichment claim.  "To state a claim for unjust enrichment under New Jersey law, a Plaintiff must establish that the 'defendant received a benefit and that retention of that benefit without payment would be unjust' and that Plaintiff 'expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'"  *Swift v. Pandey*, 2013 WL 6022093, at *5 (D.N.J. Nov. 13, 2013) (Linares, J.) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539 (1994)).  Plaintiff's unjust enrichment claim against "Defendants" is based upon a supposed "multi-million dollar windfall" "Defendants" purportedly will obtain as a result of a "fraudulent scheme" to the Plaintiff's alleged detriment.  (Am. Compl., ¶¶ 256-259).  NYLIM is not specifically identified in this claim at all.  Plaintiff has not articulated NYLIM's involvement in the ill-defined "scheme" or any benefits NYLIM supposedly stands to receive therefrom, nor has Plaintiff alleged that it expected any remuneration from NYLIM (or any other Defendants for that matter).  Plaintiff has simply not properly alleged an unjust enrichment claim, and therefore Count 6 must be dismissed.

## I.    PLAINTIFF'S "CONSPIRACY" CLAIM AGAINST NYLIM (COUNT 7) IS NOT PROPERLY PLED

Plaintiff's civil conspiracy claim (Count 7) is the quintessential attempt to simply allege the elements of a cause of action without articulating any facts to show Plaintiff's entitlement to relief.  *See, e.g., Iqbal*, 556 U.S. at 678.  Accordingly, Plaintiff's conspiracy claim must be dismissed.

"There are four elements to the tort of civil conspiracy: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of

32

special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003). "Unlike general damages, which are implied or presumed by the law, special damages "must be specifically pled." *Delzotti v. Morris*, 2015 WL 5306215, at *8 (D.N.J. Sept. 10, 2015) (Simandle, C.J.) (citing Fed. R. Civ. P. 9(g)). This is because "[t]he purpose underlying Rule 9(g) is to give notice to the other side of those 'special' damages claimed." *Id.* (internal quotation omitted). The failure to plead "special damages" in connection with a claim of civil conspiracy warrants the dismissal of that cause of action. *See id.* ("The Court will, however, dismiss Plaintiff's claim of civil conspiracy because Plaintiff has not pleaded special damages.").

Simply put, Plaintiff has failed to sufficiently identify facts supporting any of these elements in its Amended Complaint. Indeed, not only are each of the named Defendants left to guess as to whether they have been implicated in this cause of action, they are similarly required to divine the conduct Plaintiff alleges they performed to warrant liability under this cause of action, as well as any damages Plaintiff contends it suffered — let alone the "special damages" required to assert such a cause of action, which have not been specifically pled. (*See* Am. Compl., ¶¶ 260-264). Plaintiff's bald pleading does not satisfy even the basic pleading standards of Rule 8(a) and does no more than merely recite the elements of the cause of action. Accordingly, Count 7 must be dismissed as well. *See Iqbal*, 556 U.S. at 678.

## J.     PLAINTIFF HAS NOT PROPERLY ASSERTED A BREACH OF GOOD FAITH AND FAIR DEALING CLAIM AGAINST NYLIM (COUNT 8)

Plaintiff similarly fails to adequately plead its breach of the implied covenant of good faith and fair dealing claim, apparently against the "RICO Defendants." (Am. Compl., ¶¶ 265-270). In order to state a claim for breach of the implied covenant of good faith and fair dealing against a defendant, a plaintiff must plead the existence of a contract. *See Luongo v. Village Supermarket, Inc.*, 261 F. Supp.3d 520, 532 (D.N.J. 2017) (McNulty, J.) (stating that "[b]reach of the implied

33

covenant of good faith and fair dealing is not a free-standing cause of action; such a covenant is an implied covenant of a contract" and dismissing such a cause of action for failing to identify a valid and enforceable contract). Plaintiff does not plead the existence of any contract with NYLIM. Instead, this cause of action continues to reference undefined "fraudulent actions and racketeering activity" and the ambiguous "harm" caused by the "RICO Defendants." (*See* Am. Compl., ¶ 268). Plaintiff's failure to articulate a contract between Plaintiff and NYLIM is fatal to this claim as a matter of law, and therefore it must be dismissed.

### K. PLAINTIFF HAS FAILED TO PROPERLY PLEAD A DECLARATORY JUDGMENT CLAIM (COUNT 9)

Finally, Plaintiff's Ninth Cause of Action purportedly seeks a declaratory judgment as well as a preliminary and permanent injunction, but the scope of that requested relief is simply unintelligible. Plaintiff claims to seek a declaration that "will not improperly increase friction between sovereign legal systems or encroach on the proper domain of a foreign court because no court has a right to impose fraudulent acts" and "any such judicial process by the Defendants is unenforceable and nonrecognizable." (Am. Compl., ¶¶ 271-272). Plaintiff's admonishment that a declaratory judgment would have to be carefully crafted in order to avoid "friction between sovereign legal systems" and "encroach[ment]" upon a foreign court's domain defies logic, given Plaintiff's contradictory insistence that New Jersey is the proper forum to adjudicate claims squarely involving events, transactions, communications, litigations, and regulatory investigations that, by Plaintiff's own admissions, occurred entirely overseas. Plaintiff also appears to suggest that "Defendants" should be restrained from commencing litigation against Plaintiff in any forum – again, an odd request given that *Plaintiff* has commenced this action. Needless to say, Plaintiff has not provided any facts to support the requested declaratory judgment or extraordinary injunctive relief. As such, Count 9 must be dismissed.

## **CONCLUSION**

For the foregoing reasons, NYLIM respectfully requests that the Court grant its motion to dismiss this action with prejudice on *forum non conveniens* grounds or, alternatively, pursuant to Fed. R. Civ. P. 12(b)(6) on the basis that Plaintiff has failed to state a claim against NYLIM as to each of its nine claims for relief.

Respectfully submitted,

CHIESA SHAHINIAN & GIANTOMASI PC
Attorneys for Defendant
New York Life Investment Management, LLC

By    /s/ *Shirley U. Emehelu*
          SHIRLEY U. EMEHELU

Dated:  January 28, 2022

35