**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EMQORE ENVESECURE PRIVATE CAPITAL TRUST, | Civil Action No.: 2:20-cv-07324 |
| Plaintiff, | |
| -against- | ORAL ARGUMENT REQUESTED |
| BHAVDEEP SINGH, ET AL., | MOTION RETURNABLE MARCH 21, 2022 |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT**
**SIGULER GUFF & COMPANY, LP'S MOTION TO DISMISS**
**THE AMENDED COMPLAINT**

DEWEY PEGNO & KRAMARSKY LLP
Thomas E.L. Dewey, Esq. (*PHV to be submitted*)
Jenifer L. Salzberg, Esq.
777 Third Avenue, 37th Floor
New York, NY 10017
Tel.: (212) 943-9000
Fax: (212) 943-4325

*Attorneys for Defendant Siguler Guff & Company, LP*

## TABLE OF CONTENTS

*Page:*

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ......................................................................... 1

FACTUAL BACKGROUND ............................................................................. 3

ARGUMENT ....................................................................................................... 4

I.      PLAINTIFF HAS NOT ESTABLISHED STANDING. ............................ 4

II.     SIGULER GUFF IS NOT A PROPER DEFENDANT ............................. 5

III.    THE AMENDED COMPLAINT MUST BE DISMISSED FOR *FORUM NON CONVENIENS.* ....................................................................... 6

        A.      *Forum Non Conveniens* Standard for Dismissal ................... 7

        B.      India Is an Alternative Forum. ................................................ 7

        C.      Plaintiff's Choice of Forum Should Be Accorded Little Deference. ...................... 8

        D.      The Public and Private Interest Factors Favor Dismissal. .................... 9

        E.      The Private Interest Factors Favor Dismissal. ..................... 10

                1.      The Majority of the Parties and Witnesses are Based in India. .................................... 10

                2.      The Majority of the Documents are Located in India. ............... 11

        F.      The Public Interest Factors Favor Dismissal. ..................... 13

                1.      Plaintiff's Allegations have Little to No Connection to New Jersey ........................... 13

                2.      This Court Would Likely Have to Apply Indian Law to Many of the Claims .............. 14

                3.      Issues Related to the Allegations in the Amended Complaint Have Already Been Adjudicated in Indian Courts. ................. 14

                4.      It is Unfair to Burden a New Jersey Jury with a Dispute with No Connection to New Jersey .................. 14

i

     5.     This Case Would Pose an Unnecessary Burden on New Jersey Courts ...................................................................................15

IV.    THE COURT SHOULD DISMISS ALL CLAIMS AGAINST SIGULER GUFF FOR FAILURE TO STATE A CLAIM. ...................................15

    A.    The Standard of Review for FRCP 12(b)(6). ..........................15

    B.    Plaintiff Lacks Standing to Bring a RICO Claim .................16

        1.     Plaintiff Fails to Allege Injury ...................................17

        2.     Plaintiff Fails to Allege a Causal Relationship ..........18

    C.    Plaintiff Fails to State a § 1962(c) RICO Claim Against Siguler Guff. .............................................................................19

        1.     Plaintiff Fails to Properly Plead a "Pattern" of Racketeering. ..................20

        2.     Plaintiff Has Not Adequately Pleaded the Existence of an "Enterprise". ..................22

        3.     Plaintiff Fails to Adequately Plead that Siguler Guff Conducted or Participated in the Enterprise ................24

        4.     Plaintiff Fails to Meet the Heightened Standard for Fraud Claims ..................25

    D.    Plaintiff Fails to State a § 1962(d) Claim for RICO Conspiracy Against Siguler Guff ........................................27

    E.    RICO Does Not Apply to the Extraterritorial Conduct Alleged in the Amended Complaint. ....................................27

    F.    The Amended Complaint's Alleged Common Law Claims Fail to State a Claim Against Siguler Guff. ...........................28

CONCLUSION ...........................................................................................30

# **TABLE OF AUTHORITIES**

*Cases:*                                                                                                              *Page(s):*

*Anderson v. Ayling*,
    396 F.3d 265 (3d Cir. 2005)...................................................................................17

*Arcand v. Brother Int'l Corp.*,
    673 F. Supp. 2d 282 (D.N.J. 2009) ......................................................................29

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................15

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)....................................................................................16

*Base Metal Trading SA v. Russian Aluminum*,
    253 F. Supp. 2d 681 (S.D.N.Y. 2003),
    *aff'd*, 98 F. App'x 47 (2d Cir. 2004)....................................................11, 13, 14

*Berg v. Obama*,
    586 F.3d 234 (3d Cir. 2009).....................................................................................4

*Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*,
    87 F. App'x 227 (3d Cir. 2003) ...........................................................................25

*Boyle v. United States*,
    556 U.S. 938 (2009)..............................................................................................23

*Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*,
    271 F.3d 374 (2d Cir. 2001)..................................................................................19

*Cooney v. BAC Home Loans Servicing, LP*,
    No. CIV. 10-4066 JBS/JS, 2011 WL 2517045 (D.N.J. June 22, 2011) ............26

*Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*,
    528 F.3d 1001 (8th Cir. 2008) .............................................................................19

*Desmond v. Siegel*,
    No. CIV. 10-5562 DRD, 2012 WL 3228681 (D.N.J. Aug. 6, 2012)..............21, 25

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
    No. CIV.A. 07-2860(GEB), 2008 WL 5413105 (D.N.J. Dec. 23, 2008) ...................17, 18

*Cases:*                                                                                          *Page(s):*

*Eurofins Pharma US Holdings v. Bioalliance Pharma SA*,
    623 F.3d 147 (3d Cir. 2010)..............................................................................7, 9

*Falat v. Cty. of Hunterdon*,
    2013 WL 1163751 (D.N.J. Mar. 19, 2013)...................................................26

*Fid. Eatontown, LLC v. Excellency Enter., LLC*,
    No. 3:16-CV-3899-BRM-LHG, 2017 WL 2691417 (D.N.J. June 22, 2017)...................28

*Finkelman v. Nat'l Football League*,
    810 F.3d 187 (3d Cir. 2016)...............................................................1, 4

*Gen. Elec. Co. v. DeutzAg*,
    270 F.3d 144 (3d Cir. 2001)..................................................................30

*Germinaro v. Fid. Nat'l Title Ins. Co.*,
    737 F. App'x 96 (3d Cir. 2018) ..............................................................21

*Graham v. Rawley*,
    No. CV 14-6743, 2016 WL 7477756 (D.N.J. Dec. 29, 2016) ...........................6

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989)..................................................................20, 21

*Hemi Group, LLC v. City of New York*,
    559 U.S. 1 (2010)..........................................................................18

*Holmes v. Sec. Investor Prot. Corp.*,
    503 U.S. 258 (1992)......................................................................18

*Humphrey v. GlaxoSmithKline PLC*,
    905 F.3d 694 (3d Cir. 2018)...........................................................3, 19, 28

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010)............................................................23, 27

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    No. 2:06-CV-5774(SRC), 2009 WL 2043604 (D.N.J. July 10, 2009) ...................17, 18

*Kisano Trade & Invest Ltd. v. Lemster*,
    Civil Action No. 11–852, 2013 WL 594017 (W.D. Pa. Feb. 15, 2013),
    *aff'd*, 737 F.3d 869 (3d Cir. 2013) ...................................................9, 10

iv

*Cases:*                                                                                                    *Page(s):*

*Knit With v. Knitting Fever, Inc.*,
    No. CIV.A. 08-4221, 2012 WL 2938992 (E.D. Pa. July 19, 2012),
    *aff'd*, 625 F. App'x 27 (3d Cir. 2015) ................................................................. 17

*Laurel Gardens, LLC v. Mckenna*,
    948 F.3d 105 (3d Cir. 2020) .......................................................................... 19

*Loh v. Richardson-Browne*,
    No. CIV. 10-0054 NLH, 2010 WL 5055787 (D.N.J. Dec. 2, 2010) ........................ 15, 16

*Lony v. E.I. Du Pont de Nemours & Co.*,
    886 F.2d 628 (3d Cir. 1989) ............................................................................ 7

*Lorenz v. CSX Corp.*,
    1 F.3d 1406 (3d Cir. 1993) ............................................................................. 6

*Maio v. Aetna, Inc.*,
    221 F.3d 472 (3d Cir. 2000) ....................................................................... 16, 17

*Martin Hilti Family Tr. v. Knoedler Gallery, LLC*,
    386 F. Supp. 3d 319 (S.D.N.Y. 2019) ............................................................... 28

*Mega Concrete, Inc. v. Smith*,
    No. CIV.A. 09-4234, 2011 WL 1103831 (E.D. Pa. Mar. 24, 2011) ..................... 22, 24

*Noye v. Hoffmann–La Roche, Inc.*,
    570 A.2d 12 (N.J. Super. Ct. App. Div. 1990) .................................................... 29

*Penn Mont Sec. v. Frucher*,
    502 F. Supp. 2d 443 (E.D. Pa. 2007) ............................................................... 18

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ........................................................................... 16

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
    967 F.3d 218 (3d Cir. 2020) ........................................................................... 29

*Princeton Football Partners LLC v. Football Ass'n of Ireland*,
    No. CIV.A. 11-5227 MLC, 2012 WL 2995199 (D.N.J. July 23, 2012) ............... 10, 13, 15

*Prospect Funding Holdings, LCC v. Breen*,
    No. 2:17-CV-3328-KM-MAH, 2018 WL 734665 (D.N.J. Feb. 5, 2018),
    *aff'd*, 757 F. App'x 130 (3d Cir. 2018) .............................................................. 5

*Cases:*                                                                                     *Page(s):*

*Religare Enterprises Ltd. v. Loancore Servs. Solutions Priv. Ltd.*,
    CS(COMM) 427/2019 ...................................................................................1

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)..................................................................................24

*RJR Nabisco, Inc. v. European Cmty.*,
    136 S. Ct. 2090 (2016).....................................................................3, 27, 28

*Tabas v. Tabas*,
    47 F.3d 1280 (3d Cir. 1995)......................................................................21

*Tellis v. U.S. Fid. & Guar. Co.*,
    826 F.2d 477 (7th Cir. 1986) ...................................................................22

*United States v. Pelullo*,
    964 F.2d 193 (3d Cir. 1992)......................................................................21

*Veverka v. Royal Caribbean Cruises, Ltd.*,
    No. CIV.A. 12-3070 ES MA, 2015 WL 1270139 (D.N.J. Mar. 18, 2015),
    *aff'd*, 649 F. App'x 162 (3d Cir. 2016).................................................29

*Wiatt v. Winston & Strawn, LLP*,
    No. CIV.A. 10-6608 JLL, 2011 WL 2559567 (D.N.J. June 27, 2011)............................3

*Windt v. Qwest Commc'ns, Int'l, Inc.*,
    529 F.3d 183 (3d Cir. 2008), *aff'd*, 737 F.3d 869 (3d Cir. 2013).........................7, 8, 9, 14

*Yucaipa Am. All. Fund I, LP v. Ehrlich*,
    716 F. App'x 73 (3d Cir. 2017) ...............................................................21


*Statutes & Other Authorities:*                                                              *Page(s):*

18 U.S.C. § 1114................................................................................20

18 U.S.C. § 1341................................................................................20

18 U.S.C. § 1343................................................................................20

18 U.S.C. § 1503................................................................................20

18 U.S.C. § 1512................................................................................20

18 U.S.C. § 1956................................................................................20

*Statutes & Other Authorities:*                                    *Page(s):*

18 U.S.C. § 1961...........................................................................................22

18 U.S.C. § 1962.........................................................2, 3, 16, 17,19, 21, 24, 27

18 U.S.C. § 1965...........................................................................................19

Fed. R. Civ. P. 12(b)(6)...........................................................................15, 16

Defendant Siguler Guff & Company, LP ("Siguler Guff") respectfully moves to dismiss the Amended Complaint (the "Amended Complaint") filed by Plaintiff Emqore Envesecure Private Capital Trust ("Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff's Amended Complaint alleges an indecipherable web of transactions and alleged wrongdoing in India, asserting multiple separate counts and naming dozens of Defendants, most located outside the United States and only two in New Jersey. The claims fail for multiple independently sufficient reasons and must be dismissed.

*First*, Plaintiff has failed to adequately plead its standing. Plaintiff—a Wyoming trust— alleges that it acquired by "Assignment Deed" "all rights, title and interest" of certain purported underlying assets allegedly held by numerous (primarily Indian) entities, which supposedly gives Plaintiff the right to bring this suit. (Am. Compl. ¶ 5 n.1). Plaintiff's description of the purported Assignment Deed is murky at best. But even assuming that Plaintiff's rights to bring this suit were properly assigned, Plaintiff has still failed adequately to plead a sufficient causal connection between the injury and the conduct complained of and a likelihood that the injury will be redressed by a favorable decision. *See, e.g., Finkelman v. Nat'l Football League*, 810 F.3d 187, 193–94 (3d Cir. 2016). Further, one of the assignors— Loancore Servicing Solutions Private Limited (Am. Compl. ¶ 5)—has been barred from filing additional claims by the High Court of Delhi at New Delhi, and Indian law prescribes procedures for transferring legal claims, none of which appear to have been followed. *See* Declaration of Aviral Jain, dated January 28, 2022 ("Jain Decl."), ¶ 5, Ex. A (*Religare Enterprises Ltd. v. Loancore Servs. Solutions Priv. Ltd.*, CS(COMM) 427/2019)).

*Second*, the named Defendant—New York-based Siguler Guff & Company, LP—has no business in this lawsuit. Indeed, Plaintiff's own Amended Complaint admits that the *actual* entity

with a minority ownership in Defendant RFL is Resurgence PE Investments Ltd, a fund based in Mauritius (Am. Compl. ¶ 11), which is conspicuously *not* named as a defendant. And while the Amended Complaint then claims that "Siguler Guff" owns its interest in Resurgence, even that is not correct: the entity that owns an interest in Resurgence is Siguler Guff International Advisers (Mauritius) Limited, another Mauritius company. (Jain Decl. ¶ 2). As Siguler Guff explained in its Motion to Dismiss, Siguler Guff has no commercial transactions or direct relationship with any of the parties. (ECF No. 33-1 at 6). Siguler Guff even attached a declaration to its Motion to Dismiss explaining that Siguler Guff International Advisers (Mauritius) Limited is the investment manager to Resurgence (a Mauritius company), which held a minority investment in RFL (an Indian company), and that Siguler Guff is not a party to the contracts at issue. (ECF No. 33-2, Jain Decl. ¶¶ 2, 3). Despite this, the Amended Complaint makes no attempt to address the errors in the initial Complaint and in fact includes the same factually incorrect language word for word. (*Compare* Compl. ¶ 33 *with* Am. Compl. ¶ 11).

*Third*, the Amended Complaint should be dismissed based on *forum non conveniens*. Most of the named Defendants are Indian entities and individuals, more than half of the "Non-Party Defendants" are Indian, the alleged events happened in India, the witnesses are in India, there is related litigation in India and relevant documents are in India. Indeed, New Jersey has *no connection* whatsoever with this case, apart from two Defendants domiciled in New Jersey.

*Fourth*, Plaintiff fails to adequately plead any RICO claims against Siguler Guff. Plaintiff fails to show an injury, which requires proof of a concrete financial loss that was proximately caused by Siguler Guff's alleged RICO violation. Further, Plaintiff has not adequately pleaded any of the required elements under 18 U.S.C. § 1962(c). Plaintiff has not properly pleaded (i) a "pattern" of racketeering, which requires long-term organized conduct; (ii) the existence of an "enterprise," because Plaintiff has not alleged with specificity any facts showing that Defendants

- 2 -

had a common purpose or relationship; or (iii) that Siguler Guff "participated" in the operation or management of the alleged enterprise. Since Plaintiff has failed to adequately plead an underlying RICO claim, then there cannot be a RICO conspiracy claim under § 1962(d). The Amended Complaint similarly fails to state a claim for civil conspiracy

*Fifth*, RICO does not apply to the extraterritorial conduct alleged in the Amended Complaint. The Third Circuit has dismissed RICO cases when a plaintiff's injury occurred abroad, not in the United States. *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 707-08 (3d Cir. 2018) (citing *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325 (2016)). Since all the entities from which the Plaintiff has allegedly acquired its interest are foreign (Am. Compl. ¶ 5), that injury was necessarily foreign (and Plaintiff cannot circumvent this rule by assigning its claim to a US-based entity).

*Sixth*, the Amended Complaint does not properly plead the elements for tortious interference with contract. *See Wiatt v. Winston & Strawn, LLP*, No. CIV.A. 10-6608 JLL, 2011 WL 2559567, at *22 (D.N.J. June 27, 2011) ("Plaintiffs have failed to allege a claim for tortious interference (with a contractual or prospective business relationship) that is plausible on its face."). The Amended Complaint must be dismissed.

## FACTUAL BACKGROUND

Plaintiff broadly asserts that "Defendants"—more than two dozen entities and individuals—"conspired to engage in a pattern of racketeering activity, have each committed numerous criminal acts as part of their scheme to defraud and extort the Plaintiff" in a fraud perpetrated by Defendants Malvinder and Shivinder Singh (collectively, the "Singh Brothers"). (Am. Compl. ¶¶ 6-7). As a result of Defendants' supposed scheme, Plaintiff and the purported assignors under Assignment Deed ("Plaintiff's Predecessors") were allegedly deprived of the benefits of certain contracts Plaintiff's Predecessors entered into with Indian companies (*i.e.* the

"Religare entities" and the "Fortis entities") (*id.* ¶¶ 97, 121, 161). Siguler Guff and certain other Defendants allegedly held board seats "of the major/substantial subsidiaries of REL and Fortis" and allegedly "caused money to be transferred out of the United States…and… permitted the siphoning of funds…to be laundered in the lawful currency of the United States." (*Id.* ¶ 173(e)). Defendants allegedly tried "cover-up" their complicity in the Singh Brothers' fraud by "concoct[ing] an illegal fraudulent scheme of their own to conceal their wrongdoing, shirk their responsibility and criminally deprive creditors their rightful dues." (*Id.* ¶ 160).

The Amended Complaint is devoid of details regarding Siguler Guff's alleged involvement. Rather than allege specific details or facts, the Amended Complaint contains conclusory assertions that Siguler Guff, along with other Defendants, "created a united front, to take over REL and to block Ernqore's control over REL", along with other Defendants assisted the Singh Brothers in "encumbering their assets to Religare", and along with other Defendants "tacitly sanctioned" a scheme to "hyperinflate the stock of a failing enterprise." (*See Id.* ¶¶ 108, 122, 124).

## ARGUMENT

## I.     PLAINTIFF HAS NOT ESTABLISHED STANDING.

To establish Article III standing, a plaintiff must demonstrate (1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193-94 (3d Cir. 2016). The burden to establish standing rests with the plaintiff. *Berg v. Obama*, 586 F.3d 234, 238 (3d Cir. 2009). Plaintiff has not satisfied its burden.

*First*, Plaintiff alleges neither any injury in fact nor a sufficient causal connection between any injury and the conduct about which it complains. (*See infra* Section IV.B). Because Plaintiff alleges no injury-in-fact, it cannot allege a connection to the conduct about which it

complains. The Amended Complaint is completely devoid of any allegation that connects Plaintiff to any injury, or any injury to any conduct by Siguler Guff.

*Second*, there is no likelihood that any alleged injury would be redressed by a favorable decision. Because Plaintiff has not alleged any injury, there is no injury to be redressed.

*Third*, of even more concern is that the minimal information that Plaintiff *does* allege concerning the Assignment Deed reveals that alleged assignors ("Loancore Servicing Solutions Private Limited", *see* Am. Compl. ¶ 5) and Defendant Religare Enterprises, Ltd. (*see id.* ¶ 27) have been and continue to be involved in litigation in India, and the High Court of Delhi at New Delhi issued a March 3, 2020 order providing that "Loancore Servicing Solutions Private Limited"—one of the alleged assignors in this case (*see id.* ¶ 5)—"will not institute any suit/legal proceedings in respect of the cause of action in the present suit against the plaintiff in any Foreign Court except India." (*See* Jain Decl. Ex. A, ¶ 4).

Therefore, it appears that at best the alleged claims here are subject to preclusion (*see Prospect Funding Holdings, LCC v. Breen*, No. 2:17-CV-3328-KM-MAH, 2018 WL 734665, at *4 (D.N.J. Feb. 5, 2018) ("once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation"), *aff'd*, 757 F. App'x 130 (3d Cir. 2018)); at worst, Plaintiff and Loancore are attempting an end-run around an Indian court order.

## II.   SIGULER GUFF IS NOT A PROPER DEFENDANT.

The Amended Complaint names as a defendant "Siguler Guff & Company, LP" and alleges that it was a 6% investor in Defendant Religare Finvest Ltd. ("RFL"), an Indian company, through Resurgence PE Investments Ltd., a Mauritius company. (Am. Compl. ¶¶ 11, 17). Wrong.

The Amended Complaint has *not* named Resurgence as a Defendant—the fund that actually owns a stake in RFL. Siguler Guff International Advisers (Mauritius) Limited is the investment manager that held a minority investment in RFL (an Indian company) through Resurgence (a Mauritius company). (Jain Decl. ¶ 2). Thus, Siguler Guff has ***no commercial transactions or direct relationship with any of the parties*** mentioned in the Amended Complaint—and the actual relevant entities are all based in India and/or Mauritius. These points were made in Siguler Guff's Motion to Dismiss (ECF No. 33-1 at 6; ECF No. 33-2, Jain Decl. ¶¶ 2, 3), but Plaintiff made no attempt whatsoever to address them.

Courts in this District routinely dismiss parties or entire complaints at the motion to dismiss phase when a complaint names an improper party. *See, e.g.*, *Graham v. Rawley*, No. CV 14-6743, 2016 WL 7477756, at *7 (D.N.J. Dec. 29, 2016) (dismissing plaintiff's claims because defendant "is not a proper party"). That is equally so in the RICO context. *E.g.*, *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993) (affirming dismissal of RICO claim where plaintiffs failed to allege sufficient facts to show that parent defendants were distinct entities from alleged enterprise consisting of its subsidiary). This Court should do the same here.

## III.   THE AMENDED COMPLAINT MUST BE DISMISSED FOR *FORUM NON CONVENIENS*.

Plaintiff has inexplicably brought this case in New Jersey when only two of the more than two dozen Defendants are alleged to be located here. A cursory review of the Amended Complaint shows that the alleged misconduct happened in India and is entirely unrelated to New Jersey. Indeed, Plaintiff has already unsuccessfully attempted to assert related claims in India. Plaintiff's transparent attempt to have an Indian-based dispute decided in the United States is apparent through its repeated boilerplate allegations that various overseas Defendants "directed acts in furtherance of the scheme in New Jersey" simply by virtue of their respective alleged

relationships or unspecified "dealings" with NYLIM. (*See* Am. Compl. ¶¶ 44-64). However, the

Amended Complaint is entirely devoid of any specific "dealings" between NYLIM and the

Defendants that supposedly were "in furtherance of the [alleged] scheme." (*See id.* ¶ 67).[1]

A.      ***Forum Non Conveniens*** **Standard for Dismissal.**

A district court may dismiss a case where an alternative forum has jurisdiction to hear the

case, and "when trial in the plaintiff's chosen forum would establish oppressiveness and vexation

to a defendant out of all proportion to the plaintiff's convenience." *Eurofins Pharma US*

*Holdings v. Bioalliance Pharma SA*, 623 F.3d 147, 160 (3d Cir. 2010). The "ultimate inquiry is

where trial will best serve the convenience of the parties and the ends of justice." *Lony v. E.I. Du*

*Pont de Nemours & Co.*, 886 F.2d 628, 632 (3d Cir. 1989).

District courts have "substantial flexibility" in evaluating a *forum non conveniens* motion

and each case "turns on its facts." *Windt v. Qwest Commc'ns, Int'l, Inc.*, 529 F.3d 183, 188 (3d

Cir. 2008). Courts in this Circuit follow a three-step analysis when making a *forum non*

*conveniens* determination: whether a defendant has (1) established that an alternative forum

exists, (2) undercut the presumption that a plaintiff's choice of forum is proper, and (3) shown

that the balance of public and private interest factors favors dismissal. *Id.* at 190.

B.      **India Is an Alternative Forum.**

Courts initially determine whether another forum exists that may decide the case. *Id.* at

189-90. Here, India is clearly a more appropriate forum. Indeed, several entities that are

purported assignors have already litigated claims concerning these matters in India and

Plaintiff's Predecessor, Loancore, was restrained by the Indian courts from instituting legal

---

[1] As NYLIM has explained, NYLIM has nothing to do with this matter either. *See* Defendant
NYLIM's Memorandum in Support of Motion to Dismiss Complaint, ECF No. 25-1, at 9-11
(Sept. 18, 2020).

action involving one of the Defendants here—REL—in any court outside of India.[2] Further, numerous Defendants are Indian entities or individuals. (*See, e.g.*, Am. Compl. ¶¶ 7, 12, 17-19, 27-29). Accordingly, the Indian court system is a far more appropriate forum than New Jersey.

### C.   Plaintiff's Choice of Forum Should Be Accorded Little Deference.

The second factor in a *forum non conveniens* analysis is the degree of deference to Plaintiff's choice of forum. Here, Plaintiff's choice of this forum should receive no deference: it is based in Wyoming and only two of more than two dozen defendants are located in New Jersey.[3] *Windt*, 529 F.3d at 191 (low degree of deference to plaintiff's choice of forum because there was pending litigation in the Netherlands and no indication that "a substantial amount of conduct giving rise to the instant dispute occurred in New Jersey"). Here, Plaintiff, a Wyoming Trust, is foreign to New Jersey (Am. Compl. ¶ 5), and therefore it is "much less reasonable" to assume that New Jersey is a convenient choice.

In a desperate attempt to somehow tie Plaintiff's allegations to New Jersey, the Amended Complaint names two new Defendants, the Singh Brothers. (*Id.* ¶ 7, 51). However, both the Singh Brothers live in India (*id.* ¶ 7) and have already been prosecuted and sentenced by Indian courts. Nevertheless, the Amended Complaint alleges that the Singh Brothers used the entity Ranbaxy USA, which allegedly has its principal place of business in New Jersey, to "flood[] ... the United States market with generic drugs." (*Id.*). Even though Ranbaxy USA is completely unrelated to this case and is not named as a defendant, Plaintiff seeks to tie Ranbaxy USA to this case by making the bizarre assertion that the Singh Brothers used to proceeds in connection with the sale of Ranbaxy USA to provide "material . . . funding for REL and Fortis Ltd." (*Id.* ¶ 103).

---

[2] *See* Jain Decl. ¶ 5, Ex. A.
[3] One of the "Non-Party Defendants", Daiichi Sankyo, Inc., is allegedly based in New Jersey (Am. Compl. ¶ 32).

The Amended Complaint fails to show any actual connection between the Singh Brothers' sale of Ranbaxy USA and any of the other Defendants or allegations in this case. As such, Plaintiff still fails to identify any witnesses, evidence, or any specific conduct that occurred in New Jersey.

### D.   The Public and Private Interest Factors Favor Dismissal.

Courts next consider a range of private and public interest factors to assess whether the forum would be so inconvenient.[4] The court has discretion to dismiss based on the balance of these factors. In performing a *forum non conveniens* analysis, "RICO claims receive no special treatment." *Kisano Trade & Invest Ltd. v. Lemster*, Civil Action No. 11–852, 2013 WL 594017, at *9 (W.D. Pa. Feb. 15, 2013) (citing *Windt*, 529 F.3d at 191), *aff'd*, 737 F.3d 869 (3d Cir. 2013).

Here, these factors overwhelmingly favor India. In *Kisano Trade & Invest Ltd. v. Lemster*, the Third Circuit affirmed dismissal of a case alleging federal RICO and state law claims based on *forum non conveniens*, ruling that Israel would be a more convenient forum. 737 F.3d 869 (3d Cir. 2013). With respect to the private interest factors, the court noted that while plaintiff identified several witnesses located in the United States with knowledge of the various deals, the defendant identified nearly twenty witnesses located abroad, the majority of whom lived in Israel. *Id.* at 878.

---

[4] These private interest factors include the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; and all other practical problems that make trial of a case easy, expeditious and inexpensive. *Eurofins*, 623 F.3d at 161. Courts also consider "public interest" factors, including: (i) the administrative difficulties flowing from court congestion; (ii) the "local interest in having localized controversies decided at home"; (iii) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 162.

With respect to the public interest factors, the Third Circuit reasoned that the parties "met in Israel, discussed and negotiated the purchase of the . . . plant and equipment in Israel, discussed the coal deals in Israel, and most interactions with each other took place in Israel, Monaco or the Ukraine, not in Pennsylvania (or even in the United States)." *Id.* The court noted that apart from the actual wire payments, "there appears to be no other connection to Pennsylvania, and little else to the United States." *Id.* Accordingly, the Third Circuit affirmed the district court's dismissal of the case based on *forum non conveniens*. *Id.* at 879. Here, as in *Kisano*, all relevant factors favor India—indeed, the dispute in *Kisano* has a *greater* nexus to the forum state than is the case here, yet that court affirmed dismissal.

Similarly, a New Jersey district court dismissed a case involving federal RICO claims, ruling that Ireland would be a more convenient forum. *Princeton Football Partners LLC v. Football Ass'n of Ireland*, No. CIV.A. 11-5227 MLC, 2012 WL 2995199, at *11 (D.N.J. July 23, 2012). The court reasoned that "factual considerations" guided its analysis because a "plain reading" of the complaint made clear that "the crux of the alleged wrongdoings" occurred in Ireland and that "a majority of the sources of proof are situated in Ireland because a majority of the party and non-party witnesses reside in or near Ireland." *Id.* at *7-8. The court further reasoned that "[g]iven that the case has minimal connections to a New Jersey forum, the inconvenience imposed on the Court by litigating such a case points in favor of an Irish forum." *Id.* at *9.

### E.   The Private Interest Factors Favor Dismissal.

The private interest factors also weigh heavily in favor of dismissing the case.

### 1.   The Majority of the Parties and Witnesses are Based in India.

Most of the Defendants named in the Amended Complaint are not domiciled in the United States; rather, they are based in India (Am. Compl. ¶¶ 7, 12, 17-19, 27-29), Malaysia (*id.*

- 10 -

¶ 13), Mauritius (*id.* ¶¶ 22, 35, 36), Singapore (*id.* ¶ 34), and the United Kingdom (*id.* ¶¶ 18, 19, 22, 23, 27); the majority of the parties and witnesses are based on India; a significant number of the defendants are Indian companies or individuals who reside in India;[5] and two of Plaintiff's Predecessors, which are not named parties but are referenced in the Amended Complaint, are also based in India. (*id.* ¶ 5 n.1). It is clear from the Amended Complaint that the majority of the parties and witnesses are located in India. (*id.* ¶¶ 6-46, 79-96; ECF No. 33-2, Jain Decl. ¶ 4). Furthermore, this Court may have difficulty compelling the named Defendants based in India and other countries to appear in a United States court. *See, e.g.*, *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 712 (S.D.N.Y. 2003), *aff'd*, 98 F. App'x 47 (2d Cir. 2004).

### 2.    The Majority of the Documents are Located in India.

The majority of the documents are located in India since the negotiations and meetings appear to have taken place in India (Am. Compl. Ex. A ¶¶ 1-7; Ex. B ¶¶ 1-5), and the contracts at issue appear to be based on Indian law (*Id.* Ex. A ¶ 32).

Moreover, there has already been substantial litigation in India related to the allegations in this case. (*Id.* ¶¶ 79-96). Indeed, the Amended Complaint details the many litigations involving Plaintiff's Predecessors in Indian courts concerning the allegations in the Amended Complaint. To name a few, Plaintiff's Predecessors filed (i) an action in India's National Company Law Tribunal related to alleged misappropriation by certain Defendants (*id.* ¶ 80);

---

[5] According to the Amended Complaint, the following defendants and non-party defendants are based in India: the Singh Brothers (¶ 7), Ravi Rajagopal (¶ 33), Rashmi Saluja (¶ 37), Care Health Insurance, Ltd. (¶ 19), Fortis Healthcare Ltd. (¶ 12), Fortis Healthcare Holdings (¶ 45), Reserve Bank of India (¶ 39), IDBI Trusteeship Services Limited (¶ 41), RHC Holdings Private Limited (¶ 28), RHC Healthcare Management Services Private Ltd. (¶ 28), Securities Exchange Board of India (¶ 40), SRL Limited (¶ 29), Religare Broking Ltd. (¶ 18), Religare Finvest Ltd. (¶ 17), Religare Enterprise, Ltd. (¶ 27), Ranchem Private Limited (¶ 44), State Bank of India (¶ 38), SS Kothari Mehta & Company (¶ 46).

(ii) an action in the High Court of Delhi to protect the put option by Defendant REL (*id.* ¶ 81); (iii) an action involving Defendant Fortis Ltd. in the New Delhi District Court (*id.* ¶ 82); (iv) an action against Non-Party Defendant SSKIM for fraudulent accounting practices (*id.* ¶ 83); (v) a petition to restrain the shares seized by Defendants Ares SSG and Bay Capital (*id.* ¶ 86); (vi) an arbitration against Defendant Fortis Ltd. (*id.* ¶ 87); and (vii) multiple complaints "to show an arms-length dealings [sic] with the Singh Brothers, RICO Defendants, through REL". (*Id.* ¶ 88).

Plaintiff has filed several lawsuits related to claims in the Amended Complaint in India—Plaintiff filed complaints with (i) the Securities Exchange Board of India; (ii) the Reserve Bank of India; and (iii) the Economic Offenses Wing in India. (*Id.* ¶¶ 85, 94). The Amended Complaint states that between March 2018 through March 2020, Plaintiff has "raised over 96 instances of grievances with the Indian Regulators and Agencies, all of which remain unattended, even while the RICO Defendants files [sic] one frivolous complaint after the other." (*Id.* ¶ 144). Putting aside the issue of whether Plaintiff's claims have already been redressed by Indian courts, Plaintiff would have this Court believe that despite the over 100 litigations in India that directly related to the allegations in the Amended Complaint and indeed include some of the same Defendants, this Court is somehow a more convenient forum to resolve this case. This factor weighs in favor of dismissing the case based on *forum non conveniens*.[6]

---

[6] The COVID-19 pandemic presents even more difficulties than usual when it comes to holding a trial in an American court where a majority of the Defendants are based abroad. Plaintiff admitted the difficulties in its motion regarding service of process on the international Defendants, stating "[g]iven the varying stages of the COVID-19 pandemic across the world, Plaintiff has concerns regarding the most safe, effective and efficient way to serve all of the International Defendants in order to move this case forward." No. 20-7324 (KM)(JBC), ECF No. 4-3 at 2. If Plaintiff is having trouble even serving the foreign defendants, then there will undoubtedly be major difficulties in arranging witness interviews, depositions, court appearances, and document collection in light of the international travel restrictions and safety concerns. This is another factor that favors dismissal.

### F.   The Public Interest Factors Favor Dismissal.

The public interest factors also favor dismissing the case. The allegations in the Amended Complaint have very limited connection to New Jersey (or to the United States), this Court would likely have to apply Indian law to several of the claims, disputes concerning matters referenced in the Amended Complaint have already been adjudicated in Indian courts, and it is unfair to burden a New Jersey jury and court with allegations concerning a dispute centered in India.

### 1.   Plaintiff's Allegations have Little to No Connection to New Jersey.

The Amended Complaint alleges nothing of consequence that occurred in New Jersey. Only two of the more than two dozen Defendants—Bhavdeep Singh and NYLIM—are alleged to be domiciled in New Jersey (Am. Compl. ¶¶ 8, 9). The Amended Complaint baldly asserts that the co-conspirators "directed acts in furtherance of the scheme in New Jersey" (*id.* ¶¶ 57, 59-60, 63, 66-69, 71-72), but fails to provide further detail regarding any specific connection between the allegations and New Jersey (or even the United States). As explained in *Base Metal Trading*, a mere allegation that predicate acts occurred in the United States will not suffice. 253 F. Supp. 2d at 711 (reasoning that while plaintiffs allege that the predicate acts of laundering and transfer of funds occurred in United States, "the relevant allegations that may involve witnesses located in the United States pale in comparison to those involving persons and companies located in Russia"); *see also Princeton Football Partners*, 2012 WL 2995199, at *8 (dismissing RICO claims based on *forum non conveniens*, reasoning that "[a] plain reading of the Amended Complaint makes clear that the crux of the alleged wrongdoings—that is, Defendants' allegedly tortious actions, statements, and misrepresentations—occurred in Ireland.").

- 13 -

2.     **This Court Would Likely Have to Apply Indian Law to Many of the Claims.**

This Court will likely have to apply Indian law because the relevant contracts appear to be under Indian law (Am. Compl. Ex. A ¶ 32). The need to apply foreign law weighs heavily in favor of dismissing this case in favor of an Indian forum. *See Base Metal Trading*, 253 F. Supp. 2d at 712.  The fact that Plaintiff brings RICO claims does not render a United States court a more appropriate forum: "Federal courts have not afforded claims under federal securities law or RICO any special forum non conveniens treatment, and this Court has no reason to refuse to following suit." *Windt*, 544 F. Supp. 2d at 424  (collecting cases).

3.     **Issues Related to the Allegations in the Amended Complaint Have Already Been Adjudicated in Indian Courts.**

There have already been related proceedings in India (Am. Compl. ¶¶ 80-96). Indeed, the High Court of Delhi at New Delhi issued an order providing that "Loancore Servicing Solutions Private Limited"—the alleged assignor in this case (*id.* ¶ 5)—"will not institute any suit/legal proceedings in respect of the cause of action in the present suit against the plaintiff in any Foreign Court except India." (Jain Decl. Ex. A, ¶ 5). Plaintiff cannot use litigation in a United States court to get a "second bite" at the apple. As cautioned by the court in *Base Metal Trading*, "plaintiffs in this case have similarly pursued relief in the Russian courts until the results were not to their liking." 253 F. Supp. 2d at 707. This factor weighs in favor of dismissal.

4.     **It is Unfair to Burden a New Jersey Jury with a Dispute with No Connection to New Jersey.**

Should this case go before a jury, it is unfair to burden a New Jersey jury with a dispute that has no connection to New Jersey. As a New Jersey District Court explained in dismissing a case involving RICO claims based on *forum non conveniens*:

> The fact that two of these defendants are domiciled in the state of New Jersey does not transform the case into a "local dispute," nor can the facts that four Board

- 14 -

meetings took place somewhere in the United States and Defendants, while being present in the United States, took part in five international conference calls, transform the case into an "American" dispute.

*Windt*, 544 F. Supp. 2d at 423. Therefore, the court concluded that "the United States and the community of the District of New Jersey have little interest in the resolution of this case." *Id.*

### 5. This Case Would Pose an Unnecessary Burden on New Jersey Courts.

Finally, litigating this case in a New Jersey forum will increase court congestion and, therefore, present unnecessary administrative difficulties—another favor weighing in favor of dismissal. *See Princeton Football*, 2012 WL 2995199, at *9 ("Given that the case has minimal connections to a New Jersey forum, the inconvenience imposed on the Court by litigating such a case points in favor of an Irish forum.").

## IV. THE COURT SHOULD DISMISS ALL CLAIMS AGAINST SIGULER GUFF FOR FAILURE TO STATE A CLAIM.

### A. The Standard of Review for FRCP 12(b)(6).

To withstand dismissal under Rule 12(b)(6), a complaint must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Amended Complaint's mere regurgitations of the legal elements of some claims, and generalized assertions of "racketeering", need not be accepted as true. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"Under the *Twombly/Iqbal* standard, the Third Circuit has instructed a two-part analysis. First, a claim's factual and legal elements should be separated; a 'district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.' Second, a district court 'must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.'" *Loh v. Richardson-Browne*, No. CIV.

- 15 -

10-0054 NLH, 2010 WL 5055787, at *1-2 (D.N.J. Dec. 2, 2010). "[A] complaint must do more than allege the plaintiff's entitlement to relief." *Id.* at *2; *see Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.").

In addition, Rule 9(b) requires Plaintiff to state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b)'s stringent pleading requirements serve to "provide a defendant with fair notice of a plaintiff's claim" and "safeguard his reputation from improvident charges of wrongdoing". *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). The Amended Complaint fails to meet these standards and should be dismissed.

### B.    Plaintiff Lacks Standing to Bring a RICO Claim.

To have standing to assert a RICO claim, "a RICO plaintiff [must] make two related but analytically distinct threshold showings . . . : (1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).[7] Plaintiff fails both. *First*, Plaintiff does not specifically allege how it was injured apart from the conclusory statement that Plaintiff (a Wyoming Trust) "has been injured in its business and property in that it suffered business losses and losses of intangible assets" due to the RICO violations. (Am. Compl. ¶¶ 225-26, 234). *Second*, the Amended Complaint also does not describe the direct causal relationship between the alleged injury and the RICO violation.

---

[7] Standing to bring a RICO claim in the Third Circuit is analyzed under Rule 12(b)(6) as opposed to Rule 12(b)(1). *See id.* at 482 n.7 (collecting cases).

### 1.     Plaintiff Fails to Allege Injury.

For the first standing requirement, "[a] showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Maio*, 221 F.3d at 483. The injury to business or property can be satisfied by "allegations and *proof of actual monetary loss, i.e., an out-of-pocket loss*." *Id.* (emphasis added). "[S]imply alleging *an injury to business or property resulting from an alleged RICO violation is not enough* to defeat a motion to dismiss." *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-CV-5774(SRC), 2009 WL 2043604, at *11 (D.N.J. July 10, 2009) (emphasis added). Here, Plaintiff's conclusory statement that it "was injured in its business and property by reason of the RICO Defendants' violation of 18 U.S.C. §1962(c)" including but not limited to "damage to Plaintiff's reputation and goodwill", the "impairment" of Plaintiff's interests in certain contracts, and attorneys' fees and costs that Plaintiff has incurred in other related litigations" (Am. Compl. ¶¶ 225, 234, 250) is not sufficient proof of actual monetary loss. *See, e.g.*, *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, No. CIV.A. 07-2860(GEB), 2008 WL 5413105, at *8 (D.N.J. Dec. 23, 2008) (plaintiff lacked standing to bring RICO claim because "Plaintiffs do not plead a concrete financial loss in the form of overpayment").

Here, Plaintiff "simply alleg[es] an injury to a business or property resulting from an alleged RICO violation," which "is not enough to defeat a motion to dismiss". *See In re ScheringPlough*, 2009 WL2043604, at *11. Also, the reduction in value of an intangible property interest created by contract, without more, does not constitute RICO injury. *Maio*, 221 F.3d at 490; *see also Anderson v. Ayling*, 396 F.3d 265, 271 (3d Cir. 2005). Furthermore, alleged harm to goodwill and reputation does not constitute concrete financial loss to business or property sufficient to establish RICO standing. *See Knit With v. Knitting Fever, Inc.*, No. CIV.A. 08-4221, 2012 WL 2938992, at *10 (E.D. Pa. July 19, 2012), *aff'd*, 625 F. App'x 27 (3d Cir. 2015).

Finally, Plaintiff's claims for attorney's fees in "previously-released claims in Ecuador" and "international arbitration" (Am. Compl. ¶ 246), is not sufficient to confer standing because Plaintiff has failed to tie these litigations to any predicate acts. *Penn Mont Sec. v. Frucher*, 502 F. Supp. 2d 443, 467 (E.D. Pa. 2007) ("[Plaintiff's] allegation that it incurred legal fees to defend against internal regulatory proceedings brought by [defendant] does not save its RICO claim because, although legal fees may constitute direct, actionable injuries under RICO, [Plaintiff] does not allege that these injuries were proximately caused by any predicate act.").

### 2.    Plaintiff Fails to Allege A Causal Relationship.

Plaintiff also fails to meet the second standing requirement because Plaintiff has failed to show that the alleged RICO violation was the proximate cause of Plaintiff's injuries. *See, e.g.*, *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). "To establish causation, a plaintiff is required to show that the RICO violation not only was a 'but for' cause of his injury, but was the proximate cause as well. Proximate cause requires some direct relation between the injury asserted and the injurious conduct alleged." *In re Schering-Plough*, 2009 WL 2043604, at *23. A defendant "cannot escape the proximate cause requirement merely by alleging that the fraudulent scheme embraced all those indirectly harmed by the alleged conduct. Otherwise our RICO proximate cause precedent would become a mere pleading rule." *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 13 (2010); *Dist. 1199P Health*, 2008 WL 5413105, at *9.

Here, Plaintiff fails to show how Siguler Guff's conduct proximately caused its injuries. Instead, Plaintiff baldly alleges that it was "the ultimate victim" of the RICO enterprise and its injuries were a "direct, proximate, and reasonably foreseeable result" of the alleged RICO violations. (Am. Compl. ¶ 226). Plaintiff fails to allege any direct relation between the injury asserted and the injurious conduct alleged. Rather, Plaintiff's generalized allegations against Siguler Guff are lumped in with its allegations against other Defendants—making it unclear how

- 18 -

Siguler Guff was the proximate cause of Plaintiff's injuries. Plaintiff has failed to meet both requirements for standing, and its claims against Siguler Guff must be dismissed on that basis.

Plaintiff has failed to meet both requirements for standing, and its RICO claims against Siguler Guff must be dismissed on that basis.

### C.     Plaintiff Fails to State a § 1962(c) RICO Claim Against Siguler Guff.

RICO § 1962(c) prohibits a person from conducting the affairs of an enterprise through a pattern of racketeering. To establish a violation under § 1962(c), "Plaintiffs must show: (1) that two or more persons agreed to conduct or to participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity; (2) that the defendant was a party to or member of that agreement; and (3) that the defendant joined the agreement or conspiracy knowing of its objective to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity." *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 699 (3d Cir. 2018). Because RICO is predicated on criminal conduct, plaintiffs must plead and establish that *each defendant* intended to engage in the conduct with actual knowledge of the illegal activities. *See, e.g.*, *Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 387 (2d Cir. 2001). "The requirements of § 1962(c) must be established as to each individual defendant," and the focus of § 1962(c) is on the "individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise." *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027-28 (8th Cir. 2008). For the reasons below, Plaintiff fails adequately to plead a § 1962(c) claim against Siguler Guff.[8]

---

[8] While the Amended Complaint seeks to invoke the Federal RICO statute, 18 U.S.C. § 1965(b) to establish personal jurisdiction (*see Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 122-23 (3d Cir. 2020)), Siguler Guff does not waive and reserves its right to raise personal jurisdiction

### 1.    Plaintiff Fails to Properly Plead a "Pattern" of Racketeering.

Plaintiff's Amended Complaint fails to plead long-term organized conduct sufficient to establish a "pattern" of racketeering. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989).[9] The Amended Complaint alleges that "RICO Defendants['] Conduct Highlights a Continuing Pattern of Wrongdoing" apparently based on three emails between February and March 2018 from an entity called TransAct. (Am. Compl. ¶¶ 141-43). Plaintiff states it "is believed that TransAct, if there was such an organization, was acting under the instructions of the RICO Defendants." (*Id.* ¶ 141). The first email from TransAct in February 2018 allegedly informed Plaintiff that investigations were underway into Plaintiff's acquisition of REL and Fortis Ltd. (*Id.*). The second email from TransAct in March 2018 was addressed to the "Indian Agencies" and allegedly accused Plaintiff of wrongfully acquiring an interest in REL and Fortis Ltd. and stated that the acquisition "needed investigation." (*Id.* ¶ 142). The third email from TransAct in March 2018 was to "the Regulators" and "raised suspicion" regarding Plaintiff's acquisition of REL and Fortis and alleged the "underlying transaction(s) to be questionable." (*Id.* ¶ 143). Incredibly, based on these three emails that spanned less than a one-month period in 2018 from an unknown entity that Plaintiff "believe[s]" was acting on behalf of the RICO Defendants, Plaintiff asserts that it has established a "continuing pattern of wrongdoing." (*Id.* ¶¶ 141-144). However, RICO is not violated by a short-term episode of "racketeering." There must be a

---

arguments concerning non-RICO claims should the RICO claims against Siguler Guff be dismissed.

[9] The Amended Complaint lists the following alleged predicate acts: (1) extortion in violation of the Hobbs Act, 18 U.S.C. § 1951; (2) multiple instances of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343; (3) money laundering in violation of 18 U.S.C. § 1956; (4) abuse of process and obstruction of justice in violation of 18 U.S.C. § 1503; (5) fraud in violation of 18 U.S.C. §§ 1341, 1344; (6) securities fraud; (7) violation of the Exchange Act and 18 U.S.C. §1512; and (8) trademark infringement under Lanham Act and violation of 18 U.S.C. § 1114. (Am. Compl. ¶¶ 177-216).

"pattern" of racketeering activity—meaning long-term, organized conduct. *See H.J. Inc.*, 492 U.S. at 240 ("RICO's legislative history tells us . . . that the relatedness of racketeering activities is not alone enough to satisfy § 1962's pattern element. To establish a RICO pattern, it must also be shown that the predicate themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity."). Further, "it is the 'person' charged with the racketeering offense—not the entire enterprise—who must engage in the 'pattern of racketeering activity.'" *Desmond v. Siegel*, No. CIV. 10-5562 DRD, 2012 WL 3228681, at *9 (D.N.J. Aug. 6, 2012).

"[T]o prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates . . . amount to or pose a threat of continued criminal activity." *Yucaipa Am. All. Fund I, LP v. Ehrlich*, 716 F. App'x 73, 78 (3d Cir. 2017). As explained by the Third Circuit, "continuity" can either refer to a period of repeated conduct in the past that has now ended ("closed-ended continuity") or past conduct that by its nature projects into the future with a threat of repetition ("open-ended continuity"). *Id.* This continuity analysis is a fact-specific one, but the Supreme Court has made clear that predicate acts extending over only a few weeks or months and threatening no future criminal activity do not satisfy this requirement: the series of related predicates must extend "over a substantial period of time." *Germinaro v. Fid. Nat'l Title Ins. Co.*, 737 F. App'x 96, 103 (3d Cir. 2018).

The Third Circuit has held "that predicate acts spanning less than twelve months fail as a matter of law to establish closed-ended continuity." *Id.*; *see Tabas v. Tabas*, 47 F.3d 1280, 1293 (3d Cir. 1995) ("[T]his court has faced the question of continued racketeering activity in several cases, each time finding that conduct lasting no more than twelve months did not meet the standard for closed-ended continuity."); *United States v. Pelullo*, 964 F.2d 193, 209 (3d Cir. 1992) (same).

- 21 -

Here, the crux of Plaintiff's Amended Complaint is that numerous Defendants acted in concert to thwart Plaintiff and its Predecessors' purported benefit of certain contracts. (*See* Am. Compl. ¶ 1). Plaintiff's allegations are essentially contract claims camouflaged as RICO claims. RICO is not intended to provide relief for mere contract claims. Notably, the Amended Complaint does not identify *any* actual fraud perpetrated by Siguler Guff, much less a "pattern" of fraud. Plaintiff has failed to allege multiple predicate acts of racketeering activity by Siguler Guff occurring over a period of twelve months or more (closed-ended continuity) and has not identified any threat of future racketeering activity (open-ended continuity). *See Tellis v. U.S. Fid. & Guar. Co.*, 826 F.2d 477, 479–80 (7th Cir. 1986) (single victim with single injury does not establish RICO pattern). Plaintiff has not pleaded that Siguler Guff engaged in a "pattern of racketeering activity," and Plaintiff's RICO claims against Siguler Guff must be dismissed.

### 2. Plaintiff Has Not Adequately Pleaded the Existence of an "Enterprise".

Plaintiff has not alleged with specificity any facts showing Defendants had a common purpose or relationship. RICO defines an enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "An association-in-fact enterprise must have a "structure," meaning it must have (1) a common purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Mega Concrete, Inc. v. Smith*, No. CIV.A. 09-4234, 2011 WL 1103831, at *8 (E.D. Pa. Mar. 24, 2011). A plaintiff "must allege something more than the fact that individuals were all engaged in the same type of illicit conduct during the same time period" because otherwise "RICO statute's allowance for association-in-fact enterprises becomes an open gateway to the imposition of potentially massive costs on numerous defendants, regardless

of whether there is even a hint of the collaboration necessary to trigger liability." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010).

In *Mega Concrete*, the district court ruled that plaintiffs failed to establish an association-in-fact enterprise, reasoning that

> [T]he complaint paints a picture of a single set of common defendants perpetrating various independent frauds, *each with a different set of co-defendants who have no relationship to one another. The plaintiffs do not allege that any of the moving defendants associated with each other in any way, let alone for the common purpose of engaging in a course of conduct* . . . .

2011 WL 1103831, at *9 (emphasis added); *see also In re Ins. Brokerage*, 618 F.3d at 374 (the complaint merely alleged parallel conduct by the insurers, which was insufficient to establish a cohesive enterprise).

Here, the Amended Complaint fails properly to plead the existence of an enterprise. Plaintiff has not sufficiently articulated a "purpose" behind the so-called "enterprise," the relationships among the Defendants purportedly associated with the enterprise, the roles of each in the enterprise, or the longevity of any supposed association. Rather, the Amended Complaint vaguely alleges the existence of an "enterprise," "association," or "economic unit" among the Defendants without further explanation. (*E.g.*, Am. Compl. ¶¶ 61, 86, 97, 125, 169, 174). The Amended Complaint is devoid of details regarding how Siguler Guff functioned with the other Defendants to act as a cohesive group. For instance, Plaintiff does not point to any communications between Siguler Guff and other members of the alleged enterprise.

Plaintiff also fails adequately to allege the "longevity sufficient to permit these [purported] associates to pursue the enterprise's [supposed] purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). It is entirely unclear from the Amended Complaint when the alleged enterprise was formed and when any alleged misconduct by Siguler Guff occurred. Without providing any details, the Amended Complaint alleges that NYLIM and Siguler Guff are

- 23 -

"primarily responsible for managing the RICO Defendants' 'private army'", and that through

"seats on the boards" NYLIM and Siguler Guff "frequently caused money to be transferred out

of the United States" and permitted "siphoning of funds from these listed enterprises to be

laundered". (Am. Compl. ¶ 173(e)). Plaintiff also alleges that Siguler Guff and other Defendants

created a "united front" to "take over REL and to block [Plaintiff's] control over REL" and

Fortris—again without providing any further details regarding when this occurred. (*Id.* ¶ 108).

Plaintiff also alleges that Siguler Guff and other Defendants "permitted false testimony in

proceedings" regarding Plaintiff's contractual rights without identifying when the proceedings

occurred or how such testimony was "permitted." (*Id.* ¶ 219). The Amended Complaint also

alleges that Siguler Guff and other Defendants assisted the Singh Brothers in "encumbering their

assets to Religare" (*Id.* ¶ 122)—without providing any specifics.

### 3. Plaintiff Fails to Adequately Plead that Siguler Guff Conducted or Participated in the Enterprise.

The Amended Complaint fails to allege that Siguler Guff participated in the operation or

management of that enterprise. To be liable under § 1962(c), a defendant must "conduct or

participate, directly or indirectly, in the conduct of [the] enterprise's affairs through a pattern of

racketeering activity." 18 U.S.C. § 1962(c). Mere association with an enterprise does not violate

§ 1962(c). To "conduct or participate" in the conduct of an enterprise's affairs, a defendant must

have "participated in the operation or management of the enterprise itself." *Reves v. Ernst &

Young*, 507 U.S. 170, 183 (1993); *see Mega Concrete*, 2011 WL 1103831, at *10 ("Apart from

the complaint's vague and conclusory allegations of collaboration and conspiracy, there are no

facts to support a reasonable inference that any of the moving defendants engaged in activities

constituting 'participation' in the affairs of the enterprise, as opposed to simply their own

ostensibly legitimate business affairs.").

- 24 -

Although Plaintiff alleges in conclusory fashion that Siguler Guff "directed acts in furtherance of the scheme" (*see* Am. Compl. ¶ 67), Plaintiff does not provide any specific facts explaining what Siguler Guff supposedly did to further the alleged "scheme." Rather, where Siguler Guff is specifically identified in the Amended Complaint, as opposed to being lumped in with the entire group of "Defendants", Plaintiff comes up with only vague statements (*e.g.* Siguler Guff is "primarily responsible for managing the RICO Defendants' 'private army'", (*id.* ¶ 173(e)) and "used the mail or wires in furtherance of the RICO Defendants' scheme to defraud" (*id.* ¶ 219)). Plaintiff's Amended Complaint fails to plead that Siguler Guff conducted or participated in any alleged "enterprise."

### 4.   Plaintiff Fails to Meet the Heightened Standard for Fraud Claims.

Since Plaintiff asserts mail and wire fraud as a basis for a RICO violation, "the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity." *Desmond*, 2012 WL 3228681, at *10. "In order to satisfy Rule 9(b), plaintiffs must plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged." *Id.* "Plaintiffs may satisfy this requirement by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud . . . Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* "Put another way, the who, what, when and where details of the alleged fraud are required.'" *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003).

Here, the Amended Complaint pleads the predicate acts of fraud in vague terms that fail to meet the heightened pleading requirements of Rule 9(b). Plaintiff simply alleges that Siguler Guff and other Defendants engaged in false and misleading financial reporting from September

2013 through June 2018, without identifying any further details such as the specific misstatements, when precisely they were made, or who made them. (Am. Compl. ¶ 214). Further, Plaintiff alleges that Siguler Guff and other Defendants engaged in "stock manipulation tactics", without providing any further details regarding which stocks were manipulated, how they were manipulated, and when. (*Id.* ¶ 124). Plaintiff also alleges that Siguler Guff and other Defendants "used the mail or wires in furtherance of the RICO Defendants' scheme to defraud" without providing any specific details such as the dates of the alleged fraud or the types of fraudulent statements. (*Id.* ¶ 219).

Moreover, Plaintiff resorts to vague group pleading by making allegations against the "Defendants" as a group, without identifying with any specificity the particular conduct allegedly committed by each Defendant. Plaintiff alleges "Defendants took fraudulent step [sic] to cover their involvement in the scheme by filing sham lawsuits against the Singh Brothers, which drove the value of the companies down, reducing the share prices of REL and Fortis Ltd." but does not identify which Defendants or the particular conduct undertaken by each Defendant. (*See id.* ¶ 163). Plaintiff alleges that "Defendants," without specifying which ones, "congregated, conspired and/or otherwise collaborated to change the Board of both REL and Fortis Ltd. and have the criminal promoters, the Singh Brothers step down." (*Id.* ¶ 165 n.27). *See, e.g.*, *Cooney v. BAC Home Loans Servicing, LP*, No. CIV. 10-4066 JBS/JS, 2011 WL 2517045, at *2 (D.N.J. June 22, 2011) ("A complaint must allege, in more than legal boilerplate, those facts about the conduct of each defendant giving rise to liability."); *see also Falat v. Cty. of Hunterdon*, Civil Action No. 12–6804 (SRC), 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) (Plaintiff "cannot merely state that 'Defendants did x,'" but rather, Plaintiff "must specifically allege which Defendants engaged in what wrongful conduct."). Plaintiff's group pleading of its fraud

allegations, as opposed to any specific alleged fraudulent conduct by Siguler Guff, fails to meet the heightened pleading standards of Rule 9 and must be dismissed on that basis.

**D.    Plaintiff Fails to State a § 1962(d) Claim for RICO Conspiracy Against Siguler Guff.**

If there is no underlying RICO claim, then there cannot be a RICO conspiracy claim. A § 1962(d) claim for conspiracy to violate RICO "must be dismissed if the complaint does not adequately allege 'an endeavor which, if completed, would satisfy all the elements of a substantive RICO offense.'" *In re Ins. Brokerage*, 618 F.3d at 373 (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)). To state a claim under § 1962(d), the plaintiff must allege the existence of an agreement to participate in an endeavor which, if completed, would constitute a violation of the RICO statute. *Id.* Here, for the reasons explained above, the Amended Complaint has failed to state an underlying RICO violation against Siguler Guff. In the absence of a RICO violation, Siguler Guff cannot have conspired to commit a RICO violation under § 1962(d).

Similarly, Plaintiff fails to plead facts to support a RICO conspiracy claim, namely that Defendants formed an agreement to commit a fraud. Plaintiff's group pleading of "Defendants" does not suffice to establish any real relationships among the Defendants or that "Defendants" agreed to anything, much less that Siguler Guff agreed to commit mail and wire fraud.

**E.    RICO Does Not Apply to the Extraterritorial Conduct Alleged in the Amended Complaint.**

RICO does not apply to the extraterritorial conduct alleged here. The Supreme Court considered RICO's application to extraterritorial claims and cautioned against the risks of "international friction" associated with allowing foreign entities to "bypass" potentially "less generous remedial schemes" available in their home jurisdictions and pursue treble damages for injuries suffered abroad through civil RICO actions in the United States. *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 347-48 (2016). Here, Plaintiff has not alleged a domestic injury.

In *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 707-08 (3d Cir. 2018), the Third Circuit dismissed a RICO case based on the finding that plaintiff's injury occurred abroad, not in the United States. *See also Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 348 (S.D.N.Y. 2019) (relying on *RJR* and dismissing RICO claims because "the Trust's injury was suffered in Liechtenstein" not in the United States).

Here, most of the Defendants are based in India and appear to have little contact with the United States, the alleged misconduct appears to have occurred almost entirely in India, the contracts at issue appear to be under Indian law, and despite Plaintiff's assertion otherwise, it has not alleged facts that make it plausible that Plaintiff suffered an injury in the United States. Plaintiff has failed to provide any further details about its alleged injury apart from the vague assertion that Plaintiff (a Wyoming Trust) "has been injured in its business and property in that it suffered business losses and losses of intangible assets" due to the RICO violations. (Am. Compl. ¶¶ 225-26, 234); indeed, because the entities from which Plaintiff allegedly acquired its rights are all foreign, such injuries are necessarily non-domestic.

### F.     The Amended Complaint's Alleged Common Law Claims Fail to State a Claim Against Siguler Guff.

Not one of Plaintiff's common law claims states a claim against Siguler Guff.

*First,* as explained *supra* at Section IV.C.4, Plaintiff does not satisfy the heightened pleading standard of Rule 9(b) regarding allegations of fraud and therefore the claim must fail.

*Second*, Plaintiff does not properly plead the elements of tortious interference with an existing contract, which requires: "(1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference." *Fid. Eatontown, LLC v. Excellency Enter., LLC*, No. 3:16-CV-3899-BRM-LHG, 2017 WL 2691417, at *6 (D.N.J. June

22, 2017). "General knowledge of a business relationship is not sufficient; the defendant must have specific knowledge of the contract right upon which his actions infringe.'" *Veverka v. Royal Caribbean Cruises, Ltd.*, No. CIV.A. 12-3070 ES MA, 2015 WL 1270139, at *11 (D.N.J. Mar. 18, 2015), *aff'd*, 649 F. App'x 162 (3d Cir. 2016). Nowhere does Plaintiff suggest that Siguler Guff was aware of any purported "valid and enforceable contracts" involving Plaintiff, let alone explain the supposedly "wrongful acts" purportedly performed that interfered with any expectations allegedly held by Plaintiff. (Am. Compl. ¶¶ 244-249).

*Third*, Plaintiff asserts a claim for "trespass to chattels" alleging that the "RICO Defendants" somehow interfered with Plaintiff's "resources and funds." (*Id.* ¶ 251). That is not a claim for trespass to chattels. *See, e.g., Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 312 (D.N.J. 2009) ("A cognizable claim for trespass occurs when personal property, in the actual use of the owner, is injured or taken by a trespasser, so that the owner is deprived of the use of it."). Plaintiff has not alleged that Siguler Guff interfered with any personal property in such a way as to deprive Plaintiff of the use of it. The claim should be dismissed.

*Fourth*, the claims for unjust enrichment and breach of covenant of good faith and fair dealing should also be dismissed. No unjust enrichment claim may proceed absent a showing of a benefit—indeed, "the basis of liability [for an unjust enrichment claim] springs from the benefit conferred." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 240 (3d Cir. 2020). There is no allegation that Plaintiff has conferred any benefit on any defendant, Siguler Guff or otherwise. (See Am. Compl. ¶¶ 256-59). Similarly, because there is no allegation of any contract with Siguler Guff, the claim for breach of covenant of good faith and fair dealing must be dismissed. *See Noye v. Hoffmann–La Roche, Inc.*, 570 A.2d 12 (N.J. Super. Ct. App. Div. 1990) ("[i]n the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing.").

- 29 -

*Fifth*, the civil conspiracy claim is based on virtually identical allegations as the RICO conspiracy claims and fail for the reasons stated above, *supra* Section IV.D.

*Sixth*, Plaintiff seems to seek an anti-suit injunction by asking the Court to declare that any proceedings initiated by any of the defendants in any forum are "unenforceable and non-recognizable" under United States law to relieve Plaintiff "from the expensive and damaging uncertainty surrounding the pending proceedings." (See Am. Compl. ¶¶ 271-75). Out of a "serious concern for comity," the Third Circuit considers anti-suit injunctions with a restricted approach. *Gen. Elec. Co. v. DeutzAg*, 270 F.3d 144, 161 (3d Cir. 2001). Plaintiff has not provided any facts to support the requested declaratory judgment or extraordinary injunctive relief it seeks.

## CONCLUSION

For the foregoing reasons, the Court should grant Siguler Guff's motion to dismiss the Amended Complaint with prejudice and award such further relief as the Court deems just and proper.

Dated: January 28, 2022
   New York, New York

        Respectfully submitted,

        DEWEY PEGNO & KRAMARSKY LLP

        By: _____
        Thomas E.L. Dewey, Esq. (*PHV to be submitted*)
        Jenifer L. Salzberg, Esq.
        777 Third Avenue, 37th Floor
        New York, NY 10017
        Tel.: (212) 943-9000
        Fax: (212) 943-4325

        *Attorneys for Defendant Siguler Guff &*
        *Company, LP*

- 30 -