# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EMQORE ENVESECURE PRIVATE CAPITAL TRUST,**<br><br>    Plaintiff,<br><br>    v.<br><br>**BHAVDEEP SINGH,** *et al.*,<br><br>    Defendants. | Civ. No. 20–07324 (KM) (JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the motion (DE 94) of Balaji Great Lotus Glory ("BGLG") to intervene as plaintiff in this action pursuant to Federal Rule of Civil Procedure 24.[1] *See* Fed. R. Civ. P. 24(a)(2) (intervention as of right); Fed. R. Civ. P. 24(b) (permissive intervention). The plaintiff, Emqore Envesecure Private Capital Trust ("Emqore"), does not oppose BGLG's intervention. Defendants New York Life Investment Management, LLC ("NYLIM"), Bhavdeep Singh, Siguler Guff & Company, LP ("Siguler Guff"), Lakshmi Vilas Bank ("Lakshmi Vilas"), and Ares SSG Capital Management (Hong Kong) Ltd. (for purposes of this motion, the "Defendants") jointly oppose BGLG's motion.

For the reasons stated herein, I will **DENY** BGLG's motion to intervene.[2]

---

[1] The Amended Complaint names 28 defendants and 21 "Non-Party Defendants."

[2] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned though the Electronic Court Filing system, unless otherwise indicated:

"DE __" refers to the docket entries in this case.

"Am. Compl." = Amended Complaint (DE 102)

I. **BACKGROUND**

Emqore initiated this action by filing the Initial Complaint on June 16, 2020. (DE 1.) On September 18, 2020, NYLIM moved to dismiss the Initial Complaint. (DE 25.) Siguler Guff and Bhavdeep Singh moved to dismiss the Initial Complaint on October 19, 2020. (DE 33, 34.) Finally, on September 13, 2021, Lakshmi Vilas moved to dismiss the Initial Complaint. (DE 80.)

Prior to Lakshmi Vilas filing their motion to dismiss, Emqore filed a motion for leave to amend the Initial Complaint on May 25, 2021. (DE 57). Magistrate Judge Clark granted Emqore's motion to amend on November 30, 2021, thus mooting the initial motions to dismiss filed by the Defendants. (DE 99.) On December 3, 2021, Emqore filed the Amended Complaint. (DE 102.)

The Amended Complaint alleges that the defendants "conspired to engage in a pattern of racketeering activity, hav[ing] each committed numerous criminal acts as part of [a] scheme to defraud and extort the Plaintiff," in a fraud perpetuated by Malvinder and Shivinder Singh (the "Singh Brothers"). (Am. Compl. at ¶6-7.) Because of this alleged scheme, Emqore and various assignors under an assignment deed were purportedly deprived of the benefits of certain contracts that Emqore's predecessors executed with various Indian companies. (Am. Compl. at ¶¶ 97, 121, 161.) The Amended Complaint also alleges that the defendants attempted to "cover-up" their complicity in the Singh Brothers' fraud by "concot[ing] an illegal fraudulent scheme of their own to conceal their wrongdoing, shirk their responsibility and criminally deprive creditors their rightful dues." (Am. Compl. at ¶160.)

The Amended Complaint asserts the following causes of action: (1) Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1962(c);[3] (2) conspiracy to violate RICO, 18 U.S.C. § 1962(d); (3) common-law

---

[3] The Amended Complaint describes the "enterprise" as a group of persons associated for the common purpose of "namely, through a multi-faceted campaign of lies, fraud, obstruction of justice, threats and corruption," coercing Emqore into relinquishing claims against the Defendants. Am. Compl. at ¶173. Further, the Amended Complaint describes extortion, wire, mail, and bankruptcy fraud, money

fraud; (4) tortious interference with contract; (5) trespass to chattels; (6) unjust enrichment; (7) civil conspiracy; and (8) breach of the implied covenant of good faith and fair dealing. Emqore seeks damages, along with declaratory and injunctive relief. On January 28, 2022, Defendants IHH Healthcare Berhad, Khazanah Nasional Berhad, NYLIM, Bhavdeep Singh, and Siguler Guff moved to dismiss the Amended Complaint. (DE 115, 116, 118, 121.) Emqore filed their opposition brief on March 7, 2022. (DE 130.) Reply briefs were filed on April 5, 2022. (DE 135, 136, 137, 138, 139.)

On November 5, 2021, BGLG filed the pending motion to intervene. BGLG contends that intervention is necessary and appropriate for the following reasons:

- BGLG has an actual interest as an assigned beneficiary of funds Emqore may or will receive as a result of this Court's judgment;
- This action, the India Arbitration,[4] and related labor disputes all have common questions of law and involve the "same questioned funds and activity in dispute";

---

laundering, abuse of process and obstruction, fraud and securities fraud as the "racketeering activity." Am. Compl. at ¶¶101, 176-196.

[4] BGLG's motion to intervene states that, in June 2021, BGLG commenced arbitration, in India, against Emqore, Emqore's special purpose vehicles and/or variable interest entities (the "Transaction Entities"), and entities to which Emqore acquired rights to (the "Assignees"), "in order to ensure [BGLG's] rights were protected." DE 94-4 at 3-4, 6.

Specifically, these claimed rights relate to a September 26, 2020 settlement BGLG reached with Emqore, the Transaction Entities, and the Assignees, which provided in part that: (1) BGLG would be given a share of the proceeds of various litigations pursued by Emqore, the Transaction Entities, or the Assignees; (2) BGLG would be given absolute right over certain causes of action which were not being pursued by Emqore, the Transaction Entities, or the Assignees; (3) all parties would work toward maximizing recoveries; (4) Emqore, the Transaction Entities, or the Assignees would pay the costs of recovery or litigation for BGLG; and (5) all cases filed by parties affected by Emqore entering into contractual agreements to acquire or make substantial investments in Religare Enterprises Limited and Fortis Healthcare Limited, Emqore itself, or the Assignees "would either be withdrawn or held in abeyance with no coercive action being taken." DE 94-4 at 4, 6.

3

- "[BGLG] is not appropriately represented in this matter and as such, the funds to which [BGLG] rightfully claim assignment are at stake";
- And any determinations or rulings by this Court "will likely affect the outcome of the India Arbitration as well as ongoing labor disputes." (DE 94-1 at 2.)

The Court addresses BGLG's motion to intervene below.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 24 governs intervention by nonparties. A party may intervene as of right if it "(1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). A private party may be given permission by the court to intervene if it "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24 (b).

## III. DISCUSSION

### A. Rule 24(a) Intervention

The Third Circuit has established that "a litigant seeking intervention as of right under Rule 24(a)(2) must establish 1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties do not adequately represent the prospective intervenor's interests." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005) (citing *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998)). "Each of these requirements must be met to intervene as of right." *Id.* (quoting *Mountain Top Condo. Ass'n v. Dave Stabber Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995)).

BGLG has established that their motion is timely within the meaning of Rule 24(a)(2). To determine whether a motion to intervene is timely, courts consider the following factors: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top*, 72 F.3d at 369. In making this determination, courts are mindful that "'[s]ince in situations in which intervention is of right the would-be intervenor may be seriously harmed if he is not permitted to intervene, courts should be reluctant to dismiss a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive.'" *Id.* (quoting 7C Wright, Miller & Kane, *Federal Practice & Procedure* § 1916, at 424 (1986)). Courts also recognize that "[t]he mere passage of time … does not render an application untimely." *Mountain Top*, 72 F.3d at 369 (citations omitted). Ultimately, the delay in seeking to intervene is "measured from the time the proposed intervenor knows or should have known of the alleged risks to his or her rights or the purported representative's shortcomings." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 950 (3d Cir. 2012).

In arguing that BGLG's motion is untimely, the Defendants primarily contend that granting the motion after various defendants moved to dismiss in October 2020 "would prejudice Defendants by further delaying this action and requiring that [Defendants] respond to yet another meritless pleading." (DE 97 at 4.)[5] Moreover, Defendants assert that BGLG could have filed its motion earlier given that it "obtained an interest in the proceeds of this action in September 2020," and has failed to "explain why it could have come forward" earlier. (DE 97 at 4.)

---

[5] For clarity, the Defendants refer to the motions to dismiss filed with respect to the *Initial Complaint* and not the Amended Complaint filed on December 3, 2021. The Court notes that Judge Clark granted Emqore's motion to amend *after* the Defendants filed their oppositions to BGLG's motion to intervene—with the implication being that the referenced motions to dismiss were still pending when the Defendants opposed BGLG's current motion.

On one hand, the Court acknowledges the Defendants' concerns. Per the declaration of Ravi Pratap Singh, attached to BGLG's motion, BGLG was unsuccessful in its attempts to hold "meaningful discussions" with Emqore from January 1, 2021 through June 30, 2021.[6] (DE 94-4 at 5.) Despite this, and the fact that BGLG was already assigned an interest in Emqore's recovery in September 2020, BGLG still waited until November 5, 2021 to apply for intervention in this action.

Nevertheless, the Court recognizes that Emqore was ultimately granted leave to file the Amended Complaint, thereby mooting the initial motions to dismiss filed by the Defendants. (*See* DE 109 at 4.) Indeed, BGLG filed its motion to intervene almost a month before Emqore filed the Amended Complaint. Ultimately, the Court cannot say that this action has substantially progressed to a stage necessitating a finding that BGLG's motion is untimely; the Court has not ruled on any dispositive motions and no discovery schedule has been set. This case is still generally in the initial stages and accordingly, the Court finds that the first prong of Rule 24(a)(2) has been satisfied.

The Court finds, however, that BGLG has not demonstrated that it has a "sufficient interest" in the pending litigation. While the Third Circuit has stated that there is "no precise and authoritative definition of … interest," generally the "mere economic interest in the outcome of litigation is insufficient to support a motion to intervene." *In re Stone & Webster, Inc.*, 335 F. App'x 202, 204 (3d Cir. 2009); *see also Treesdale*, 419 F.3d at 221(citations omitted); *U.S. v. Alcan Alum., Inc.*, 25 F.3d 1174, 1185 (3d Cir. 1994) ("Some courts have stated that a purely economic interest is insufficient to support a motion to intervene.") However, a proposed intervenor's "interest in a specific fund is sufficient to entitle intervention in a case affecting that fund." *Mountain Top*, 72 F.3d at 366.

---

[6]   The same declaration states that between April 2021 and May 2021, BGLG "made numerous requests to Emqore to approve certain strategies." DE 94-4 at 6.

6

To determine whether the proposed intervenor has an identifiable interest in a specific fund, as opposed to a more general, purely economic interest, courts analyze whether the proposed intervenor "seeks to recover from the general assets of a party or from *a discrete, limited fund* held by that party, such as a trust fund or an escrow account." *Westra Constr., Inc. v. United States Fid. & Guar. Co.*, 546 F. Supp. 2d 194, 201 (M.D. Pa. 2008) (citing *Treesdale*, 419 F.3d at 222); *see also Sullivan v. Borough of Atl. Highlands*, No. CV1919510MASZNQ, 2021 WL 915210, at *2 (D.N.J. Mar. 10, 2021). If the at-issue assets are held in a limited and discrete fund, a "specific fund" exists in which a proposed intervenor possesses a significantly protectable interest. *See Westra Constr.*, 546 F. Supp at 201 (citing *Mountain Top*, 72 F.3d at 366.) If these assets, however, "have not been *set aside* but remain commingled with the party's other property, no 'specific fund' exists," and the interest is deemed to be "purely economic and … not significantly protectable." *Westra Constr.*, 546 F. Supp at 201 (citing *Treesdale*, 419 F.3d at 221.)

For example, in *Sullivan*, the proposed intervenor and plaintiff were the sole members of Thomas Paine House, LLC ("TPH"), which owned a property known as the Thomas Paine House. 2021 WL 915210 at *1. Pursuant to the terms of TPH's Operating Agreement, any distributions made to TPH's members were to be paid out "(i) first to [the proposed intervenor] until he shall have received aggregate distributions totaling $1,000,000, and (ii) thereafter to all Members in accordance with their respective percentage interests, or as otherwise agreed by the Members in writing." *Sullivan*, 2021 WL 915210 at *2. Consequently, when the plaintiff brought an action under Sections 1983 and 1988 against the borough of Atlantic Highlands, for "unconstitutionally frustrat[ing] his attempts to use the Thomas Paine House," the proposed intervenor applied for intervention to "protect his own derivative [distribution] rights" under the Operating Agreement. *Sullivan*, 2021 WL 915210 at *1.

In finding that there was no specific fund under TPH's Operating Agreement, Magistrate Judge (now District Judge) Quraishi highlighted that (1)

7

the purported interest did "not yet exist"; (2) the interest was contingent on TPH's success in litigation against Atlantic Highlands; and (3) even if the proposed intervenor sought to enforce his distribution rights under the Operating Agreement, there were as yet no funds to "distribute." *Sullivan*, 2021 WL 915210 at *2. Thus, the purported interest was "too remote and speculative to support intervention as of right." *Id.*

By contrast, in the context of insurance litigation, courts routinely allow the principal of a surety bond to intervene in an action between the surety and another party over the principal's breach of contract.[7] Court have reasoned that a surety bond qualifies as a specific fund because if judgment is issued against the surety, the surety "will likely seek indemnification [from the principal] … under the terms of [that] surety agreement." *United States v. W. Sur. Co.*, No. CV 14-7871 (FLW), 2016 WL 1030392, at *2 (D.N.J. Mar. 15, 2016); *see also Clean Earth, Inc. v. Endurance Am. Ins.*, No. CV 15-6111(FLW), 2016 WL 5422063, at *4 (D.N.J. Sept. 28, 2016) ("Indeed, [proposed intervenor, as the principal on the payment bond, has a clear legal and legitimate interest in this litigation because if a judgment is entered against the surety, Endurance is likely to seek indemnification from [proposed intervenor], pursuant to their agreement."); *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 412 (W.D. Pa. 2006) ("[T]he bond that the Sureties issued represents the kind of specific fund that can ground a legitimate interest for Rule 24(a)(2) purposes.") (citation omitted).

In its motion to intervene, BGLG states that it "unknowingly entered into various employment agreements in India to support [D]efendants' defrauded and illusory corporate acquisitions," which entitled prospective employees to "sign-on bonuses, equity participation, and performance share bonuses." (DE 94-1 at 6.) Because of Defendants' allegedly fraudulent actions, BGLG contends that these "corporate acquisition agreements" failed, resulting in BGLG filing numerous "actions against Emqore" and their predecessors-in-

---

[7] With the surety bond being issued in connection with the at-issue contract.

8

interest. (DE 94-1 at 6.) BGLG submits that after months of negotiations with Emqore, the parties reached an agreement, by which "[BGLG] and a group of its members" were granted an "interest in the outcome of this litigation," while Emqore "seeks the equitable resolution of the defendants' underlying fraudulent activity." (DE 94-1 at 6; *see also* DE 109 at 7 (Emqore "has assigned BGLG certain rights to recovery under these claims, so it is incumbent upon BGLG to intervene and protect its interest."))

BGLG's asserted interest falls somewhere in between the contractual distribution right found to be "purely economic" in *Sullivan* and the surety bond deemed to be a specific fund (and thus a sufficient interest) for purposes of Rule 24(a)(2) intervention. BGLG, unlike the proposed intervenors in *Sullivan*, does not seek intervention based on an economic interest tangentially related to the action; the interest Emqore assigned to BGLG (via the settlement agreement between the parties) is related to Emqore's success in this litigation. Still, I find that it falls on the *Sullivan* side of the line. BGLG's contingent economic interest in Emqore's recovery does not satisfy the Third Circuit's requirement that an intervenor's interest "be direct, and not a 'mere economic interest in the outcome of litigation.'" *Martucci v. Procter & Gamble*, No. CV 15-4434 (JLL), 2015 WL 5853985, at *2 (D.N.J. Oct. 5, 2015) (citing *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005) (citations omitted).

While BGLG's interest is related to this litigation, that interest is now only a generalized right to participate in Emqore's hypothetical and contingent recovery, whatever that may be. No funds have actually been set aside or held in a discrete fund for BGLG's benefit. Moreover, unlike the surety bond, by under which the surety is entitled to indemnification for a definite amount, BGLG cannot be said to have a right to a fixed amount of money under the assigned interest. Therefore, the Court finds BGLG's interest to be "too remote

9

and speculative to support intervention as of right." *Sullivan*, 2021 WL 915210 at *2.[8]

Even assuming that BGLG's contingent interest is sufficient for purposes of Rule 24(a)(2), intervention as of right would still be denied because BGLG has not demonstrated that Emqore is not adequately representing its interests. "The burden of establishing inadequacy of representation by existing parties varies with each case." *Kleissler*, 157 F.3d at 972. That burden, however, always rests with "the applicant for intervention" who must "show that [its] interests are not adequately represented by the existing parties." *Brody v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992) (quoting *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982) (internal quotation marks omitted)). The Supreme Court has stated that: "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Tribovich United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972).

Still, where a proposed intervenor and the current party have the same ultimate objective, "intervention as of right may not be appropriate as a presumption arises that the [proposed intervenor's] interests are adequately represented." *Clean Earth*, 2016 WL 5422063 at *5 (citing *In re Cmty. Bank of N. Va. Guar. Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F.3d

---

[8] In their reply brief, BGLG states for the first time that it "has its own legal interest in [the] case, as well as the economic interest referred to by defendants." DE 109 at 5. Specifically, BGLG highlights that their "[c]laims for damages … against those alleged to have perpetrated the fraud identified in the [Amended Complaint]," is a distinct interest from the assigned interest in Emqore's recovery raised in the motion to intervene. DE 109 at 5. Of course, BGLG remains free to pursue such claims on its own.

First, the Court declines to consider an argument raised for the first time in a reply brief. *Washington v. Dora*, 717 F.App'x 151, 155 (3d Cir. 2017). While I have found that the motion to intervene was not untimely, this is pushing it too far. Second, even if the Court were to consider this argument on the merits, it would still be futile because BGLG has failed to establish that Emqore is not adequately representing its interests. *See infra.*

10

277, 315 (3d Cir. 2005). Here, BGLG asserts that its interests diverge sufficiently from Emqore's because "Emqore has displayed inherent limitations and, may lack the financial wherewithal to meet its obligations." (DE 94-1 at 7.) Therefore, BGLG contends that it "must be permitted to monitor, intercede, and provide this Court with the necessary context to enforce its rights and present the public interests at risk." (DE 94-1 at 7.)

It would appear, however, that Emqore and BGLG have identical interests in this action, almost by definition. BGLG's only concrete interest here, setting aside its broader public policy goals, seems to be that it has been "assigned … certain rights to recovery" that entitle it to funds, or some part of them, that Emqore is currently pursuing in this action. (DE 94-1 at 7.) BGLG has failed to provide the requisite showing that Emqore is pursuing litigation for reasons other than maximizing its potential recovery, which may ultimately redound to BGLG's benefit.

BGLG's contention that its interests in this litigation diverge from those of Emqore is speculative. BGLG states that Emqore "has displayed inherent limitations" (DE 94-1 at 7), yet fails to describe what these limitations are and how they allegedly threaten Emqore's chances of prevailing. Theoretical disagreements as to litigation strategy (which have not been articulated with any specificity) do not suffice; that "[a proposed intervenor] would have been less prone to agree to the facts and would have taken a different view of applicable law *does not* mean that the [current parties] did not adequately represent their interests in the litigation." *Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3d Cir. 1976). And while BGLG asserts that Emqore "may lack the financial wherewithal to meet its obligations," it fails to demonstrate that Emqore's financial condition is affecting its ability to litigate this case.

Accordingly, because BGLG's interests in the present action are indirect and adequately protected, BGLG may not intervene as of right pursuant to Rule 24(a)(2).

11

## B. Rule 24(b) Intervention

In the alternative, BGLG cites the permissive intervention provision, Fed. R. Civ. P. 24(b), which grants the court discretion to allow intervention "[o]n timely motion" where the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Ultimately, the decision of whether to grant or deny permissive intervention lies within the Court's discretion. *Brody By & Through Sugzdinis v. Spang v. Spang*, 957 F.2d 1108, 1124 (3d Cir. 1992). Courts also "consider various factors, including whether the proposed intervenors will add anything to the litigation and whether the proposed intervenors' interests are already represented in the litigation." *Worthington v. Bayer Healthcare LLC*, No. CIV.A. 11-2793 ES, 2011 WL 6303999, at *8 (D.N.J. Dec. 15, 2011) (citing *Hoots*, 672 at 1136). Finally, Courts also consider whether the proposed intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3).

BGLG stresses that (1) its motion is timely; and (2) "a common question of law exists between [BGLG's] claims, as Emqore's assignee, and the claims that Emqore is independently advancing." (DE 94-1 at 8.) Because I have already determined that BGLG's motion is timely, I will focus on the other factors. The alleged common question of law is "whether [D]efendants acted wrongfully and fraudulently by diverting funds and assets through essential shell companies and defrauding international organizations, banks, and trusts." (DE 94-1 at 8.) Further, BGLG notes that it is also "pursuing the same or similar claims in [a] parallel arbitration proceeding pending in India." (DE 94-1 at 8.)

Exercising its discretion, the Court finds that permissive intervention is not prudent in this case. Even assuming arguendo that the Court finds that BGLG shares common questions of law and fact with Emqore, the Court has already determined that BGLG's interests are aligned with those of Emqore and are adequately represented in this action. *See Worthington,* 2011 WL 6303999 at *9. Where the interests of the proposed intervenors are already represented

12

in the action, courts typically deny such applications as a discretionary matter. *Hoots*, 672 F.2d at 1136; *see also Acra Turf Club, LLC v. Zanzuccki*, 561 F. App'x 219, 222 (3d Cir. 2014); *Kaighn v. Democratic Nat'l Comm.*, No. CV 16-8107, 2016 WL 6542830, at *2 (D.N.J. Nov. 3, 2016); *Worthington*, 2011 WL 6303999 at *109. For what it is worth, BGLG also appears to have an adequate arbitration forum for its own claims in India. In short, permitting intervention would make this litigation more cumbersome, without any clear offsetting benefit.

Accordingly, the Court denies BGLG's motion for permissive intervention under Rule 24(b).

## IV. CONCLUSION

For the reasons set forth above, I will **DENY** BGLG's motion (DE 94) to intervene, pursuant to Fed. R. Civ. P. 24(a) & (b). An appropriate order follows.
Dated: April 14, 2022

/s/ Kevin McNulty

**Kevin McNulty**
**United States District Judge**