UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EMQORE ENVESECURE PRIVATE CAPITAL TRUST,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**BHAVDEEP SINGH,** *et al.*<br><br>    **Defendants.** | Civ. No. 20-07324 (KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Emqore Envesecure Private Capital Trust ("Emqore") brings the instant action against several Defendants alleging violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, along with common-law claims.[1] Through an assignment deed (the "Assignment Deed"), six foreign corporations— Loancore Servicing Solutions Private Limited, Loancore Limited, Walmark Health Private Limited, Walmark Holdings Limited, Stragala AG, and Emqore OU (together, the "Emqore Predecessors")[2]—assigned their right, title, and interest to bring

---

[1]   Certain citations to record are abbreviated as follows:

"DE" = Docket entry number in this case

"Compl." = Emqore's Complaint (DE 1)

"Am. Compl." = Emqore's Amended Complaint (DE 102)

"Opp." = Emqore's Memorandum in Opposition to Defendants' Motions to Dismiss Amended Complaint (DE 130)

[2]   Loancore Servicing Solutions Private Limited and Walmark Health Private Limited are incorporated under the laws of India. Loancore Limited and Walmark Holdings Limited are incorporated under the laws of Hong Kong. Stragala AG is incorporated under the laws of Germany and Emqore OU is incorporated under the laws of Estonia.

claims against the Defendants to Emqore, a trust settled under the laws of Wyoming.

Now before the Court are motions to dismiss the Amended Complaint filed by five of the named Defendants: (1) IHH Healthcare Berhad ("IHH"); (2) Khazanah Nasional Berhad ("Khazanah"); (3) New York Life Investment Management, LLC ("NYLIM"); (4) Bhavdeep Singh; and (5) Siguler Guff & Company, LP. Grounds asserted include lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), improper service of process pursuant to Fed. R. Civ. P. 12(b)(4)-(5), and the doctrines of *forum non conveniens* and international abstention.

The Court finds that this is an Indian case not properly brought in the District of New Jersey. Accordingly, I **GRANT** the Moving Defendants motion to dismiss on grounds of *forum non conveniens*.

I. **SUMMARY**

A. **Factual Allegations**

This action arises from the Emqore Predecessors' failed acquisition of Religare Enterprises, Ltd. ("REL"), an Indian financial services company, and Fortis Healthcare Limited ("Fortis Ltd."), a multinational chain of private hospitals headquartered in India. (Am. Compl. ¶¶ 12, 27; *see also* The Economic Times, https://economictimes.indiatimes.com/religare-enterprises-ltd/infocompanyhistory/companyid-20026.cms; Religare Enterprises History, Fortis, About Us, https://www.fortishealthcare.com/about-us.*)*

1. **Background Facts**

Emqore is a trust settled under Wyoming law, with a principal place of business located in Cheyenne, Wyoming. (Am. Compl. ¶ 5.) The Amended Complaint alleges that on January 22, 2020, through the Assignment Deed, Emqore Predecessors "assigned all right, title and interest in any and all claims against the [D]efendants … to [Emqore]." (*Id.*)

Emqore claims that Defendants Malvinder Mohan Singh and Shivinder Mohan Singh (together, the "Singh Brothers") inherited "one of India's largest pharmaceutical companies, Ranbaxy [Laboratories] Limited" ("Ranbaxy"). (*Id.* ¶ 7.) According to Emqore, Ranbaxy's subsidiary, Ranbaxy USA, which was headquartered in Princeton, New Jersey, was the primary selling agent for Ranbaxy and sold generic drugs to the United States market. (*Id.*) Under the direction of the Singh Brothers, Ranbaxy USA allegedly "falsified material data and records," which led to Daiichi Sankyo, a Japanese pharmaceutical company (not a party here), acquiring Ranbaxy for $4.6 billion in 2008—of which $2.4 billion went directly to the Singh Brothers. (*Id.* ¶¶ 7, 32, 103.) The Singh Brothers allegedly invested the proceeds from this sale in the funding and expansion of REL and Fortis. (*Id.* ¶¶ 12, 27, 103.)

On May 13, 2013, Ranbaxy USA pleaded guilty to felony charges concerning the manufacture and distribution of adulterated drugs made at two of Ranbaxy's manufacturing facilities in India.[3] Pursuant to this settlement, Ranbaxy paid a criminal fine and forfeiture of $150 million to settle civil claims under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and $350 million to settle related state-law claims for. (*Id.* ¶¶ 7, 103.) Daiichi Sankyo subsequently asserted fraud claims against the Singh Brothers, alleging that they deliberately concealed "crucial data with the intention of hiding … irregularities." (*Id.* ¶ 103.) Daiichi Sankyo obtained a $600 million arbitration award against the Singh Brothers and their entities (including entities holding shares in Fortis and REL) (the "Daiichi Sankyo Judgment"). Daiichi Sankyo then commenced proceedings in India to enforce the award. (*Id.* ¶¶ 103, 121; *see also id.* ¶¶ 89-91, 96.)

---

[3]  *Id.* ¶¶ 7, 103; *see also* Department of Justice, Generic Drug Manufacturer Ranbaxy Pleads Guilty and Agrees to Pay $500 Million to Resolve False Claims Allegations, cGMP Violations and False Statements to FDA, https://www.justice.gov/opa/pr/generic-drug-manufacturer-ranbaxy-pleads-guilty-and-agrees-pay-500-million-resolve-false.

Emqore alleges that in June 2017, Defendant IHH "signed an exclusivity agreement for the purchase of Fortis." (DE 102-1, Ex. C ¶ 26.) However, on June 28, 2017, IHH "pulled out of the deal" because of the Daiichi Sankyo Judgment and concerns about litigation which exposed REL to financial liability and resulted in "the Singh Brothers' shares in various business" being frozen. (*Id.* ¶ 27; *see also* Am. Compl. ¶ 107.)[4]

### 2. The Alleged RICO Scheme

The Amended Complaint alleges that the Singh Brothers successfully recruited Defendants "[International Finance Corporation ("IFC")], NYLIM, and Siguler to invest in REL and Fortis." (*Id.* ¶¶ 104, 106.) Because the Singh Brothers were "shut out from … funding sources" as a result of the Daiichi Sankyo Judgment and the resulting negative media coverage, the Singh Brothers, with the assistance of IFC, NYLIM, and Siguler, allegedly "used approximately 23 entities to encumber assets and take funds from … REL and Fortis … without declaring related party transactions." (*Id.* ¶ 122.) Emqore claims that these fraudulent transactions resulted in "inflated revenue and increased profits that enabled higher dividends" to be distributed to IFC, NYLIM, Siguler, and other Defendants. (*Id.* ¶ 123.)

From July 2017 through August 2017, the Singh Brothers "aggressively pursued" the Emqore Predecessors to invest in REL and Fortis. (*Id.* ¶¶ 99, 116.) The Emqore Predecessors purportedly entered into binding agreements "to control [Fortis and REL]," which are detailed in Exhibits A and B, attached to the Amended Complaint. (*Id.* ¶¶ 97, 97 n. 15, 116; *see also* DE 101-1.) The Singh Brothers, REL, and Fortis also allegedly offered the Emqore Predecessors substantial incentives for their investment, including "break-up fees" and "penalties" to be paid to the Emqore Predecessors in the event that the deal was terminated. (*Id.* ¶ 117; *see also id.* ¶ 108.)

---

[4] Emqore alleges that Defendant Khazanah was IHH's majority shareholder "and directed the actions of IHH." DE 102-1, Ex. C ¶ 26.

4

Upon performing due diligence, however, the Emqore Predecessors allegedly discovered "gross financial misconduct," "systemic fraud within REL and Fortis … [,] and a concerted effort by the … Defendants to dodge the Daiichi Sankyo judgment." (*See id.* ¶¶ 108, 117-120.) Therefore, in order "to adhere to all legal orders and injunctions by Daiichi Sankyo," the Emqore Predecessors structured the proposed REL and Fortis transactions so that (1) the Singh Brothers "fill[ed] the financial black holes in REL and Fortis" through required "asset infusions"; and (2) the transactions were conditioned "on the Singh Brothers[,] … IFC, NYLIM and Siguler, disgorging some of their profits." (*See id.* ¶¶ 118-120.)

Emqore alleges that Defendants subsequently plotted to "strip Emqore of its control rights [of REL and Fortis] pursuant to the binding agreements." (*Id.* ¶ 110, *see also id.* ¶¶ 108-109.) First, in order to conceal their involvement in the alleged fraud and reduce the share price of REL and Fortis, Defendants initiated sham litigations against the Singh Brothers. (*See id.* ¶ 163.) In June 2017, Defendants Bay Capital and Ares SSG commenced litigation against the Singh Brothers, accusing them, in part, of "degrading the value of REL and Fortis" and "'oppressing' minority shareholders." (*Id.* ¶ 130.) Similarly, in September 2017, Defendants NYLIM and Siguler sued the Singh Brothers on similar grounds. (*Id.* ¶ 131.) Emqore claims that REL's share price fell "by almost 90%" and Fortis's by "around 50%" because of this litigation, resulting in lenders "triggering a default and invoking [REL and Fortis's] collateral." (*Id.* ¶¶ 131, 134.)

Second, after acquiring a majority of REL and Fortis's shares, Defendants transferred control of (1) REL to Defendant Bay Capital and (2) Fortis to Defendant IHH, the latter of whom "previously walked away from Fortis on account of the Daiichi Sankyo Judgment." (*Id.* ¶ 111, *see also id.* ¶¶ 125-126.)[5] Defendants allegedly "leveraged [their] influence … to inform various

---

[5] Emqore alleges that Defendant Khazanah "played a critical role in luring back IHH." *Id.* ¶ 126.

parties … that [the Emqore Predecessors] could not discharge its obligations under the Agreements." (*Id.* ¶ 111). Likewise, to ensure the "fire sale" of REL and Fortis, Defendants fraudulently represented that they "had a better plan to maximize the value of REL and Fortis" compared to that of the Emqore Predecessors. (*Id.* ¶ 112.)

Third, after (1) deliberately cratering the value of REL and Fortis and (2) "replacing [the companies'] board members," Defendants "illegally reneged on the agreements with [the Emqore] Predecessors." (*Id.* ¶ 165.) Defendants allegedly "swindled" the Emqore Predecessors out of the binding agreements to control REL and Fortis solely because the Emqore Predecessors discovered that Defendants were implicated in the fraudulent conduct occurring at REL and Fortis. (*Id.* ¶ 166.) The Emqore Predecessors subsequently "explore[d] alternative ways to salvage [their] investments," after the Defendants reneged on these agreements. (*Id.* ¶ 113.) Nonetheless, in order to frustrate the Emqore Predecessors' efforts, Defendants allegedly abused "the judicial process," in part, by (1) "misrepresenting that members of Emqore were part of some conspiracy"; (2) "lying to courts that the [Defendants] … had legitimate reasons to wrestle control out of Emqore"; (3) "misrepresenting the involvement of [Defendants] … in the takeover of REL and Fortis"; and (4) "misrepresenting to the parties and the courts the reasons for terminating Emqore's bid. (*Id.* ¶¶ 113-114.)

Based on these allegations, Emqore asserts the following causes of action against Defendants: (1) violations of RICO, 18 U.S.C. § 1962(c) (Count 1); (2) conspiracy to violate RICO, 18 U.S.C. § 1962(d) (Count 2); (3) common-law fraud (Count 3); tortious interference with contract (Count 4); trespass to chattels (Count 5); (6) unjust enrichment (Count 6); (7) civil conspiracy (Count 7); and (8) breach of implied covenant of good faith and fair dealing (Count 8).

## B. Procedural Background

Emqore filed the initial complaint on June 16, 2020. (DE 1.) On July 2, 2020, Emqore filed a motion to serve foreign Defendants pursuant to Fed. R.

Civ. P. 4(f)(3) via email and Federal Express (DE 4-3), which this Court denied on July 9, 2020. (DE 8.)

On September 18, 2020, NYLIM filed a motion to dismiss the initial complaint. (DE 25-1.) Siguler and Bhavdeep Singh filed their motions to dismiss on October 19, 2020. (DE 33-1; DE 34-2.) On September 13, 2021, Lakshmi Vilas Bank filed its motion to dismiss. (DE 80-1.)

Meanwhile, on June 1, 2021, Emqore moved to amend the initial complaint. (DE 55.) On July 19, 2021, NYLIM, Bhavdeep Singh, and Siguler filed opposition briefs to Emqore's motion to amend. (DE 61; DE 62; DE 63.) Magistrate Judge James B. Clark granted Emqore's motion to amend on November 30, 2021. (DE 99.)

On December 3, 2021, Emqore filed the Amended Complaint. (DE 102.) IHH, Khazanah, NYLIM, Bhavdeep Singh, and Siguler moved to dismiss Emqore's Amended Complaint on January 28, 2022. (DE 115; DE 116; DE 118; DE 119; DE 121.) On March 7, 2022, Emqore filed its opposition brief to Defendants' motions to dismiss the Amended Complaint. (DE 130.) Reply briefs were filed on April 5, 2022. (DE 134; DE 135; DE 137; DE 138; DE 139.)

The motions to dismiss are thus fully briefed and ripe for decision.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but it must plead "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in

the Amended Complaint as true and draw reasonable inferences in Emqore's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

## III. DISCUSSION

Defendants move to dismiss the Amended Complaint under Rule 12(b)(6), for failure to state a claim and pursuant to the *forum non conveniens* and international abstention doctrines.[6] Because the Court agrees with the Defendants' arguments as to *forum non conveniens*, I dismiss the Amended Complaint on that basis, without reaching the merits.

"A federal district court has discretion to dismiss a case on the ground of *forum non conveniens* 'when an alternative forum has jurisdiction to hear [the] case, and … trial in the chosen forum would establish … oppressiveness and vexation to a defendant … out of all proportion to plaintiff's convenience, or … the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 433, 429 (2007) (citations omitted). The doctrine requires a decision "whether a case 'should be adjudicated elsewhere.'" *Meridian Consulting I Corp., Inc. v. Eurotec Can. Ltd.*, 2021 WL 689132 at *9 (D.N.J. Feb. 22, 2021) (quoting *Sinochem*, 549 U.S. at 432).

A district court employs a four-factor test to determine whether to dismiss on grounds of *forum non conveniens*. *Id.* Those factors are (1) the amount of deference to be afforded to a plaintiff's choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiff's claims are cognizable; (3) relevant private interest factors affecting the convenience of the litigants; and (4) relevant public interest factors

---

[6] IHH and Khazanah additionally move to dismiss the Amended Complaint under Rule 12(b)(2) for lack of personal jurisdiction. *See* DE 115-1 at 13-16; DE 116-1 at 23-26. Khazanah moves to dismiss the Amended Complaint for (1) lack of subject matter jurisdiction pursuant to the Foreign Sovereign Immunities Act ("FSIA") and Rule 12(b)(1); and (2) improper service of process under the FSIA and Rule 12(b)(4)-(5). DE 116-1 at 12-23.

affecting the convenience of the forum. *Id.* at 14 (citing *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017)). I turn to those factors now.

### A. Deference Afforded to Emqore's Choice of Forum

Under the doctrine of *forum non conveniens*, while "a plaintiff's choice of forum should rarely be disturbed," *id.* (quoting *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013)), different classes of plaintiffs may receive varying levels of deference. "[W]hen a domestic plaintiff sues in his or her home state, that choice receives great deference, and will not be displaced unless the remaining factors 'clearly favor[ ] an alternative forum.'" *Id.* at 14 (quoting *Kisano*, 737 F.3d at 875). When, however, "the plaintiff's choice is not its home forum … the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate in such cases [is] 'less reasonable.'" *Sinochem*, 549 U.S. at 430.

By contrast, "[w]hen the plaintiff is foreign … [his or her] choice [of a domestic forum] deserves less deference." *Windt v. Qwest Commc'n Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008). "[T]he reason for giving a foreign plaintiff's choice less deference is not xenophobia, but merely a reluctance to assume that the choice is a convenient one." *Lony v. E.I. Dupont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989). Courts are therefore "wary" of foreign plaintiffs' choice of a United States forum merely "because the law may be more favorable to their claims." *Kisano*, 737 F.3d at 873-74.

My inquiry does not end at determining whether Emqore itself is a "foreign" entity. The core purpose of the Court's *forum non conveniens* analysis "is to ensure that the trial is convenient." *Windt*, 529 F.3d at 190 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)). Courts do not "assign 'talismanic significance to the citizenship or residence of the parties,'" but instead ask whether it is "reasonable to assume the choice of forum is based on convenience." *Kisano*, 737 F.3d at 875 (quoting *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir. 2003)).

Foreign plaintiffs "may [therefore] bolster the amount of deference due their choice by making a strong showing of convenience." *Windt*, 529 F.3d at 190 (citing *Lony*, 886 F.2d at 634). Ultimately, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Kisano*, 737 F.3d at 876 (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001)).

Defendants submit various arguments as to why Emqore's choice of forum is not entitled to deference. First, Defendants highlight that Emqore is a trust created under Wyoming law, and thus not a New Jersey citizen. (*See* DE 115-1 at 34-35; DE 116-1 at 28; DE 119 at 18; DE 121-1 at 8.) Because Emqore lacks any connection to New Jersey, Defendants claim that it is "less reasonable" to assume that Emqore's choice of forum is motivated out of convenience. (*See* DE 121-1 at 8.)

Second, Defendants contend that the real parties in interest to this action are neither New Jersey nor United States residents. Defendants identify six foreign entities—(1) Loancore Servicing Solutions Private Limited (India), (2) Loancore Limited (Hong Kong), (3) Walmark Health Private Limited (India), (4) Walmark Holdings Limited, (5) Stratgala AG (Germany), and (6) Emqore OU (Estonia)—who assigned their rights, titles, and interest "in any and all claims against the [D]efendants" to Emqore, the named Plaintiff in this action. (*See* Am. Compl. ¶ 6; DE 55-5; DE 115-1 at 34-35; DE 116-1 at 28; DE 119 at 18; DE 121-1 at 8.) Thus Defendants assert that Emqore is not truly a domestic real party in interest, but merely a flag of convenience under which these entirely foreign parties seek to assert claims in a United States forum. (*See* DE 55-5; DE 115-1 at 34-35; DE 116-1 at 28; DE 119 at 18; DE 121-1 at 8.)

Third, Defendants argue that this case has no genuine connection to New Jersey. According to the Defendants, Emqore neither identifies any actionable conduct that occurred in New Jersey, nor identifies evidence or witnesses

located in this forum. (*See* DE 119 at 19.) Defendants also note that most of the Defendants are domiciled abroad, with only "2 out of 28 Defendants and … 1 out of 21 so-called 'Non-Party Defendants'," considered New Jersey residents. (*See id.*)

Emqore responds that because it is a trust created under Wyoming law and consequently a United States citizen, (1) Emqore is a domestic plaintiff for purposes of *forum non conveniens* and (2) Emqore's choice of forum is entitled to "great deference." (Opp. at 19.) Likewise, because the Singh Brothers purportedly funded "their initial investment in REL and Fortis" with cash derived from the illegal activities of Ranbaxy USA, which is headquartered in Princeton, New Jersey, the "genesis" of this case is in New Jersey. (*Id.* at 20.)

As an initial matter, Emqore is not a domestic plaintiff for purposes of the Court's *forum non conveniens* analysis. Although a Wyoming trust, Emqore has not provided any indication, whether in the Amended Complaint or otherwise, that it has a meaningful connection to New Jersey or indeed to the United States. *See Rustal Trading US, Inc. v. Makki*, 17 Fed. Appx. 331, 388 & n.6 (6th Cir. 2001). The Court notes that: (1) the "Settlor" of the trust, Madis Sonajalg, is a resident of Estonia (*see* DE 55-5 Ex. A at 4); (2) the original "corpus" of the trust estate is only $50.00 (*id.* 8); and (3) the Amended Complaint does not allege any conduct, transactions, or actions involving Emqore in the United States.

The Amended Complaint also fails to sufficiently allege that any of the actionable conduct occurred in New Jersey or the United States. *See Church v. Glencore PLC*, No. CV1811477SDWCLW, 2020 WL 4382280, at *4 (D.N.J. July 31, 2020) (according less deference to plaintiff's choice of forum because "the alleged conduct giving rise to [p]laintiff's claims purportedly occurred abroad.") As to the alleged RICO Scheme, Emqore merely alleges that the Defendants "directed acts in furtherance of the scheme in New Jersey," without identifying any such acts. (*See* Am. Compl. ¶¶ 57-60, 66-72.) To the extent Emqore believes that the initial capitalization of REL and Fortis with proceeds from

11

Ranbaxy's sale to Daiichi Sankyo establishes a domestic connection, the Amended Complaint does not allege *any* connection between nonparty Ranbaxy USA and the Defendants, nor to the purported RICO Scheme itself.

More specifically, it appears that most, if not all, of the alleged conduct occurred in India. For example, Emqore alleges that Defendants initiated sham lawsuits against the Singh Brothers, in order to (1) deflate the value of REL and Fortis and (2) conceal Defendants' involvement in the Singh Brothers alleged fraudulent conduct. (*See* Am. Compl. ¶ 163.) The litigation identified in the Amended Complaint, however, appears to have occurred in India (*See id.* ¶¶ 79-96, 112-114, 130-135.) Moreover, while Emqore asserts that the Singh Brothers directed transactions in order to "encumber assets and take funds from … [REL and Fortis]" *see id.* ¶¶ 122-124, 195-215), Emqore does not allege that any of transactions were negotiated or signed in the United States.

The Court therefore finds that Emqore, if not a sham entity, is in substance a foreign plaintiff, apparently formed for the sole purpose of suing in the U.S., and has failed to establish a "strong showing" of convenience in bringing this action in this District. Accordingly, Emqore's choice of forum is entitled to limited deference.

### B. Adequate Alternative Forum

An alternative forum is adequate if (1) all defendants are amenable to process there and (2) the claims are cognizable there. *Piper*, 454 U.S. 235, 254 n. 22 (1981); *Wilmot v. Marriot Hurghada Mgmt, Inc.*, 712 Fed. Appx. 200, 203 (3d Cir. 2017). As to the first element, if the Court is unconvinced by the defendant's showing of amenability in the proposed alternative forum, "it may choose, in its discretion to safeguard [plaintiff's] right to file suit against [defendants] by conditioning dismissal on [defendants'] actual consent to process in the foreign jurisdiction*." Miller v. Bos. Sci. Corp.*, 380 F. Supp. 2d 443, 448 (D.N.J. 2005) (citations omitted); *see also Acuna-Atalaya v. Newmont Mining Corp.*, No. CV 17-1315, 2020 WL 1154783, at *4 (D. Del. Mar. 10, 2020) (stating that the court may satisfy the adequate alternative forum element by

12

"requir[ing] a defendant to stipulate to service of process and consent to jurisdiction in the alternative forum.") The second element is satisfied if the alternative forum "permit[s] litigation of the subject matter of the dispute" and "provide[s] a remedy" that is not "so 'clearly inadequate or unsatisfactory that it is no remedy at all.'" *Solari v. Goodyear Tire and Rubber Co.,* 654 Fed. Appx. 763, 766 (6th Cir. 2016).

India, a country with an advanced legal system, is an adequate alternative forum for this action. With respect to the first element, the Court observes that Bhavdeep Singh is the only Defendant to explicitly confirm amenability to process in India. (*See* DE 119-1 at 23 ("Singh is amenable to process in India as a homeowner with OCI status.")). The other Defendants, generally assert that India is a superior forum, [7] without explicitly conceding that they are amenable to process there.[8] They cannot have it both ways, however. As established earlier, the Court may condition *forum non conveniens* dismissal upon the willingness of the Defendants to accept service in India and consent to jurisdiction there. Indeed, implicit in the doctrine of *forum non conveniens,* "is that a defendant cannot assert that another forum is more convenient and just, and while at the same time, refuse to accept the

---

[7] By contrast, IHH asserts that Malaysia is an adequate alternative forum, as opposed to India. DE 115-1 at 36. The Court notes, however, that in arguing for dismissal pursuant to the international abstention doctrine, IHH asserts that (1) the Emqore "Predecessors have already commenced numerous foreign proceedings and agreed to a forum selection clause in the term sheet that gives Indian courts exclusive jurisdiction over any disputes relating" to the failed Fortis acquisition and (2) resolution of this action in this forum "would require ruling on matters that are already pending before Indian courts." *Id.* at 32-33. As such, while IHH is silent with respect to its amenability to process in India, IHH arguments only support the inference that Emqore's claims are cognizable in India.

[8] Emqore appears to allege that (1) NYLIM and Siguler initiated litigation against the Singh Brothers in India and (2) more generally, the Defendants "initiated sham litigations" against the Singh Brothers in India in order to deflate the share price of REL and Fortis. *See* Am. Compl. ¶¶ 132-133, 165 n. 7. If Emqore's allegations are taken as true, such an extensive litigation history would suggest that Defendants are amenable to process in India.

13

jurisdiction of that forum." *Moscovits v. Magyar Cukor Rt.*, No. 00 CIV. 0031 VM, 2001 WL 767004, at *8 (S.D.N.Y. July 9, 2001) (emphasis added), *aff'd*, 34 F. App'x 24 (2d Cir. 2002) (citation omitted).

Likewise, Emqore's claims are cognizable in India. Indeed, Emqore does not appear to dispute this proposition; instead, it argues that because "the financial transactions which are at the heart of the matter were accomplished by transfers … to and from the United States," only a United States court will be able compel production of such records. (Opp. at 21.) The Court, however, has already found that Emqore has not (1) sufficiently alleged a connection between the initial capitalization of REL and Fortis with the Defendants or the purported RICO Scheme or (2) identified any transfers that were sent and/or received in the United States that would necessitate a United States court to compel such records.[9]

Nor could Emqore argue that its claims are not cognizable in India. While Defendants have not proffered evidence that India recognizes Emqore's claims, the Amended Complaint recites the parties' extensive litigation history in India. (*See* Am. Compl ¶¶ 79-96.) These litigations include (1) an Emqore Predecessor[10] filing a case with India's National Company Law Tribunal to halt "the illegal misappropriation of listed shares by Ares SSG and Bay Capital" (*id.* ¶ 80), (2) Emqore filing complaints with the Securities Exchange Board of India, the Reserve Bank of India, and the Economic Offenses Wing (*id.* ¶ 85), (3) "multiple complaints by [Emqore's] Predecessors, to show … arms length dealings with the Singh Brothers" (*id.* ¶ 88), (4) Emqore filing a formal petition with the State Bank of India, "objecting to the sale of assets of REL" (*id.* ¶ 92),

---

9    Nor is it established that such records could not be obtained in the United States for use in an Indian litigation, or that pursuit of the litigation here would not create an even worse mirror-image problem with obtaining foreign records. *See* subsection C, *infra.*

10   Emqore alleges that SGGD Projects Development Private Limited filed this action "at the request of Loancore Servicing Solutions Private Limited[,] a variable interest entity of Emqore." Am. Compl. ¶ 80 n.3.

14

and (4) Emqore raising "over 96 instances of grievances with the Indian Regulators and Agencies." (*Id.* ¶ 144.) That litigation history strongly suggests that Emqore's claims are cognizable in India.

Accordingly, the Court finds that India is an adequate alternative forum, conditioned upon Defendants' consent to process and jurisdiction.

### C. Private Interest Factors

The "private interest factors" the Court considers include: (1) ease of access to sources of proof; (2) ability to compel witness attendance if necessary; (3) means to view relevant premises and objects; and (4) any other potential obstacle impending an otherwise easy, cost-effective, and expeditious trial. *See Kisano*, 737 F.3d at 873.

The private interest factors weigh in favor of dismissal. As to the Court's ability to compel witnesses, most witnesses will likely be foreign, primarily in India, and outside the Court's 100-mile subpoena power pursuant to Rule 45(c)(1). *See* Fed. R. Civ. P. 45(c)(1). This belief stems from the fact that (1) the Emqore Predecessors are foreign, with principal offices in India, Hong Kong, Germany, and Estonia (*see* DE 55-5 at 43); (2) Fortis and REL are Indian companies (*see* Am. Compl. ¶¶ 12, 27); (3) most of the Defendants are located abroad (*id.* ¶¶ 7, 12-13, 17-19, 22-23, 27-29, 34-36); and (4) most of the conduct described in the Amended Complaint likely occurred in India. (*See id.* ¶¶ 79-96, 111-115, 130-135, 149-158, 195-215).

The Court does not foreclose the possibility of there being relevant witnesses located in the United States. Emqore alleges that Bhavdeep Singh, CEO of Fortis, resides in New Jersey. Similarly, Defendants NYLIM and Siguler are alleged to be domiciled in the United States, although NYLIM and Siguler claim that they have no commercial or transactional relationship with REL or Fortis. (*See* DE 118-1 at 7-8, DE 121-1 at 5-6.) On the other hand, Emqore's failure to sufficiently allege actions taken by Defendants domiciled in the United States or *any* conduct occurring in the United States makes such a determination difficult.

15

Further, sources of proof likely exist primarily in India. That being said, in an age of electronic discovery, the physical location of documents bears minimal significance. *Meridian*, 2021 WL 689132 at *15. Viewed holistically, however, the Court believes that the likelihood of evidence and witnesses being located outside the United States increases the likelihood of a New Jersey trial's being lengthy and expensive.

"Under the private interest factors, dismissal is generally favored when a majority of the evidence and witnesses are located in a foreign forum and the alleged misconduct is centered there." *Glencore*, 2020 WL 4382280 at *5. This is such a case. While these private factors are not completely in Defendants' favor, they still weigh in favor of dismissal.

### D. Public Interest Factors

Finally, the "public interest factors" include: (1) the comparative administrative difficulties; (2) the law to be applied in the case; and (3) the forums' relative interests in trying the case. *Meridian*, 2021 WL 689132 at *16 (citing *Kisano*, 737 F.3d at 873).

The public interest factors overwhelmingly weigh in favor of dismissal. As an initial matter, trying the case in this District presents administrative difficulties considering the related litigation currently pending in India. (*See* DE 115-1 at 37; DE 116-1 at 30.) The Amended Complaint includes a section titled "Procedural History," which extensively describes litigation in Indian courts that: (1) involves the parties and parties-in-interest to this action; (2) relates to REL and Fortis; and (3) overlaps with the subject matter of the Amended Complaint. Indeed, at least one of the Emqore Predecessors, Loancore Servicing Solutions Private Limited, is currently restrained from initiating legal action against REL *outside* of India. (*See* DE 121-1 at 8; 121-2 at ¶5; DE 130 at 7.) Considering the gossamer connection between the action and this District, the risk of conflicting judgments and violation of court orders already entered in India, and the resulting increased court congestion, the Court finds that trying

this case presents unnecessary administrative challenges. *See Princeton Football Partners*, 2012 WL 2995199 at *9.

Further, New Jersey's interest in trying this case is minimal at best. Emqore generally asserts that in order to cover-up their involvement in the Singh Brothers' alleged fraud, the Defendants devised the RICO Scheme, whereby they (1) filed "sham lawsuits" against the Singh Brothers, to decrease the REL and Fortis share price; (2) replaced REL and Fortis board members and transferred control of those companies to Bay Capital and IHH respectively; (3) illegally reneged on agreements for the Emqore Predecessors to control REL and Fortis; and (4) ultimately took control of REL and Fortis "through self-dealing." (*See* Am. Compl. ¶¶ 165-167.) The Amended Complaint, however, does not allege that any actions related to the described scheme occurred or were devised in New Jersey. And while Emqore alleges that the Singh Brothers funded REL and Fortis with money derived from Ranbaxy USA's illegal conduct (*see id.* ¶ 7), the Amended Complaint lacks allegations connecting nonparty Ranbaxy USA with Defendants or the alleged RICO Scheme.

If anything, the Amended Complaint only confirms that India has a strong interest trying this case. For example, Emqore alleges that the Defendants' "modus vivendi" was utilizing the courts "to corrupt the legal rights of others." (*See id.* ¶¶ 14, 79-96.) The "courts" in question are the Indian courts. And because this dispute primarily concerns (1) the corporate actions of two Indian companies, REL and Fortis, and (2) Defendants' alleged use of the Indian judicial system to frustrate the legal rights of the Emqore Predecessors, the "core operative facts" of this case occurred in India. *See Guarino* 2021 WL 3286640 at *10.

This Court would need to apply at least some Indian law to resolve this matter. For example, the term sheet governing the proposed transaction between Fortis and Walmark Holdings Limited, an Emqore Predecessor, is governed by Indian law. (*See* Am. Compl. Ex. B; DE 115-1 at 8; DE 119-5 at ¶

17

16; DE 119-6 at ¶ 29.) While this Court can and does where appropriate apply foreign law, it would need to be pled and proven through expert testimony.

Finally, the Court rejects Emqore's assertion that New Jersey has an interest in this action simply because the Amended Complaint alleges RICO violations. Emqore's conclusory, fact-free allegations that Defendants "directed acts in furtherance of the scheme in New Jersey" and "caused money to be transferred out of the United States" in furtherance of the scheme (*see id.* ¶¶ 57-60, 66-72, 173), fall far short of establishing that New Jersey or even the United States has an interest in this case. More importantly, courts have "not afforded [RICO] claims … any special *forum non conveniens* treatment." *Windt*, 544 F. Supp. 2d at 424 (collecting cases) (emphasis added). This Court also declines to do so.

Because this case has "no apparent connection to New Jersey," the Court finds that the public interest factors weigh in favor of dismissal. *Glencore*, 2020 WL 4382280 at *6.

## IV.   CONCLUSION

Because Emqore's choice of form is entitled to minimal deference, India is an adequate alternative forum, the private factors weigh in favor of dismissal, and the public factors weigh substantially in favor of dismissal, Defendants' motions to dismiss the Amended Complaint are **GRANTED**, on grounds of *forum non conveniens*. The Court will condition dismissal on the Defendants stipulating to litigating this case in India, which shall include a commitment to accept service in India and waive any defenses of personal jurisdiction or statute of limitations defenses that would not have applied as of the date of filing of this case.

A separate order will issue.

Dated: September 7, 2022

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty**

**United States District Judge**